

BARRY I. SLOTNICK
Partner

345 Park Avenue
New York, NY 10154

Direct  212.407.4162
Main    212.407.4000
Fax     212.202.7942
bslotnick@loeb.com

Via ECF

February 6, 2017

Hon. J. Paul Oetken
United States District Judge
United States District Court for the Southern
District of New York
40 Foley Square, Room 2101
New York, NY 10007

Re:  Craig v. Universal Music Group, Inc., et al; Case No. 16 Civ. 5439

Dear Judge Oetken:

We represent Defendants UMG Recordings, Inc. ("UMG"), incorrectly sued herein as Universal Music Group, Inc., Kingsid Ventures, Ltd. ("Kingsid") and Estate of Riley B. King ("Estate", and together with UMG and Kingsid, "Defendants") in the above-referenced action. We write pursuant to Paragraph 4(B) of Your Honor's Individual Practices in response to Plaintiff's February 1, 2017 letter (Dkt. No. 26), and pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 37.1 for an informal conference to resolve the parties' discovery dispute regarding the depositions of Defendants.

I.    Background

As the Court is aware, this is an action for copyright infringement concerning photographs of Riley B. King p/k/a BB King allegedly taken by Plaintiff in late November 1969 (the "Photographs"), and which were first used on the cover of a BB King LP released by ABC Records in 1971 ("the Initial BB King LP"). See Complaint, ¶ 30. Because of both the passage of more than 40 years and UMG's subsequent acquisition from ABC Records' successors of all copyright interests in the sound recordings embodied in the Initial BB King LP, there are few relevant documents in the Defendants' possession, and a very limited number of witnesses who have any first-hand knowledge or information relevant to the claims and/or defenses asserted in this action.

Both Mr. King and his former manager Sid Seidenberg—the two people who would most likely have had knowledge regarding the provenance and chain of custody of the Photographs—have passed away.  The Estate's executor, Ms. Louise LaVerne Toney, has no knowledge of these matters or of UMG's purported exploitation of the Photographs.  Ms. Toney was Mr. King's former personal assistant and employee, who had no involvement in the exploitation of Mr. King's records, but, because of her decades of service to Mr. King, gained his trust and was subsequently named as the sole executor of the Estate.



As the sole executor of the Estate, Ms. Toney has no employees or other staff. She is 67 years old and resides in Las Vegas, Nevada. The only relevant information that Ms. Toney and the Estate have in their possession is limited to the revenues received by the Estate from the sale of the recordings identified in the Complaint.

Similarly, the passage of over 40 years and numerous corporate changes have severely limited the number of relevant documents in UMG's possession or control, as well as the number of knowledgeable witnesses. UMG has no witness who has knowledge of, and no documents concerning, how the Photographs originally came into ABC Records' possession. Ryan Null, a California-based UMG employee identified by the parties as having relevant knowledge, only has limited knowledge regarding UMG's current possession of the Photographs, gleaned from his review of UMG's relevant records.

With respect to UMG's alleged exploitation of the recordings which also include the Photographs and the related revenues received by UMG, UMG will separately designate a California-based witness. Contrary to Plaintiff's assertion, UMG cannot easily designate a New York-based witness on these subjects. The alleged infringement and revenues received thereunder would have been under the purview of Universal Music Enterprises, whose employees and officers are based primarily in Santa Monica, California.

Lastly, Kingsid is not a proper party to this action or a proper party subject to discovery requests. Kingsid was formed by Mr. King and Mr. Seidenberg to manage all aspects of their live venue business under Mr. King's name. Kingsid had and has no relationship with respect to the exploitation of Mr. King's recordings. Kingsid has no knowledge or information related to the Photographs or the use of the Photographs, and it has never received any revenues as a result of the alleged exploitation of the Photographs. Accordingly, Kingsid has no documents, knowledge, or information relevant to the claims or defenses asserted in the Complaint, and should not be subject to the undue burden of appearing in Valley Stream, New York for a deposition.

## II.     The Parties' Discovery Dispute

On January 24, 2017, Plaintiff noticed the depositions of Defendants through their respective corporate representatives at the office of Plaintiff's attorney in Valley Stream, New York. A true and correct copy of the notice is attached hereto as **Exhibit 1**.

On January 26, 2017, Defendants objected to the notice on the grounds that (a) it was not compliant with Fed. R. Civ. P. 30(b)(6), and (b) Defendants' depositions should take place in Santa Monica, California and Las Vegas, Nevada, their respective principal places of business, and not Valley Stream, New York, because there is a "general presumption" in this District "that the deposition of a corporation should take place in its principal place of business," *GMA Accessories, Inc. v. Unicolors, Inc.*, 2016 U.S. Dist. LEXIS 107101, *4 (S.D.N.Y. Aug. 11, 2016). Kingsid also objected on the grounds that it was not a proper party to this action because it has no knowledge or information regarding the allegations set forth in the Complaint, and therefore, there are no witnesses who have knowledge or information regarding the allegations set forth in the Complaint who can testify on its behalf. A true and correct copy of the objections is attached hereto as **Exhibit 2**.



In response to Defendants' objections, Plaintiff served a second notice of the depositions of Defendants through their respective corporate representatives on January 30, 2017 ("Second Notices"). A true and correct copy of the Second Notices is attached hereto as **Exhibit 3**. The Second Notices did not change the location of Defendants' depositions from Valley Stream, New York, and continued to demand a deposition of Kingsid despite Kingsid's stated lack of relevant knowledge or information.

In a letter sent concurrently with the Second Notices (attached hereto as **Exhibit 4**), Plaintiff asserted that because Defendants "did not challenge the jurisdiction" of the Court, did not "object to venue," and "are in a financially superior position to the Plaintiff," that "Defendants have to produce witnesses … in Plaintiff's chosen forum."[1]  Plaintiff also asserted speciously and without any legal support, that because "those being deposed have been named by the Defendants in their initial disclosures," their depositions should take place in Valley Stream, New York.  In addition, Plaintiff objected to Defendants' December 9, 2016 notice of his deposition, asserting without any legitimate reason or legal support, that he would "not attend a deposition in the offices of" Defendants' counsel.  Plaintiff did not address Kingsid's separate objection.

### III.     January 31, 2017 Meet and Confer

On January 31, 2017, pursuant to Paragraph 4(B) of Your Honor's Individual Practices, counsel for the parties conferred in good faith to resolve the parties' discovery disputes.  The parties were able to resolve two objections amicably,[2] but failed to reach a resolution on two issues.

With respect to Kingsid's deposition, Defendants reiterated that Kingsid has no relevant knowledge or information.  Plaintiff's counsel stated that they would confer and advise whether they would withdraw the notice of deposition.  On February 1, 2017, Plaintiff's attorneys ignored Defendants' attorneys' telephone and email messages, and instead filed their February 1, 2017 letter to the Court (Dkt. No. 26).

As to the location of Defendants' depositions, Defendants offered to have their depositions taken by remote means so that Plaintiff's counsel would not need to travel.  Plaintiff rejected that offer on February 1, 2017 and notified Defendants' counsel that Plaintiff would seek relief from the Court.

### IV.     Kingsid's Deposition

Fed. R. Civ. P. 26(b)(1) permits a party only to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  As noted above, and as Kingsid has repeatedly represented to Plaintiff, it has no knowledge or information relevant to the claims or defenses raised in this action.  See Ex. 2; Kingsid's November 28, 2016 Objections and Responses to Plaintiff's Document Requests (attached hereto as **Exhibit 5**) at 1; Kingsid's

---

[1] Even so, Plaintiff initiated this action in the Southern District of New York, and Valley Stream, New York is not in this District.

[2] The other two disputes were resolved.  First, Plaintiff withdrew his refusal to be deposed at Defendants' attorneys' office.  Second, the parties resolved Defendants' objection that the Second Notices failed to meet Fed. R. Civ. P. 30(b)(6)'s "reasonable particularity" requirement.



Hon. J. Paul Oetken
February 6, 2017
Page 4

November 28, 2016 Objections and Responses to Plaintiff's Interrogatories (attached hereto as **Exhibit 6**) at 1, 7, 9.

A deposition of Kingsid would not likely lead to any relevant evidence, would unduly burden Kingsid, and would waste both the parties' resources. Accordingly, Plaintiff should not be permitted to depose Kingsid.

## V. Location of UMG's and the Estate's Depositions

Contrary to Plaintiff's assertions (see Ex. 4), there exists no requirement that corporate defendants' depositions must take place in the plaintiff's chosen forum. Rather, "[t]he ordinary rule is that the deposition of corporate employees is to be conducted where they work, particularly when the corporation is a defendant." *Louis Vuitton Malletier v. Dooney & Burke, Inc.*, 2006 U.S. Dist. LEXIS 87096, *52-53 (S.D.N.Y. Nov. 29, 2006) (citing *Boss Mfg. Co. v. Hugo Boss AG*, 1999 U.S. Dist. LEXIS 133 (S.D.N.Y. Jan. 11, 1999)).

This general presumption "may be diminished if the plaintiff was constrained in choosing the forum for litigation" and "can be overcome by a showing that factors of cost, convenience, and litigation efficiency militate in favor of holding the deposition somewhere other than the district of the deponent's … place of business," *Devlin v. Transportation Communs. Int'l Union*, 2000 U.S. Dist. LEXIS 264, *9 (S.D.N.Y. Jan. 13, 2000). However, Plaintiff cannot meet this "affirmative burden of demonstrating 'peculiar' circumstances which compel the Court to suspend the general rule and to order that depositions be held" in some other location. *FDIC v. La Antillana, S.A.*, 1990 U.S. Dist. LEXIS 13246, *3 (S.D.N.Y. Oct. 5, 1990).

### A.  Limitation of Forum

Plaintiff does not assert that he was limited to choose this District as the forum for litigation. This action could just as easily have been brought in the Central District of California or the District of Nevada. *See* 28 U.S.C. § 1400(a) ("Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant resides or may be found."). Accordingly, this factor weighs in favor of Defendants.

### B.  Factors of Cost, Convenience and Litigation Efficiency

Plaintiff improperly focuses the remaining factors based on the faulty assumption and assertion that UMG and the Estate can easily designate representatives who are based in New York. Dkt. No. 26, at 2. The Estate has no employees or other representatives in or near New York. Moreover, there are no witnesses with relevant knowledge or information to testify on its behalf. Ms. Toney, the 67 year old sole executor of the Estate, is a resident of Las Vegas, Nevada.[3] And even so, as noted above, Ms. Toney has very limited knowledge or information relevant to this dispute. Because the Estate has already produced documents sufficient to demonstrate the revenues it received from the sale of the relevant recordings, requiring Ms. Toney to travel to

---

[3] Plaintiff's assertion to the contrary is belied by the fact that Ms. Toney is the only witness that has ever been identified by the Estate in its discovery responses and initial disclosures as having knowledge or information relevant to this action, and in fact, Plaintiff's counsel specifically designated Ms. Toney as the corporate representative of the Estate in both sets of deposition notices. Exs. 1, 3.



New York for a short deposition solely on revenues received by the Estate would be unduly burdensome in light of the likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

With respect to UMG, as noted above, UMG will designate two California-based witnesses. Plaintiff's assertion to the contrary is belied by the fact that Plaintiff has personally communicated with Mr. Null regarding this action, Plaintiff noticed the depositions of UMG through Mr. Null (*see* Exs. 1, 3), and UMG's responses to Plaintiff's interrogatories identified only California-based employees. In fact, Plaintiff's counsel represented to Defendant's counsel that if UMG did not designate Ryan Null as a Fed. R. Civ. P. 30(b)(6) witness, that Plaintiff would either notice Mr. Null as a Fed. R. Civ. P. 30(b)(1) witness or subpoena his deposition. It is an undue burden to require Mr. Null to travel to New York: (i) Mr. Null performs all of his duties in Santa Monica; (ii) Mr. Null does not regularly travel to New York, if at all, for work; and (iii) Mr. Null's relevant knowledge is limited to his research into UMG's photo archives, the sum and substance of which was communicated to Plaintiff via e-mail prior to the commencement of this action.

Having been aware of all of the foregoing, Plaintiff cannot now assert that UMG and the Estate can easily designate New York-based witnesses as a basis for overcoming the general presumption. Moreover, the factors of cost, convenience, and efficiency all weigh in Defendants' favor.

    1.    Cost

Similarly, the cost factor also militates in favor of Defendants' position. It would be more cost effective for counsel to fly to Nevada and California. Defendants' counsel and Plaintiff's counsel[4] would each incur costs associated with a flight to California from New York, then from California to Las Vegas, and then from Las Vegas back to New York. Google flight search shows that the cost for this itinerary during the week of February 21, 2017-February 27, 2017 ranges from $287 to $314, and that hotels in Las Vegas range from $24 to $200 per night, while hotels in Santa Monica range from $122 to $329 per night. Assuming Plaintiff's counsel needs to spend a night in Santa Monica, the total lodging cost would be around $200. The total estimated cost for Plaintiff's counsel to travel to these depositions, thus, would be around $500.

On the other hand, if the depositions were held in New York, UMG's two California witnesses and Ms. Toney would have to fly round-trip for a total of three round-trip flights. Google flight search shows that the cost for this itinerary for the dates on the Second Notices ranges from $253-351 for LAX/NYC round-trip per person, and $245-307 for LAS/NYC round-trip per person, for a total cost of around $900. Hotels in New York for one night range from $85 to $300 per night. The total lodging cost for three witnesses staying two nights[5] each would total around $1150. The total estimated cost for Defendants' witnesses to travel to these depositions, thus, would be over $2000.

---

[4] Only one of Defendants' attorneys will travel to these depositions. Plaintiff's letter does not address why Plaintiff will or needs to send both of his attorneys to each deposition.

[5] The witnesses lose time flying east, and thus would need at least one night in New York on account of the travel. Defendants counsel also expects to prep these witnesses the day before their respective depositions, accounting for the second night.



There is also no basis for Plaintiff's assertion that Defendants "are in a financially superior position to the Plaintiff to make arrangements for travel to the depositions." Ex. 4. The total estimated cost to fly Plaintiff's attorney to the depositions is around $500. Plaintiff has the sufficient resources for such travel: he admits to be "a famed professional music photojournalist with a storied career," who has "won numerous awards" and whose "work has appeared in galleries around the world." Dkt. No. 1, ¶ 5. And Plaintiff's mere assertion that he is a "private individual near retirement age, with a son in college and a mortgage" is insufficient to overcome the general presumption. *See Dwyer v. Deutsche Lufthansa, AG*, 2007 U.S. Dist. LEXIS 9806, *7-8 (E.D.N.Y. Feb. 13, 2007) (finding that plaintiff failed to establish that he lacked sufficient resources to travel for the deposition of the defendant corporation, where there was an undisputed showing that his annual wages were approximately $30,000 per year).

Moreover, even if the Court were to grant Plaintiff's request to depose UMG in New York because of its financial status, Plaintiff has failed to meet his burden of demonstrating that the Estate is in a superior position to Plaintiff with respect to absorbing the depositions' costs. The Estate is not a large international corporation. It is simply one elderly and near retirement age woman who lives in Nevada.

Should the Court order that Ms. Toney's deposition take place in Las Vegas, Nevada, it would be less costly to hold the UMG depositions in California. A one-way flight to California from Nevada is less than $50, compared to the $1300 that it would cost to bring UMG's two witnesses to New York.

As a result of the foregoing, Plaintiff cannot overcome the general presumption on the cost factor.

      2.    Convenience

Convenience considerations also weigh in Defendants' favor.

With respect to the attorneys, admittedly, New York is more convenient. However, Plaintiff fails to explain why both of his attorneys would be "compelled" to attend each out-of-state deposition; and Plaintiff's counsel fails to detail the "number of adjournments and extensions this would necessitate." Dkt. No. 26 at 2. Plaintiff's counsel noticed the depositions of UMG and the Estate for February 24, 2017 and February 27, 2017, presumably because those dates were free on his calendar. Moreover, those dates are three weeks away, giving counsel sufficient time to seek any necessary adjournments or extensions. UMG and the Estate also agree to adjourn these dates to dates that are more amenable to Plaintiff's counsel's calendar.

As demonstrated above, there is no justification for Defendants' witnesses to be unduly burdened and severely inconvenienced, all so that Plaintiff's counsel can enjoy the comforts of home.

The Estate's knowledge and information is limited to revenues received by the Estate for those albums listed in the Complaint. The Estate has produced all of its relevant royalty statements related to the revenues received for those albums. It is thus unduly burdensome to require Ms. Toney to travel to New York to be deposed on this issue, when Plaintiff has already received all the documents and information relevant to this issue from the Estate.



With respect to UMG, its designated representatives all work in and reside around Santa Monica, California. These witnesses would lose two days to travel, and spend another two days in New York to prepare for the deposition and then to be deposed. They would be absent from work for four days, which could be easily avoided if Plaintiff took their depositions in Santa Monica, California. It should be noted that there are no UMG witnesses with any, let alone first-hand, knowledge of the photo shoot or the original use of any of the Photographs on the Initial BB King LP.

Because Defendants would be severely inconvenienced and unduly burdened by depositions in Valley Stream, New York, Plaintiff cannot overcome the general presumption with respect to convenience.

       3.     Efficient Litigation

The considerations of efficient litigation also dictate that the depositions take place in the Defendants' respective principal places of business. It is more efficient for two attorneys (the parties' counsel) to fly to Nevada and California, where the relevant records are, than it is for three witnesses to fly to New York and be absent from work for almost a week. And as demonstrated above, it is more efficient for UMG's depositions to take place in California, should the Court order that the Estate's deposition take place in Nevada.

With respect to anticipated discovery disputes, there is little indication that judicial intervention would be necessary during the depositions. Plaintiff, without any legitimate basis or factual support, improperly asserts that he expects there will be such disputes because he has "routinely encounter[ed] obstacles and unreasonable obstructions in his pursuit of a legitimate claim." Dkt. No. 26, at 3.

In fact, Defendants' counsel have in good faith conferred with Plaintiff's counsel on the topics of UMG's deposition so that UMG's witnesses would be properly prepared, such that no judicial intervention should be necessary during the depositions. Plaintiff can point to no unreasonable obstruction or "unusual degree of acrimony" sufficient to overcome the general presumption. *FDIC*, 1990 U.S. Dist. LEXIS at *9.

Even if judicial intervention were necessary during the depositions, "this can be accomplished by telephone, as would likely be the case even if the depositions were held" in Valley Stream, New York. *Id.* at *12. The case cited by Plaintiff, *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547 (S.D.N.Y. 1989), is inapposite here because it involved the numerous depositions of defendants who resided overseas in Europe and the Middle East. *Id* at 551.

Due to the limited knowledge of both UMG and the Estate, neither UMG nor the Estate anticipates that their respective depositions will take the full 7 hours permitted by Fed. R. Civ. P. 30. Accordingly, neither UMG nor the Estate anticipates that any disputes requiring judicial intervention would take place after business hours in New York. UMG and the Estate would also agree to begin each of their depositions earlier to ensure that the Court would be able to rule on any disputes during the depositions.

As a result of the foregoing, Plaintiff cannot overcome the general presumption with respect to litigation efficiency.



## VI. Conclusion

Because Kingsid has no information and knowledge relevant to the claims or defenses asserted in this action, Kingsid should not be required to attend a deposition in this action.

With respect to UMG and the Estate, Plaintiff cannot overcome the general presumption that their depositions should take place at their principal places of business. *See Devlin*, 2000 U.S. Dist. LEXIS (deposition of corporate witnesses of the defendant must take place in the defendant's principal place of business where (a) plaintiffs were not limited in their ability to choose the forum for litigation, (b) the cost factor tipped in favor of defendants, (c) the deponents work and live near the principal place of business, and (d) the relevant records that may be referred to during the depositions are likely located at the business's principal place of business); *Dwyer*, 2007 U.S. Dist. LEXIS (plaintiff failed to overcome the general presumption where plaintiff failed to demonstrate he lacked sufficient resources to travel out of state for the deposition, and failed to demonstrate hardship to counsel).

Defendants thus respectfully request that the Court: (i) order that no deposition shall be taken of Kingsid, (ii) designate Santa Monica, California as the site for the depositions of UMG's representatives, and (iii) designate Las Vegas, Nevada as the site for the deposition of the Estate's representative.

Alternatively, should the Court find that Plaintiff has met his burden to overcome the general presumption, Defendants respectfully request that the Court order that the depositions of UMG and the Estate take place in the Southern District of New York, and not Valley Stream, New York.

Respectfully submitted,

*Barry Slotnick /LL*

Barry I. Slotnick
Partner

cc:  Richard P. Liebowitz, Esq. (*via ECF*)

Attachments