**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-- - - - - -- - - - - - - - - -- - - - - - - - - - - - - - - - - - - - - -x
                                                            :
GLEN CRAIG                                                  :
                                                            :
                                    *Plaintiff*,            : 16-cv-05439 (JPO)
                                                            :
            vs.                                             :
                                                            :
UNIVERSAL MUSIC GROUP, INC.,                                :
KINGSID VENTURES, LTD., and ESTATE OF                       :
RILEY B. KING,                                              :
                                                            :
                                    *Defendants*.           :
-- - - - - -- - - - - - - - - -- - - - - - - - - - - - - - - - - - - -x

## PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANTS' EXPERT WITNESS

Plaintiff Glen Craig ("Craig"), by and through undersigned counsel hereby respectfully moves to disqualify the Defendants' Universal Music Group, Inc.("UMG"), Kingsid Ventures, Ltd., and Estate of Riley B. King ("BBKing") (collectively, "Defendants") expert witness, Jeffrey Sedlik ("Sedlik"), pursuant to this Court's inherent power to preserve the integrity of the adversary process.

## INTRODUCTION

This Court is imbued with certain inherent powers in order to protect the sanctity of the adversarial system.   While the need to exercise such power must be proven by the movant, unless the non-movants can show countervailing reasons, the Court should grant the motion.

The conflict surrounding the Defendants' expert is clear.  The expert was contacted by Plaintiff's counsel in September of 2016 with the intent of retaining him in this very litigation. Plaintiff's counsel contacted Mr. Sedlik again in May of 2017 in anticipation of retaining him to submit an expert report in this case.  Overall, Craig and the undersigned counsel held two telephone conferences with Mr. Sedlik.  Crucially, Craig held at least one telephone conference

with Mr. Sedlik, without the presence of his counsel.   There was an exchange of emails confirming the same and Mr. Sedlik sent over his professional CV as well as another document pertaining to this case. Decl. Liebowitz & Ex. A and B. On May 15, 2017 after the four telephone conferences, email and document exchanges Mr. Sedlik indicated that he might have a conflict of interest since his own publishing company has a business relationship with the Estate of B.B. King.    He then continued to speak with the undersigned counsel about other cases, the possibility of future retention on other cases, including other cases brought by the Plaintiff or on behalf of other clients of the undersigned.

On October 13, 2017 Defendants' served the Plaintiff with Disclosures of an Expert Witness, including a Preliminary Expert Report from none other than Mr. Sedlik.

## BACKGROUND

Plaintiff was referred to Mr. Sedlik by Tom Kennedy, executive director of the American Society for Media Photographers (ASMP) – a professional organization focused on protecting the rights of photographers.   Declr. Glen Craig ¶3. Plaintiff shared this contact information with his counsel.   Plaintiff's counsel recognized the name came from a recent case of *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376(3d Cir. 2016) where Mr. Sedlik opined on the damages multiplier that factors in the rarity and exclusivity of photographs.

On or around September 19, 2016, Plaintiff contacted Mr. Sedlik and had two extensive telephone conferences without counsel on the line. Decl. of Craig, ¶5.   Unbeknownst to Plaintiff's counsel, however, Plaintiff divulged significant facts, strategies and theory of the case. Decl. Lieb. ¶5, Decl Craig ¶5. They discussed the merits and weakness of the case, issues pertaining to the photographs' creations, licensing, the pitfalls of valuation of these damages, and other potential issues that would arise in the course of this litigation.   The conversations went

beyond the facts of this case, to involve legal strategy and Plaintiff's choice of counsel.  Decl.

Craig ¶¶5-10.  Mr. Sedlik encouraged the Plaintiff to fire his current attorney and referred him to

an attorney Mr. Sedlik was retained by on the *Leonard v. Stemtech* matter, Jan Berlage, Esq.

Sedlik indicated that he would prefer to work with Mr. Berlage and that Plaintiff's case would be

in danger if he did not switch representation. Decl. Craig ¶10, & Exhibit A to Decl. Lieb.

Throughout this conversation, Plaintiff disclosed copious amounts of information that went well

beyond the public record.  Decl. Craig ¶¶6-9. Without the benefit of his counsel's notes or

recollections, Plaintiff's own memory of that conversation includes several critical disclosures.

Those disclosures are just the ones Plaintiff can recollect and identify as relevant disclosures at

this point.  Importantly, they do not include what Plaintiff has forgotten or what Plaintiff does

not understand as relevant disclosures. Decl. Craig ¶23.

 Later in the week, Plaintiff and his counsel held another telephone conference with Mr.

Sedlik.  It appeared to Plaintiff's counsel that Mr. Sedlik already knew a lot of the underlying

facts in the case, was familiar with the strengths and weaknesses, as well as the litigation

strategy.  Decl. Craig ¶¶12-14. Plaintiff's counsel noted that Mr. Sedlik seemed to be onboard

and that the tone of the conversation between Craig and Mr. Seldik seemed very familiar.   Decl,

Ieb, ¶¶6-8. Both Plaintiff and his counsel expected to retain Mr. Sedlik as soon as the case

entered the expert discovery phase.   Decl. Lieb. ¶9, Decl. Craig ¶15.

 As the case advanced to expert discovery, on or around May 14, 2017 Plaintiff's counsel

again contacted Mr. Sedlik in anticipation of submitting an expert report in the case.   Mr. Sedlik

held a telephone conference with Plaintiff's counsel.   While Mr. Sedlik continued to assure

Plaintiff's counsel that he could be retained in other cases, he indicated that he's being retained

by a plaintiff in another matter in which UMG is a defendant.  Decl. Lieb. ¶¶9-13.  Similarly,

Mr. Sedlik expressed some doubt as to whether he could still take on this case.   He then mentioned that his publishing company has a licensing agreement with BBKing.  Despite his doubts, Mr. Sedlik asked if the Court had granted an extension to file the expert disclosures and confirmed that May 29, 2017 is the "current target for this report".  Decl. Lieb. & Ex. B.  Shortly thereafter, Mr. Sedlik stated that pg.1 of Ex. E to the Complaint includes his photograph in addition to Craig's photograph.  He then mentioned that the photograph in question was under license to MCA records.

Later in the day, Plaintiff's counsel had a conversation with Mr. Sedlik where it became apparent that Mr. Sedlik had no intention of being retained by Plaintiff in this case.

## ARGUMENT

### I.     LEGAL STANDARD

A court may disqualify a party's designated expert pursuant to "its inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir.2005); *Eastman Kodak Co. v. Kyocera Corp.,* No. 10-CV-6334CJS, 2012 WL 4103811, at *7 (W.D.N.Y. Sept. 17, 2012).  Disqualification of a party's expert is "designed to protect the integrity of the judicial process by ensuring that experts do not use, even unwittingly, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit." *Id. at *8 (expert cannot separate confidential information learned from first party during course of later litigation because " 'the human brain does not compartmentalize information in that manner.' "). *Id.* (quoting *Pellerin v. Honeywell Int'l Inc.,* 2012 WL 112539, at *3 (S.D.Cal. Jan.12, 2012);  *See Gordon v. Kaleida Health*, No. 08-CV-378S F, 2013 WL 2250506, at *5 (W.D.N.Y. May 21, 2013).

While "[t]here is no bright line rule as to when a party's expert should be disqualified due to disclosure of confidential information, and the Second Circuit has not set forth the precise test by which a district court should make the determination," some guidance does exist.  *Auto-Kaps, LLC v. Clorox Co.,* No. 15 Civ. 1737, 2016 WL 1122037, at *2 (E.D.N.Y. Mar. 22, 2016).  In fact, "district courts in this Circuit have typically considered three elements in determining whether an expert should be disqualified due to his relationship with the adverse party ... (1) the existence or reasonable expectation of a confidential relationship between the movant and the expert; and (2) whether the movant in fact disclosed confidential information to the expert." *Id.; see also Topps Co. v. Productos Stani Sociedad Anomina Indus. y Commercial,* No. 99 Civ. 9437, 2001 WL 406193, at *1 (S.D.N.Y. Apr. 20, 2001); *Hinterberger v. Catholic Health Sys., Inc.,* No. 08 Civ. 380, 2013 WL 2250591, at *6 (W.D.N.Y. May 21, 2013).  Some courts have also considered whether "the public [has] an interest in allowing or not allowing the expert to testify." *Grioli v. Delta Int'l Mach. Corp.,* 395 F. Supp. 2d 11, 14 (E.D.N.Y. 2005); *see also Koch Ref. Co. v. Jennifer L. Boudreau M/V,* 85 F.3d 1178, 1181 (5th Cir. 1996); *In re Namenda Direct Purchaser Antitrust Litig.,* No. 15 CIV. 7488 (CM), 2017 WL 3613663, at *3 (S.D.N.Y. Aug. 21, 2017).

## II.   DEFENDANTS' EXPERT WITNESS MUST BE DISQUALIFIED

### A.  Plantiff Had a Confidential Relationship With Defendants' Expert Witness

In order to have a confidential relationship or a reasonable expectation of one, one does not need to have retained the expert witness, nor do any confidentiality agreements need to be in place. *Hewlett-Packard Co. v. EMC Corp.,* 330 F. Supp. 2d 1087, 1093 (N.D. Cal. 2004) ("[th]e emphasis, as stated above, is not on whether the expert was retained per se but whether there was a relationship that would permit the litigant reasonably to expect that any

communications would be maintained in confidence.") *See, e.g., In re Ambassador Group, Inc., Litigation,* 879 F.Supp. at 243.   Where there have been a series of interactions, as opposed to an initial consultation, courts have found a reasonable expectation of confidentiality.  *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1182 (5th Cir. 1996).

In this case, there have been several telephone conferences, emails and document exchanges between Plaintiff and Mr. Sedlik.   In fact, Mr. Sedlik had so ingratiated himself with Plaintiff in their private conversations that he felt emboldened enough to suggest the firing of his current attorney and recommended an attorney Mr. Sedlik was working with.   Certainly there's a reasonable expectation of confidentiality when a potential expert witness is comfortable speaking with the Plaintiff, without his counsel on the line, as to suggest replacement of that counsel.   As Craig recalls, the conversation was very frank at times, on both sides.   Craig recollects that he revealed the circumstances surrounding the creation of the photographs, went through his own licensing history, discussed issues with the registration, elaborated on litigation strategy and divulged a plethora of strengths and weaknesses of the case.   Craig also answered Mr. Sedlik's questions pertaining to valuation of damages, rarity and exclusivity of the photographs as well as many other pertinent questions.   Craig does not necessarily remember everything they talked about and allows for the possibility that more relevant facts as well as legal issues were divulged in the course of his conversation.   It is clear that Craig had a reasonable expectation of confidentiality.   Plaintiff has satisfied the first prong for the purposes of disqualifying the Defendants' expert.

### B.  Plaintiff Disclosed Confidential Information to Mr. Sedlik

Few can dispute that Plaintiff most likely divulged a great deal of confidential information to Mr. Sedlik in his conversation outside of the presence of counsel.   In fact, Plaintiff claims to

have explained the whole theory of the case to Mr. Sedlik.  In a similar case, when Plaintiff

"spent considerable time with Mr. Vinas explaining his entire theory of the case as well as trial

tactics for the 1990 trial." *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1182 (5th

Cir. 1996).  In that case, the facts were not as favorable to disqualification, but Koch Court opine

that a case where the expert switches sides, "no one would seriously contend that a court should

permit a consultant to serve as one party's expert where it is undisputed that the consultant was

previously retained as an expert by the adverse party in the same litigation and had received

confidential information from the adverse party pursuant to the earlier retention. This is a clear

case for disqualification." *Id.* at 1181 (quoting *Wang Lab., Inc. v. Toshiba Corp.,* 762 F.Supp.

1246, 1248 (E.D.Va.1991)).

To be sure, in cases where the expert seemingly switches sides, the second prong is easily

proven.  In fact, the most courts have held that once someone is privy to some confidential

information, even if unintentionally, that one is prone to use it in later representations.

"Disqualification is designed to protect the integrity of the judicial process by ensuring that

experts do not use, even unwittingly, confidential information that they learned from a party in

the course of an earlier engagement against that party in a later lawsuit." *Eastman Kodak Co. v.

Kyocera Corp.,* No. 10-CV-6334CJS, 2012 WL 4103811, at *8 (W.D.N.Y. Sept. 17, 2012);

*Pellerin v. Honeywell Int'l Inc.,* No. 11CV1278-BEN CAB, 2012 WL 112539, at *3 (S.D. Cal.

Jan. 12, 2012)(rejecting "suggestion that [expert] can parse his knowledge of [party's]

confidential information to only rely upon what is provided to him in the litigation"; noting "the

human brain does not compartmentalize information in that manner").  It seems well settled that

even if Mr. Sedlik did not intend to receive and later use confidential information, receive he did.

The seminal case that supports this proposition is *Alien Tech. Corp. v. Intermec, Inc.,* No. 3:06-

CV-51, 2007 WL 4261972, at *2 (D.N.D. Nov. 30, 2007) ("while Stewart may not think at this time any knowledge he gained at Alien will be relevant, the danger is that no one may know how the information he learned from Alien may affect his opinion and Stewart may inadvertently use confidential information. The human brain does not compartmentalize information in that manner.").  With that in mind, whatever was revealed to Mr. Sedlik, regardless of his realization may be affecting his opinion, and his perspective on damages may be informed by confidential information he learned from Craig.

Courts also widely recognize that one cannot contract his way out of this conflict. "There is a substantial risk he may inadvertently use confidential information he is contractually barred from disclosing to Pellerin in his role as expert. This Court concurs with Judge Webb's comment that the human brain does not compartmentalize information in that manner."  *Pellerin*, 2012 WL 112539, at *3 (relying on *Alien Technology,* 2007 WL 4261972 at *2.); *Eastman Kodak Co. v. Kyocera Corp.,* No. 10 Civ. 6334, 2012 WL 4103811, at *8 (W.D.N.Y. Sept. 17, 2012).

Critically, a Court in this District has held that, "[a]n expert cannot build a Chinese wall in his own mind, despite his best efforts to do so." *In re Namenda,* 2017 WL 3613663, at *6 (collecting cases).  Mr. Sedlik cannot put wall around what he learned from Plaintiff or his counsel.  The motion to disqualify should be granted.

### C.   Public Interest Requires that Mr. Sedlik Be Disqualified.

Though not a fully articulated prong, Courts in this Circuit have considered, as a third element, the public's interest in preserving judicial integrity and fairness as balanced against the party's right to the assistance of experts who possess specialized knowledge and the right of such experts to pursue their professional calling.  *Auto-Kaps, LLC v. Clorox C*o., No. 15 CIV. 1737

(BMC), 2016 WL 1122037, at *2 (E.D.N.Y. Mar. 22, 2016).   In fact, if the "expertise is rare, or that there are few experts on the topic" then the Court may consider the non-movant's right as weighed against the interest of judicial integrity and justice.  *Auto-Kaps*, 2016 WL 1122037, at *4.  A simple Google search will result in tens of thousands of expert witnesses in the field of photography and copyright valuation.   Mr. Sedlik's expertise is neither rare, and the field is populated with experts.

As for the expense undertaken by Defendants in retaining Mr. Sedlik, those financial interests cannot defeat the Court's obligation to protect the integrity of the process.  "Although the Court recognizes the "not insignificant" amount of money spent on expert opinions, merely expending resources, however significant, to retain an expert does not establish prejudice, much less erase the risk of prejudice to the other party. Indeed, if it did, it would result in the very *fait accompli* that the law seeks to avoid." *Id.*

Beyond the amount the Defendants spent, there is Mr. Sedlik's right to make a living in his chosen profession.  *Auto-Kaps*, 2016 WL 1122037, at *5. (considering whether "an expert who is being deprived of his professional calling").  It doesn't seem Mr. Sedlik is being deprived of anything here.  In fact, he himself has revealed in his emails about being currently retained by another Plaintiff against UMG.  Decl. Lieb. & Ex. B.  Overall, Mr. Sedlik's services seem to be in demand.

Defendants cannot show any countervailing principles that outweigh the public's interest in a judiciary free of prejudice.

<u>CONCLUSION</u>

For these reasons, Plaintiff respectfully requests that the Court grant the motion to disqualify Defendants' expert witness, Jeffrey Sedlik.

Dated: December 1, 2017                          LIEBOWITZ LAW FIRM, PLLC
       Valley Stream, NY

By: /s/ Richard P. Liebowitz
Richard P. Liebowitz
Yekaterina Tsyvkin
James H. Freeman
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Tel.: (516) 233-1660
rl@liebowitzlawfirm.com

*Attorneys for Plaintiff Glen Craig*