UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
                                                                :

GLEN CRAIG                                                   :

                                    *Plaintiff,*                 : 16-cv-05439 (JPO)

vs.

UNIVERSAL MUSIC GROUP, INC.,
KINGSID VENTURES, LTD., and ESTATE OF
RILEY B. KING,

                                  *Defendants.*
---------------------------------------------------------x

## DECLARATION OF RICHARD P. LIEBOWITZ

I, Richard P. Liebowitz, hereby declare, under the penalty of perjury as follows:

1. I am a partner with the firm of Liebowitz Law Firm PLLC, and counsel to Plaintiff Glen Craig. I am a member in good standing of the bar of the state of New York.

2. I submit this declaration in support of Craig's Motion to Disqualify Defendants' Expert Witness Jeffrey Sedlik.

3. I have been a party to meet and confer calls and correspondence with the Defendants regarding Craig's Motion.

4. Plaintiff was referred to Mr. Sedlik by a professional acquaintance at American Society of Media Photographers. Craig shared the contact information for Mr. Sedlik with me. I contacted Mr. Sedlik on or around September 19, 2016 in hopes of retaining him as an expert witness in this case. We corresponded via email and set up a time for a telephone conference regarding the same.

5. Craig then told me that he contacted Mr. Sedlik while we were setting up a time for a joint telephone conference. Craig told me that he spoke at length to Mr. Sedlik about a range of issues pertaining to the case. I was not sure how many times they spoke but understood that the conversations were lengthy and extensive. Craig then told me that Mr. Sedlik was enthusiastic about the case and that he made a preliminary assessment of

damages that exceeded our previous assessment. Moreover, Craig said that our joint telephone conference should be held as soon as possible so that we, as his attorneys, would familiarize ourselves with Mr. Sedlik's calculation of damages in this case. Craig said that Mr. Sedlik is eager to teach us his method of calculating damages in this case. A telephone conference was set up for myself, Craig and Mr. Sedlik to discuss the case. True and correct copies of forwarded emails between myself, Craig, and Mr. Sedlik is attached hereto as Exhibit A.

6. I participated in the telephone conference with Craig and Mr. Sedlik regarding this case. Throughout the conference, it became apparent that Craig already discussed extensively not only the facts surrounding the case but legal strategy, potential issues, strengths and weaknesses of this case. Mr. Sedlik had been extensively informed of confidential information.

7. In our telephone conference, Mr. Sedlik continued to be enthusiastic about his participation in the case. He seemed to indicate that he is willing and able to be retained for this case and was already discussing the factual and legal issues in the matter with specificity.

8. Throughout our telephone conference Mr. Sedlik knew the facts surrounding the creation of the photographs, including Craig's work history during that time. He also had been apprised of how Craig discovered the photographs' exploitation by the Defendants. He knew issues surrounding the registration with the U.S. Copyright Office. These are just some of the categories that he was privy to as a result of his earlier conversations with Craig.

9. In May of 2017, when the case entered expert discovery stage, I contacted Mr. Sedlik again in order to ask him to put together a preliminary expert report in this case. We corresponded via email and set up another telephone conference. True and correct copies of forwarded emails between myself, Craig, and Mr. Sedlik is attached hereto as Exhibit B.

10. In our email exchange, I asked Mr. Sedlik if he has any conflicts in the matter. In his emails, Mr. Sedlik revealed that he has no conflicts with UMG, and even specified that he was then being retained by another plaintiff in a case against UMG.

11. He did say that he has some doubts about opposing the Estate of B.B. King as his publishing company has a licensing agreement with that entity.

12. In a later email, he also pointed out that Plaintiff's Exhibit E, in addition to Craig's photograph, contains Mr. Sedlik's photograph and that the latter was under a license to MCA records.

13. Still, Mr. Sedlik did not rule out being retained in this case. In fact, he asked whether the May 29, 2017 extension was granted by the Court and if that date is now the target for an expert report. I believed he was still considering the possibility of being retained in this case. With that in mind, we set up a telephone conference in anticipation of an expert report deadline.

14. During our telephone conference, it became apparent that Mr. Sedlik would not be retained in this matter after all. He had existing business relationships with at least some of the Defendants. He left open the possibility on working on other cases with our firm, whether for Craig or other clients.

15. On October 13, 2017 Defendants served expert disclosures, including an expert report by Mr. Sedlik.

16. I subsequently, tried to reconstruct the substance of our telephone conferences. I also asked Craig about his recollections of the same. I specifically wanted to know what confidential information Craig revealed to Mr. Sedlik in the telephone conferences that I was not a party to.

17. Craig told me that in his two conversations with Mr. Sedlik they discussed a range of issues pertaining to the case, including but not limited to, the circumstances surrounding the creation of the photographs, Craig's work history at the time the photographs were taken, Craig's discovery of the exploitation of the photographs, the exclusivity, rarity and scarcity of B.B. King photographs, the countries where the exploitation took place, the number of unique infringing products, several data points that inform a calculation of market value for the photographs, etc. There are other topics Craig could not remember with specificity. More importantly, there are other topics Craig might not recognize as relevant or confidential information.

18. Craig also mentioned that in that second telephone conversation with Mr. Sedlik, the latter expressed concern about Craig's current representation. Craig said that Mr. Sedlik encouraged him to fire his current firm in favor of the attorney Mr. Sedlik works with. Mr. Sedlik went as far as forwarding Craig a list of cases his current firm had recently filed and contact information for the attorney he prefers to work with. The email with the recommendation of the attorney Mr. Sedlik works with is attached in Exhibit A.

19. Craig specifically recalls that Mr. Sedlik implied these conversations were in confidence. He understandably asked that Craig not forward the email or the list of filed cases to anyone. Craig told me that he understood that their relationship was confidential in nature and that Craig expected whatever information was divulged by him to stay confidential.

Executed this 1st day of December, 2017

*Richard Liebowitz*
Richard P. Liebowitz
Liebowitz Law Firm PLLC