UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

|  |  |  |
|---|---|---|
| GLEN CRAIG, | : | No. 16 Civ. 5439 (JPO) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : |  |
|  | : |  |
| UMG RECORDINGS, INC., KINGSID | : |  |
| VENTURES, LTD., and ESTATE OF RILEY | : |  |
| B. KING, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

--------------------------------------------------------X

## **DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY JEFFREY SEDLIK**

LOEB & LOEB LLP

Barry I. Slotnick
C. Linna Chen
345 Park Avenue
New York, New York 10154

*Attorneys for Defendants*
*UMG Recordings, Inc., Kingsid Ventures,*
*Ltd., and Estate of Riley B. King*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 3

I.      MR. SEDLIK WAS NEVER RETAINED BY CRAIG .................................... 3

II.     MR. SEDLIK HAD ONLY PRELIMINARY CONVERSATIONS WITH
        CRAIG AND LIEBOWITZ, AND DISCUSSED ONLY THE
        ALLEGATIONS CONTAINED IN THE PLEADINGS ..................................... 3

        a.      Craig Disclosed Only the Complaint's Allegations to Mr. Sedlik
                During the September 19, 2016 Call ...................................................... 4

        b.      Craig Did Not Discuss This Action with Mr. Sedlik During the
                September 21, 2016 Call ....................................................................... 6

        c.      Craig and Liebowitz Mainly Discussed Mr. Sedlik's Fees and Potential
                Conflict During the September 22, 2016 Call ........................................ 7

        d.      Liebowitz and Mr. Sedlik Never Discussed the Substance of this Case
                During the May 15, 2017 Call ............................................................... 9

III.    MR. SEDLIK WAS CONTACTED AND RETAINED BY DEFENDANTS
        AFTER THE CLOSE OF FACT DISCOVERY ............................................... 10

IV.     EVEN IF CRAIG'S AND LIEBOWITZ'S ASSERTIONS REGARDING THE
        DISCLOSURES ARE TRUE – WHICH THEY ARE NOT – NO
        CONFIDENTIAL INFORMATION WAS DISCLOSED BY CRAIG .......................... 10

ARGUMENT .............................................................................................................. 13

I.      LEGAL STANDARD ...................................................................................... 13

II.     NO CONFIDENTIAL RELATIONSHIP WAS ESTABLISHED, AND IT
        WAS NOT OBJECTIVELY REASONABLE TO EXPECT THAT A
        CONFIDENTIAL RELATIONSHIP EXISTED ............................................... 15

III.    CRAIG DID NOT DISCLOSE ANY CONFIDENTIAL INFORMATION
        THAT WOULD BE PREJUDICIAL TO CRAIG ............................................ 18

        a.      Craig Fails To Identify Any Disclosures ............................................. 18

b.   Even If Craig's and Liebowitz's Assertions Regarding Craig's
Disclosures Are True – Which They Are Not – Craig Still Fails To
Meet His Burden ................................................................................. 19

1.   The Vague, General Categories Identified By Craig Are
Insufficient ................................................................................. 19

2.   The Information Disclosed Was Not Confidential Or Prejudicial ............ 20

3.   Craig's Case Law Is Entirely Inapposite Because He Never
Previously Retained Mr. Sedlik ................................................. 21

IV.   PUBLIC INTEREST REQUIRES DENIAL OF THIS MOTION ................................... 23

CONCLUSION ................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alien Tech. Corp. v. Intermec, Inc.*,
  No. 3:06-cv-51, 2007 U.S. Dist. LEXIS 89635 (D. N.D. Nov. 30, 2007)..............................22

*In re Ambassador Grp.*,
  879 F. Supp. 237 (E.D.N.Y. 1994) ............................................................................16, 19, 21

*Auto –Kaps, LLC v. Clorox Co.*,
  No. 15 Civ. 1737, 2016 U.S. Dist. LEXIS 37097 (E.D.N.Y. Mar. 22, 2016) ........................14

*Baghdady v. Baghdady*,
  Civ. No. 05CV1494 (AHN), 2007 U.S. Dist. LEXIS 84453 (D. Conn. Nov.
  15, 2007) ................................................................................................................................16

*Eastman Kodak Co. v. Kyocera Corp.*,
  No. 10-CV-6334CJS, 2012 U.S. Dist. LEXIS 132436 (W.D.N.Y. Sept. 17,
  2012) ....................................................................................................................14, 19, 20, 22

*Gordon v. Kaleida Health*,
  No. 08-CV-378S(F), 2013 U.S. Dist. LEXIS 73334 (W.D.N.Y. May 21, 2013)..............15, 20

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*,
  202 F.R.D. 426 (E.D. Pa 2001)...............................................................................................21

*Hewlett-Packard Co. v. EMC Corp.*,
  330 F. Supp. 2d 1087 (N.D. Ca. 2004) ........................................................................ *passim*

*Koch Refining Co. v. Jennifer L. Bourdreax MV*,
  85 F.3d 1178 (5th Cir. 1996) ............................................................................................16, 22

*Leonard v. Stemtech Int'l, Inc.*,
  834 F.3d 376 (3rd Cir. 2016) ...............................................................................................6, 8

*Moore N. Am., Inc. v. Std Register Co.*,
  No. 98-CV-485C, 2002 U.S. Dist. LEXIS 26488 (W.D.N.Y. June 21, 2002) ......................18

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15 Civ. 7488 (CM), 2017 U.S. Dist. LEXIS 113356 (S.D.N.Y. July 20,
  2017), *adopted in part by*, 2017 U.S. Dist. LEXIS 134047 (S.D.N.Y. Aug. 21,
  2017) .......................................................................................................................................13

*In re Namenda Direct Purchaser Antitrust Litig*,
No. 15 Civ. 7488 (CM), 2017 U.S. Dist. LEXIS 134047 (S.D.N.Y. Aug. 21,
2017) .........................................................................................................................14, 15, 22

*Pellerin v. Honeywell Int'l, Inc.*,
No. 11cv1278-BEN (CAB), 2012 U.S. Dist. LEXIS 3781 (S.D.Ca. Jan. 12,
2012) ....................................................................................................................................22

*Wang Labs., Inc. v. Toshiba Corp.*,
762 F. Supp. 1246 (E.D. Va 1991) .....................................................................................15

Defendants UMG Recordings, Inc., Kingside Ventures, Ltd. and Estate of Riley B. King (collectively, "Defendants"), by and through their undersigned attorneys, respectfully submit this memorandum of law in opposition to Plaintiff Glen Craig's motion to disqualify Defendants' expert witness, Jeffrey Sedlik (Dkt. No. 55).

## PRELIMINARY STATEMENT

In an effort to gain a tactical advantage in this case, Craig seeks to disqualify Mr. Sedlik from serving as an expert witness on behalf of Defendants, based solely on the fact that Craig and his attorneys had a total of 4 short, preliminary conversations with Mr. Sedlik regarding this action, prior to his retention by Defendants.  Notwithstanding the misleading declarations submitted by Craig and his counsel, Craig's motion to disqualify should fail because there was no confidential relationship, and no reasonable expectation of a confidential relationship between Craig and Mr. Sedlik, and because there is no evidence that Craig disclosed any confidential information to Mr. Sedlik that would be prejudicial to Craig.

Fatal to Craig's motion is the fact that Craig and his attorney seriously misrepresent the factual foundation upon which the motion is built.  Craig claims that he had "extensive telephone conferences" with Mr. Sedlik, that he revealed "significant facts, strategies and theory of the case" to Mr. Sedlik, and that as such, he "had a reasonable expectation of confidentiality."  Such statements are not true.  Craig had no reasonable expectation of confidentiality, because, as explained in detail by Mr. Sedlik, they had only short, preliminary phone calls totaling a little more than an hour, and those phone calls focused on other topics.  Moreover, in three of the four conversations that Mr. Sedlik had with Craig and/or his attorney, Richard Liebowitz, Mr. Sedlik specifically stated that he was not comfortable with being retained in this matter by Craig because of an ongoing business relationship that Mr. Sedlik has with the Estate.

Despite the fact that Mr. Sedlik had never been retained by Craig, Craig argues that Defendants' retention of Mr. Sedlik caused Mr. Sedlik to switch sides, and that as such, the retention is a "clear case for disqualification."   However, Craig articulates no case for disqualification.   Despite asserting that he "explained the whole theory of the case to Mr. Sedlik," Craig fails to identify a single, specific, and unambiguous confidential disclosure that he actually made to Mr. Sedlik.  As explained in detail by Mr. Sedlik, he only generally and briefly discussed the allegations contained in the Complaint with Craig and Liebowitz, and thus the information disclosed by Craig and Liebowitz to Mr. Sedlik was known already to Mr. Sedlik through his review of publicly available documents, including the pleadings filed in this case.

Even if Craig's assertions that he disclosed certain information to Mr. Sedlik are true – which they are not – those assertions fail to meet the level of specificity required for disqualification, and such categories of information are in fact, not confidential or prejudicial to Craig.  Indeed, Craig disclosed *all* of the information that he alleges to have told Mr. Sedlik in public filings, and to Defendants during the course of discovery, *prior* to Defendants' retention of Mr. Sedlik.

Finally, it should be noted that Mr. Sedlik has been engaged as a damages expert by Defendants.  It is patently obvious that the tensions between Mr. Sedlik, Craig and Liebowitz had virtually nothing to do with damages.  It seems equally clear that Craig contacted Mr. Sedlik mostly to complain about his lawyer, and that Liebowitz called to discuss *possible* engagement of Mr. Sedlik's expert services notwithstanding Mr. Sedlik's repeated statements that he could not and would not represent Craig in this action.  There was simply no reasonable expectation of confidentiality and no sharing of confidential information.

## FACTUAL BACKGROUND

### I.   MR. SEDLIK WAS NEVER RETAINED BY CRAIG

Mr. Sedlik was never retained by Craig or Liebowitz in this matter.  Declaration of Jeffrey Sedlik ("Sedlik Decl."), ¶ 39.  He never sent, signed, nor received any retention agreement, engagement letter, consulting agreement, or confidentiality agreement with Craig or Liebowitz.  *Id.*  Mr. Sedlik was never paid for any time that he spent on this matter by Craig or Liebowitz, and he never produced any preliminary reports or assessments for Craig or Liebowitz on this matter.  *Id.*

### II.   MR. SEDLIK HAD ONLY PRELIMINARY CONVERSATIONS WITH CRAIG AND LIEBOWITZ, AND DISCUSSED ONLY THE ALLEGATIONS CONTAINED IN THE PLEADINGS

Contrary to Craig's representations of "extensive" conferences, Mr. Sedlik's communications with Craig and Liebowitz were limited to four short phone calls for a total of just over an hour and a half,[1] and a few strings of emails discussing non-substantive matters.[2]  In fact, because Mr. Sedlik had no confidential relationship with Craig or Liebowitz, or any reasonable expectation of a confidential relationship with Craig or Liebowitz, when Mr. Sedlik sent Craig an email that Mr. Sedlik wanted Craig to keep confidential, Mr. Sedlik specifically requested that Craig "[p]lease do not forward this message or the attachment" on.  *Id.*, Ex. 2.

---

[1] Mr. Sedlik spoke with Craig on September 19, 2016 for 45 minutes.  Sedlik Decl., ¶ 9. On September 21, 2016, Mr. Sedlik spoke with Craig for 9 minutes.  *Id.*, ¶ 20.  On September 22, 2016, Mr. Sedlik spoke with Craig and Liebowitz for 15 minutes.  *Id.*, ¶ 24.  On May 15, 2017, Mr. Sedlik spoke with Liebowitz for 31 minutes.  *Id.*, ¶ 37.

[2] Though Mr. Sedlik, Craig and Liebowitz exchanged emails, those emails did not touch on the substance of this litigation.  *See id.*, Exs. 1-1, 1-2, 1-3, 2-9.  Rather, the email exchanges focused on setting up the calls, Mr. Sedlik's conflict with being retained by Craig in this action, and information that Mr. Sedlik sent to Craig after Craig expressed dissatisfaction with Liebowitz to Mr. Sedlik, and requested that Mr. Sedlik provide him with, among other things, referrals for alternate counsel.  *Id.*  Neither Craig nor Liebowitz sent Mr. Sedlik any documents or disclosed any confidential information in these email exchanges.  *Id.*

> a.     Craig Disclosed Only the Complaint's Allegations to Mr. Sedlik During the
>        September 19, 2016 Call

Craig and Mr. Sedlik first spoke on September 19, 2016. *Id.*, ¶¶ 6-9. The call lasted for 45 minutes, and they discussed a variety of issues. *Id.*, ¶¶ 9-17. During that call, Craig gave Mr. Sedlik only a brief summary of the allegations contained in the Complaint. *Id.*, ¶ 9. Specifically, all Craig told Mr. Sedlik was that "he took multiple photographs of B.B. King, which were used on multiple releases without his knowledge or permission… that the photographs were registered with the U.S. Copyright office, and that while the infringements occurred before the registration, they are still ongoing… that he was seeking damages from UMG." *Id.*, ¶ 9. All of this disclosed information is contained in the publicly filed complaint. Dkt. No. 1 ("Complaint" or "Cmplt."), ¶¶ 9-56, 62, 72. Indeed, Mr. Sedlik knew all of this information prior to this conversation with Craig because he had reviewed the Complaint prior to this call. Sedlik Decl., ¶ 17.

Craig's and Liebowitz's representations of this telephone call to the contrary are entirely false and misleading.

Mr. Sedlik denies that, during this call, he ever:

- Discussed "all aspects of the case" with Craig, Dkt. No. 58, ¶ 7;
- Heard from Craig as to "how [he] ended up taking the photographs, who else was there, who else was around on those dates, [his] relationship to Changes Magazine that publishe[d] other photographs that were taken during that session", *id.*;
- Heard from Craig his "theory of the case", *id.*;
- Asked any "questions about [Craig's] employment, commissions, licensing of the images, UMG's exploitation" or any "other questions" relevant to "assess[ing] the damages in this case", *id.*;
- Represented to Craig that he was "eager to teach [Craig and Liebowitz his] method of calculating damages in this case", Dkt. No. 57, ¶ 5;
- Made "a preliminary assessment of damages," gave a "detailed assessment of damages as a preview of [Mr. Sedlik's expert opinion," or "explain[ed] [his] methodology … that exponentially grew the potential damages in this case, *id.*; Dkt. No. 58, ¶¶ 8-9;
- Offered "to speak with [Liebowitz] about [his] method of calculating" damages; *id.*, ¶ 8;

- Heard from Craig as to his explanation of "how [he] measured damages to that point" *id.*;
- Had "lengthy [or] extensive" conversations regarding the substance of this case, Dkt. No. 57, ¶ 5; or
- Held himself "out as a member of the [Craig/Liebowitz] team." Dkt. No. 58, ¶ 9.

*See* Sedlik Decl., ¶¶ 9-17.

Rather, Craig and Mr. Sedlik spent the majority of the 45 minute call discussing other matters. *Id.*, ¶ 15. First, Craig informed Mr. Sedlik that he was interviewing other attorneys to replace Liebowitz, asked for Mr. Sedlik's thoughts on the proposed substitute counsel, asked Mr. Sedlik for a referral for substitute counsel, and asked for Mr. Sedlik's opinion on Liebowitz, including for Mr. Sedlik's knowledge of Liebowitz's experience and background. *Id.*, ¶ 15. After Mr. Sedlik answered all of Craig's questions, Craig requested that Mr. Sedlik send the contact information of the attorney that Mr. Sedlik referred, as well as any information that Mr. Sedlik had on Liebowitz's other cases. *Id.*.

Second, Craig asked for Mr. Sedlik's professional experience and his qualifications as an expert. *Id.*, ¶ 16. Craig requested, and Mr. Sedlik agreed to send a copy of Mr. Sedlik's curriculum vitae for the purpose of sharing his qualifications with Liebowitz. *Id.*

Lastly, Mr. Sedlik advised Craig of a conflict: Mr. Sedlik disclosed to Craig that he had a prior relationship with UMG, and that he has an ongoing business relationship with the Estate, which he felt was a conflict that would prevent his engagement in this action. *Id.*, ¶ 13. The phone call ended thereafter, and Mr. Sedlik followed up by sending Craig the materials and information that Craig requested during the call. *Id.*, ¶¶ 18-19., Exs. 1-1, 1-2, 1-3, 2.

**b.   Craig Did Not Discuss This Action with Mr. Sedlik During the September 21, 2016 Call**

Craig and Mr. Sedlik spoke for the second time on September 21, 2016.  *Id.*, ¶ 20.  That phone call lasted only nine minutes, during which time Mr. Sedlik and Craig had no substantive conversations regarding this matter.  *Id.*, ¶¶ 20-22.

Contrary to Craig's and Liebowitz's assertions, Craig and Mr. Sedlik did not discuss "the legal strategies employed in this case", (Dkt. No. 58, ¶ 10), and Mr. Sedlik never offered his legal services, never offered to collect compensation for Craig, never offered to write cease and desist letters, never offered to work for a small fee, never sent Craig's contact information to any attorney, and never recommended any attorney to Craig during that call or set up any meeting for Craig to meet such an attorney (*id.*).  Sedlik Decl., ¶ 20.  Indeed, Mr. Sedlik could not have recommended the attorney to Craig during that call, because he had already recommended that attorney to Craig during the September19, 2016 call, and given that attorney's information to Craig via email prior to this call.  *Id.*, Ex. 1-2.

In fact, the nine-minute conversation focused solely on Craig's choice of counsel, Craig's potential substitution of the attorney in this matter, and whether Mr. Sedlik would, despite having a potential conflict, still be willing to have a call with Craig and Liebowitz regarding this matter.[3]  *Id.*, ¶¶ 20-22.  Mr. Sedlik agreed to speak with Craig and Liebowitz, and the call ended without any discussion of the facts or theories of the case.  *Id.*, ¶ 22.

---

[3] Craig told Mr. Sedlik that Liebowitz had read *Leonard v. Stemtech Int'l, Inc.*, 834 F.3d 376 (3rd Cir. 2016) and was impressed with the dollar amount of damages awarded in that matter.  *Id.*, ¶ 9.  This, of course, is not confidential information.

### c. Craig and Liebowitz Mainly Discussed Mr. Sedlik's Fees and Potential Conflict During the September 22, 2016 Call

On September 22, 2016, Mr. Sedlik spoke to Liebowitz for the first time during a 15-minute conference call with Liebowitz and Craig.  *Id.*, ¶ 24.  They only briefly discussed this action.  *Id.*, ¶ 25.  Liebowitz gave Mr. Sedlik a general summary of the allegations of the Complaint:  he told Mr. Sedlik that "Craig had taken multiple photographs of B.B. King, … that such photographs were used on multiple releases without his knowledge or permission, … that the photographs were registered, that the infringements occurred before the registration but were ongoing, and that Craig was seeking damages, disgorged profits, and statutory damages from UMG."  *Id.*.  Again, this was all information that Mr. Sedlik already knew because he had previously reviewed the Complaint.  *Id.*, ¶¶ 24-25.

Thus, Mr. Sedlik had familiarity with all of this information, as well as with "Craig's work history," "the issues surrounding the registration with the U.S. Copyright Office," and of the "facts surrounding the case, … the legal strategy, potential issues, strengths and weakness of [the] case" (Dkt. No. 57, ¶¶ 7-8) because (a) the conversation at this preliminary consult was at a very general level, (b) the information was contained in the publicly filed complaint, answers, Craig's copyright registration, and publicly available articles containing Craig's work history, and (c) because of Mr. Sedlik's professional background, he has a professional knowledge of photography copyright issues, copyright law, and how they would generally apply to the facts as alleged in the Complaint.  Sedlik Decl., ¶ 26.  Contrary to Liebowitz's assertion, however, Mr. Sedlik did not discuss, because he had not been then made aware of, "how Craig discovered the photographs' exploitation by the Defendants."  *Id.*

Contrary to Craig's assertions, Mr. Sedlik also did not discuss legal "issues like work-for-hire, … the availability of damages and the extent of the exploitation" (Dkt. No. 58, ¶ 14) with

Craig or Liebowitz.  Sedlik Decl., ¶ 28.  While Mr. Sedlik did discuss the issue of statute of limitations, Mr. Sedlik brought this issue up on the call based upon his reading of the Complaint, Defendants' answers, his review of Craig's registration, and his understanding of copyright law. *Id.*  There was no substantive discussion regarding this issue or any other legal issues during the call.  *Id.*

In fact, the majority of the 15-minute phone call was devoted to discussion of Mr. Sedlik's background, fees, and potential conflict with the Estate.  *Id.*, ¶¶ 27-30.  Liebowitz stated that he was interested in retaining Mr. Sedlik as an expert on the issue of damages in this case.  *Id.*, ¶ 27.  Liebowitz told Mr. Sedlik that he had read *Stemtech*, and asked Mr. Sedlik if he could calculate damages in the same manner as he did in *Stemtech*.  *Id.*  Contrary to Craig's assertions, (Dkt. No. 58, ¶ 13), Mr. Sedlik did not provide any response with respect to the calculation of damages in this case, or discuss what methodology he would use to calculate damages in this case, because this was a very preliminary consultation, and because, as a business practice, Mr. Sedlik does not make any determinations of calculations or methodology until after he has reviewed all the relevant documents, materials, and testimony produced and filed in that matter.  Sedlik Decl., ¶ 27.  Rather, Mr. Sedlik simply answered, in very general terms, Liebowitz's basic and broad questions regarding Mr. Sedlik's role and opinions in *Stemtech* and in other matters in which Mr. Sedlik had served as an expert.  *Id.*

Liebowitz and Mr. Sedlik then had a detailed conversation regarding Mr. Sedlik's fees, which ended when Liebowitz asked if Mr. Sedlik would work for a flat fee in this matter and Mr. Sedlik declined to do so.  *Id*, ¶ 28.  Mr. Sedlik also informed Liebowitz that he had a prior business relationship with UMG, and disclosed that he felt he had a potential conflict because he has an ongoing business relationship with the Estate.  *Id.*, ¶ 29.  Contrary to Liebowitz's and

Craig's assertions regarding Mr. Sedlik's willingness and enthusiasm to be a part of the team and to be retained (Dkt. Nos. 57, ¶ 7, 58, ¶ 13), Mr. Sedlik recalls that he specifically advised Liebowitz and Craig that he was unable to accept the engagement due to the inclusion of the Estate as a defendant, and offered to refer them to another expert. *Id.*, ¶30 . Mr. Sedlik added that he would only consider this engagement if the Estate were dropped as a defendant, and if Craig and Liebowitz were willing to pay his standard fees. *Id.*

### d. Liebowitz and Mr. Sedlik Never Discussed the Substance of this Case During the May 15, 2017 Call

After almost 8 months of no contact with either Craig or Liebowitz regarding this matter, Liebowitz reached out to Mr. Sedlik on May 14, 2017 to discuss a potential retention. *Id.*, ¶ 32. Mr. Sedlik had a call with Liebowitz the following day. *Id.* ¶ 37. During that 31-minute phone call, Mr. Sedlik and Liebowitz did not have any conversations regarding the substance of this action. *Id.* Rather, they spoke only of Mr. Sedlik's conflict with the Estate, and Mr. Sedlik's fees. *Id.* Liebowitz again tried to get Mr. Sedlik to lower his fees, but Mr. Sedlik again refused to do so. *Id.* At that point, Liebowitz told Mr. Sedlik that he would no longer seek to retain Mr. Sedlik as the expert for this matter, and requested a referral for another expert, which Mr. Sedlik provided. *Id.*

The May 15, 2017 call was the last contact that Mr. Sedlik had with either Craig or Liebowitz on this matter. *Id.* Contrary to Craig's and Liebowitz's assertions that Mr. Sedlik was open to working on other cases with Liebowitz and/or Craig, Mr. Sedlik made no statements to that effect. *Id.*, ¶ 38 fn. 8. The only other conversation Mr. Sedlik had with Liebowitz was initiated by Liebowitz, seeking to potentially retain Mr. Sedlik in a different matter. *Id.* Mr. Sedlik declined to be retained in that matter because Liebowitz would not pay his standard fees. *Id.*

### III. MR. SEDLIK WAS CONTACTED AND RETAINED BY DEFENDANTS AFTER THE CLOSE OF FACT DISCOVERY

Fact discovery closed on May 22, 2017.  Dkt. No. 36.  Defendants contacted Mr. Sedlik for the first time on July 27, 2017.  Sedlik Decl., ¶ 45. On August 25, 2017, Defendants executed a retention agreement with Mr. Sedlik.  *Id.*, ¶ 49.  Thereafter, Mr. Sedlik requested, and Defendants provided, copies of all filings made in this action, and all materials disclosed by all parties in this action during discovery, including all deposition transcripts, interrogatory responses and document productions.  *Id.*, ¶ 50.

On October 13, 2017, Defendants served Craig with Mr. Sedlik's expert report. Declaration of Barry I. Slotnick ("Slotnick Decl."), ¶ 7, Ex. F (the "Report").  As is clearly evidenced by Mr. Sedlik's extensive and numerous citations in the Report to the record, Mr. Sedlik based his opinion and report solely on assumptions provided to him by Defendants' counsel, information disclosed in this action through discovery or public filings, and his experience and expertise in the area of calculating the fair market value of the licenses for the photographs that would have been negotiated for the allegedly infringing uses.  *Id.*, ¶ 53.

### IV. EVEN IF CRAIG'S AND LIEBOWITZ'S ASSERTIONS REGARDING THE DISCLOSURES ARE TRUE – WHICH THEY ARE NOT – NO CONFIDENTIAL INFORMATION WAS DISCLOSED BY CRAIG

Even if Craig's and Liebowitz's assertions regarding Craig's disclosures are true – which they are not – none of the information Craig disclosed was confidential or prejudicial, because Craig had voluntarily disclosed all of it to Defendants during discovery, *prior to Defendants' retention of Mr. Sedlik* in August 2017, and because Craig voluntarily disclosed at least some of the information to the public by filing the complaint in *Craig v. Getty Images (U.S.), Inc., et al.,* Case No. 17 Civ. 9916 (AJN) ("Getty Complaint") on December 19, 2017, in the United States District Court for the Southern District of New York.

First, Craig's alleged disclosures to Mr. Sedlik regarding "how [he] ended up taking the photographs, who else was there, who else was around in those days, [his] relationship to Changes Magazine that publishes[sic] other photographs that were taken during that session" and "the whole narrative of what happened and … [his] theory of the case" (Dkt. No. 58, ¶ 7) were also disclosed by Craig in his November 2016 interrogatory responses and during his March 2017 deposition − a deposition that Craig never designated as confidential.  *See* Slotnick Decl., Ex. A ("November 2016 Interrogatory Responses") (In response to Interrogatory No. 1, disclosing how Craig was asked to take the photographs and his relationship to Changes Magazine, and in response to Interrogatory No. 2, identifying the date and place of Craig's creation of the photographs); Ex. E ("Craig Depo") at 153:13-20, 154:16-159:19, 161:21-162:6. Craig similarly disclosed all of the above in the Getty Complaint.  Slotnick Decl., Ex. G, ¶¶ 26-34.

Second, Craig's answers to Mr. Sedlik's questions regarding "[Craig's] employment, commissions, licensing of the images" (Dkt. No. 58, ¶ 7) were similarly disclosed by Craig during his March 2017 deposition and in his January 2017 interrogatory responses, and in the Getty Complaint.  Slotnick Decl., Ex. C ("January 2017 Interrogatory Responses") (disclosing Plaintiff's employment history at the time of the taking of the photograph); Craig Depo, 59:11-71:22, 75:16-80:22, 89:5-16, 205:7-206:11; Ex. G, ¶¶ 24-25.  While Craig's answers regarding "UMG's exploitations" (Dkt. No. 58, ¶ 7) obviously cannot be information confidential *to Craig*, he disclosed to UMG such information through his interrogatories and his document production. January 2017 Interrogatory Responses (disclosing that Craig learned of the alleged infringements in May-June 2014); Slotnick Decl., Ex. D (Craig contacting UMG in June 2014 to request a list of CDs of titles that his photographs allegedly appear on); Ex. B (Liebowitz promising to

"provide a list of all infringing items along with corresponding information of how and when [Craig] discovered these" in response to Defendants' discovery requests).

Third, Craig's disclosures of "how [he] got assigned to cover the B.B. King event, who took the photographs and gave it to UMG, how many exploitations were found during [his] investigation" (Dkt. No. 58, ¶ 23) were again, disclosed by Craig in his interrogatory responses, document production, during his non-confidential deposition, and in the Getty Complaint. November 2016 Interrogatory Responses (In response to Interrogatory No. 1, disclosing how Craig was asked to take the photographs and his relationship to Changes Magazine, and in response to Interrogatory No. 2, identifying the date and place of Craig's creation of the photographs); Slotnick Decl., Ex. G (identifying how Craig contacting UMG to request a list of CDs of titles that his photographs allegedly appear on); Craig Depo, 38:17-40:11, 197:21-199:3, 212:6-16; Ex. G, ¶¶ 26-34.

To the extent that Craig also alleges that Liebowitz, and Mr. Sedlik "touched on issues like work-for-hire, statute of limitations, the availability of damages and the extent of the exploitation" (Dkt. No. 58, ¶ 14), such statement does not show that Mr. Liebowitz had actually discussed privileged information with Mr. Sedlik.  Importantly, Mr. Sedlik denies that any such disclosures ever occurred, and Liebowitz, despite having submitted a declaration in support of Craig's motion (Dkt. No. 57), fail to corroborate that such a conversation took place.

Moreover, neither Craig nor Liebowitz describe, with any specificity, the allegedly privileged and confidential information that Liebowitz disclosed to Mr. Sedlik.  Despite asserting that "Mr. Sedlik had been extensively informed of confidential information," Liebowitz's declaration is devoid of any specific disclosures made, and relies solely on inadmissible hearsay

– statements that he heard from Craig regarding Craig's conversations with Mr. Sedlik, as well as information that was not confidential:

- Craig's work history (Dkt. No. 57, ¶¶ 8, 17) was disclosed by Craig in his interrogatory responses and at his deposition, *supra*, 11;

- how Craig discovered the photograph's exploitation (*id.*) was disclosed by Craig at his deposition and was known by UMG because UMG aided in such discovery, *supra,* 12;

- the registration with the U.S. Copyright Office (*id.* at ¶ 8) is public knowledge and Craig's communications with the U.S. Copyright Office was disclosed during discovery;

- "the exclusivity, rarity and scarcity of B.B. King photographs" (*id.* at ¶ 17) is public knowledge in that there are hundreds of thousands of B.B. King photographs;

- "the countries where the exploitation took place" (*id.*) is listed in the Complaint.

To the extent that Craig relies on Liebowitz's assertion that "several data points that inform a calculation of market value for the photographs" was confidential information that was disclosed, Liebowitz fails to identify what those data points are, and fails to provide any evidence to substantiate his claim that those data points are confidential information and were not disclosed to Defendants during discovery.

## <u>ARGUMENT</u>

## I.   **LEGAL STANDARD**

"'[T]he instances of expert disqualification are rare,' and generally 'should not occur where a confidential relationship existed but no privileged information was communicated, or, alternatively, where no confidential relationship existed but privileged information was nonetheless disclosed.'" *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2017 U.S. Dist. LEXIS 113356, at *7 (S.D.N.Y. July 20, 2017) (quoting *Grioli v. Delta Int'l Mach. Corp.*, 395 F. Supp. 2d 11, 13-14 (E.D.N.Y. 2005)), *adopted in part by*, 2017 U.S. Dist. LEXIS 134047 (S.D.N.Y. Aug. 21, 2017).

Thus, "district courts in this Circuit have typically considered three elements in determining whether an expert should be disqualified due to his relationship with the adverse party ... (1) the existence or reasonable expectation of a confidential relationship between the movant and the expert; and (2) whether the movant in fact disclosed confidential information to the expert." *In re Namenda Direct Purchaser Antitrust Litig*, No. 15 Civ. 7488 (CM), 2017 U.S. Dist. LEXIS 134047, at *12 (S.D.N.Y. Aug. 21, 2017) (quoting *Auto –Kaps, LLC v. Clorox Co.*, No. 15 Civ. 1737, 2016 U.S. Dist. LEXIS 37097, at *6-7 (E.D.N.Y. Mar. 22, 2016)) (citations omitted). "To the extent the nature of the disclosures is disputed, courts also consider whether the confidential information revealed is relevant to the current litigation." *Auto –Kaps, LLC,* 2016 U.S. Dist. LEXIS 37097, at *7. (citations omitted). "As a third element, some courts also consider whether "the public [has] an interest in allowing or not allowing the expert to testify." *In re Namenda Direct Purchaser Antitrust Litig*, 2017 U.S. Dist. LEXIS 134047, at *12 (citations omitted).

Because "disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely," *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Ca. 2004), "[t]he burden is on the [movant] to establish these elements." *In re Namenda*, 2017 U.S. Dist. LEXIS 134047, *12 (citation omitted). Moreover, "'[t]he party seeking disqualification may not meet its burden with 'mere conclusory or ipse dixit assertions', but must identify 'specific and unambiguous disclosures that if revealed would prejudice the party.'" *Eastman Kodak Co. v. Kyocera Corp.*, No. 10-CV-6334CJS, 2012 U.S. Dist. LEXIS 132436, at *24 (W.D.N.Y. Sept. 17, 2012) (quoting *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 429 (E.D. Pa 2001) and *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Ca. 2004)).

## II.   NO CONFIDENTIAL RELATIONSHIP WAS ESTABLISHED, AND IT WAS NOT OBJECTIVELY REASONABLE TO EXPECT THAT A CONFIDENTIAL RELATIONSHIP EXISTED

Craig utterly fails to meet his burden of establishing that any confidential relationship existed, or that it was objectively reasonable to expect that a confidential relationship had existed. *In re Namenda Direct Purchaser Antitrust Litig*, 2017 U.S. Dist. LEXIS 134047, at *12 (S.D.N.Y. Aug. 21, 2017).

Craig does not argue or present any evidence establishing that a confidential relationship actually existed, because it did not exist. Mr. Sedlik was never retained by Craig, never paid by Craig, and Mr. Sedlik and Craig never entered into any consulting agreement, retention agreement, confidentiality agreement, or any other agreement to memorialize any confidential relationship between them. *Supra*, 3.

Because no confidential relationship ever existed between Craig and Mr. Sedlik, Craig instead asserts that he "has satisfied the first prong" because "[he] had a reasonable expectation of confidentiality" with respect to his and his attorneys' communications with Mr. Sedlik. Dkt. No. 56, 6. Craig misapplies the law. The standard for establishing whether there was a reasonable expectation of confidentiality is not subjective. Rather, the standard is based on whether the party or its counsel was "**objectively reasonable** [in] belie[ving] that a confidential relationship existed…" *Gordon v. Kaleida Health*, No. 08-CV-378S(F), 2013 U.S. Dist. LEXIS 73334, at *23 (W.D.N.Y. May 21, 2013) (emphasis supplied); *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1249 (E.D. Va 1991) (courts may disqualify consultants where there is "persuasive evidence that a lawyer was objectively reasonable in assuming the existence of a confidential relationship and that confidential information was disclosed."). However, because it was not objectively reasonable for Craig or for his attorney to believe that a confidential relationship had existed between Craig and Mr. Sedlik, the disqualification motion must fail.

Four short conversations adding up to just over an hour and a half of time was the extent of the communications between Mr. Sedlik, Craig and Liebowitz.  Those conversations included a slew of other topics unrelated to the facts and theories of this case.  Moreover, as these conversations were a general, preliminary consultation by Mr. Sedlik, Craig and Liebowitz never discussed any facts with Mr. Sedlik beyond those that were disclosed in the Complaint.  Mr. Sedlik was never retained to, and never provided any preliminary estimates or reports for Craig or Liebowitz.  These facts are simply not enough to sustain the legal inference of a confidential relationship.  *See Baghdady v. Baghdady*, Civ. No. 05CV1494 (AHN), 2007 U.S. Dist. LEXIS 84453, at *9-11 (D. Conn. Nov. 15, 2007) (no confidential relationship where the communications were nothing "more than an informal consultation," and where the expert was not retained or provided any documents relevant to the case, and was not requested to perform any services); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal 2004).

The cases cited by Craig are all inapposite, because the expert and the movant in those cases had much more significant contacts.  Those cases held, *inter alia*, that it was objectively reasonable to assume that a confidential relationship existed because the movant had previously retained the expert.  For example, in *In re Ambassador Grp.*, 879 F. Supp. 237 (E.D.N.Y. 1994), the court found that the Receiver, the movant, was objectively reasonable to assume a confidential relationship with the expert, JLC, when the Receiver had initial conversations with respect to retaining JLC to perform audit work on the Ambassador receivership, because the Receiver had previously retained JLC to perform audit work on a prior receivership, which was structured similarly to the Ambassador receivership, with the same individuals managing the receivership as in Ambassador.  Similarly, the court in *Koch Refining Co. v. Jennifer L. Bourdreax MV*, 85 F.3d 1178 (5th Cir. 1996) found that "the record support[ed] a longstanding

series of interactions" such that the movant had a reasonable expectation of confidentiality because the expert was previously retained by the movant in a related case, was paid $8000 by the movant, had submitted several written reports to the movant, and was listed as a will call expert for the trial in the related case. *Id.* at 1181-82.

There was no such prior retention of Mr. Sedlik by Craig or his counsel here to support a reasonable expectation of confidentiality.  Indeed, in *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1093 (N.D. Cal 2004), a case cited by Craig, the court found that the movant had no reasonable expectation that a confidential relationship existed, where the expert had not previously been retained by the movant, despite the movant's declaration that "it was [his] understanding that [the expert] would hold in confidence all of [their] discussions and not disclose them without [his] permission." *Id.* at 1096.  Thus, despite the movant's subjective belief, the court held that it was not objectively reasonable, and indeed, "it strain[ed] credulity to argue" that with no prior retention, and "only a few weeks after contacting an[sic] potential expert witness," that "[movant's] counsel would disclose aspects of its litigation strategy to someone who had not yet signed a confidentiality agreement and that such a conversation could have occurred in the span of a one-hour conversation in which [the expert] was alleged to have discussed his views of claims in six separate and technically complex patents." *Id.* .

Similarly here, it strains credulity to argue that (a) with no prior retention, and merely days after first contacting Mr. Sedlik, Craig and Liebowitz could have reasonably expected that a confidential relationship had been established such that it would have been safe to disclose confidential information and litigation strategy, or that (b) in the span of the 15 minute teleconference with both Craig and Liebowitz on September 22, 2016 – the first conversation that Mr. Sedlik had ever had with Liebowitz – that Liebowitz and Mr. Sedlik could have had any

in-depth discussions regarding any methodologies or calculations of damages, the work for hire doctrine, the statute of limitations, *and* the applicability of damages.

Because it was not objectively reasonable for Craig to assume that a confidential relationship had been established, the motion for disqualification must be denied. *Moore N. Am., Inc. v. Std Register Co.,* No. 98-CV-485C, 2002 U.S. Dist. LEXIS 26488, at *7 (W.D.N.Y. June 21, 2002) ("disqualification is likely inappropriate if either inquiry yields a negative response.") (quoting *Wang Laboratories*, 762 F. Supp. at 1248).

### III.   CRAIG DID NOT DISCLOSE ANY CONFIDENTIAL INFORMATION THAT WOULD BE PREJUDICIAL TO CRAIG

Because "discussions between parties or counsel and experts do not carry the presumption that confidential information was exchanged," the burden is on the movant to "point to specific and unambiguous disclosures that if revealed would prejudice the party." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Ca. 2004) (citations omitted). Thus, even if it was objectively reasonable for Craig to assume a confidential relationship existed between him and Mr. Sedlik – which it is not – the disqualification motion must still be denied because Craig utterly fails to meet this burden.

Craig cannot meet this burden, because he relies only on conclusory, ipse dixit assertions to support his claim that confidential information was divulged to Mr. Sedlik, and because the information he allegedly shared with Mr. Sedlik was not confidential or prejudicial.  In fact, Craig disclosed all of the information he allegedly shared with Mr. Sedlik, to Defendants through discovery, and in the publicly filed Getty Complaint.

#### a.   Craig Fails To Identify Any Disclosures

Craig cannot specify what confidential information he actually told Mr. Sedlik (Dkt. No. 58 ¶ 23), because, as recounted in detail by Mr. Sedlik, Craig did not actually disclose any

confidential information to Mr. Sedlik.   To the extent that Craig relies on confidential information that "[he doesn't] remember that [he] said that could have been confidential" and "things [he had] said that [he] might not know are confidential"  (Dkt. No. 57, ¶ 17) without specifying what such confidential information is, Craig fails to meet the burden to "point to [the] specific and unambiguous disclosures" that establish that confidential information was exchanged.  *Hewlett-Packard Co..* 330 F. Supp. 2d at 1094; *In re Ambassador Grp.*, 879 F. Supp. 237, 243 (E.D.N.Y. 1994) (witness's statements that "he thought he discussed [confidential] material about Ambassador" to the expert but "did not specifically recollect what he told [the expert]" were "vague and ambiguous and fail to support" an argument for disqualification).

### b.  Even If Craig's and Liebowitz's Assertions Regarding Craig's Disclosures Are True – Which They Are Not – Craig Still Fails To Meet His Burden

Even if Craig's and Liebowitz's assertions regarding Craig's disclosures are true – which they are not – Craig cannot meet his burden of establishing that confidential information was disclosed.  Other than Craig's ipse dixit assertions, Craig's submissions are devoid of any credible, specific examples to support his contention that Mr. Sedlik received any confidential information.  Moreover, to the extent that the court finds Craig's disclosures are sufficiently specific, disqualification is still not warranted because Craig fails to establish that any confidential and prejudicial information was disclosed to Mr. Sedlik.

### 1.  The Vague, General Categories Identified By Craig Are Insufficient

Craig identifies only general categories of information that are too vague to support his disqualification motion.  Craig's assertions that he disclosed "the theory of the case" and "related the whole narrative of what happened" to Mr. Sedlik including "how [he] ended up taking the photographs, who else was there, who else was around in those days, [his] relationship to

Changes Magazine that publishe[d] other photographs that were taken during that session" are too vague to support a motion for disqualification.  Dkt. No. 58, ¶ 7; *see* Dkt. No. 57, ¶¶ 6, 8, 17. Courts have routinely found as insufficient, such general allegations that broad categories of information were disclosed – including those in the cases cited by Craig.  Specifically, in *Kyocera Corp.*, 2012 U.S. Dist. LEXIS 132436, at *29, the court held that conclusory allegations in attorney's affidavit that confidential information regarding "Kodak's digital camera technology, and the 'components that are involved in digital camera functionality'" without describing the actual information that the expert learned was insufficient to establish that confidential information was obtained by the expert.

Similarly, in *Hewlett-Packard*, 330 F. Supp. 2d at 1097, the court denied the movant's motion to disqualify because the movant failed to establish any confidential information was disclosed where it "offered neither specific details of such [litigation strategy] discussion nor evidence contradicting [the expert's] version of the events" and because "the subject matter of the discussion was material contained in publicly available patents," and the court in *Gordon v. Kaleida Health*, No. 08-CV-3785(F), 2013 U.S. Dist. LEXIS 73334, at *69 (W.D.N.Y. May 21, 2013) found as insufficient evidence that confidential information was disclosed to the expert, movant's declaration that he "discussed with [expert] documents' 'significance' to Defendants' defense."

### 2.   The Information Disclosed Was Not Confidential Or Prejudicial

To the extent that the court finds Craig's disclosures are sufficiently specific, disqualification is still not warranted because Craig fails to establish that any *confidential* information was disclosed to Mr. Sedlik that would be *prejudicial* to Craig.  "Confidential information essentially is information of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client

privilege." *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Ca. 2004) (citations and quotation marks omitted).

The record is clear that Craig did not disclose any non-public, confidential information to Mr. Sedlik.  *See* 10-13.  Indeed, "the fact that an individual may have access to *public* information about a product cannot be a basis to disqualify him from being an expert."  *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 430 (E.D. Pa 2001) (emphasis in original); *In re Ambassador Grp.*, 879 F. Supp, 237, 245 (E.D.N.Y. 1994) (denying disqualification motion, in part, because the alleged confidential information "is not confidential information").

Moreover, Craig cannot meet his burden of demonstrating that these alleged disclosures are prejudicial in any way.  The information allegedly disclosed by Craig to Mr. Sedlik was disclosed *by Craig to Defendants* during discovery and publicly filed, *supra*, 3-13, and Mr. Sedlik relied only on information and documents publicly available or disclosed to Defendants through discovery to form his opinion and draft his Report.  Sedlik Decl., ¶ 53.

### 3. Craig's Case Law Is Entirely Inapposite Because He Never Previously Retained Mr. Sedlik

Because he could not identify any confidential information that was disclosed to Mr. Sedlik, as a last ditch effort, Craig's asserts, conclusorily and without any factual basis, that he "most likely divulged a great deal of confidential information to Mr. Sedlik in his conversation outside of the presence of counsel." Dkt. No. 56, 6.  Craig bases this conclusion on the supposed facts that (a) Mr. Sedlik allegedly "switche[d] sides," and (b) due to the conversations that Craig had with Mr. Sedlik, Mr. Sedlik is incapable of separating out the confidential information he learned from Craig, and the information that he learned to form his opinion.  *Id.*, 7-8.  Neither assertion is supported by fact or law.

As discussed in detail *supra*, 3-13, Mr. Sedlik was never retained by Craig, and Craig divulged no confidential information to Mr. Sedlik.  Even if he did, the cases that Craig cites are inapposite and distinguishable, because in *all* of those cases, the expert had previously been retained or employed by the movant, and had responsibilities during that prior employment or retention directly related to the issues being litigated – facts absent here.  *See Koch Ref. Co. v. Jennifer L. Boudreau MV*, 85 F.3d 1178 (5th Cir. 1996) (disqualifying the expert where the expert had been previously retained by the movant in a related case, had written several reports for the movant in that case, and had been paid $8000 by the movant for that work); *Pellerin v. Honeywell Int'l, Inc.*, No. 11cv1278-BEN (CAB), 2012 U.S. Dist. LEXIS 3781 (S.D.Ca. Jan. 12, 2012) (same result where the expert was previously employed by the movant in the division responsible for the manufacture of the products that are at the heart of the trade secret misappropriation action); *Alien Tech. Corp. v. Intermec, Inc.*, No. 3:06-cv-51, 2007 U.S. Dist. LEXIS 89635, at *6 (D. N.D. Nov. 30, 2007) (same result where the expert was previously a "high ranking executive" employed by movant, and was "knowledgeable of [movant's] product line, its future strategies, and its legal and intellectual planning"); *In re Namenda*, 2017 U.S. Dist. LEXIS 134047, at *10, 14 (S.D.N.Y. Aug. 21, 2017) (same result where the expert was previously employed by movant for a period of 23 years, and movant's "conduct during the period when [the expert] was a senior … regulatory official is at issue in this case").

In fact, in *Eastman Kodak Co. v. Kyocera Corp.*, 2012 U.S. Dist. LEXIS 132436, at *31 (W.D.N.Y. Sept. 17, 2012), a case cited by Craig in support of his position that Mr. Sedlik must be disqualified, the court denied Kodak's motion to disqualify Kyocera's expert despite the fact that Kodak had previously retained the expert in a different patent infringement case, because "Kodak has failed to point to 'specific and unambiguous disclosures' [made to the expert] that if

revealed would prejudice' Kodak in the instant action." (quoting *Hewlett-Packard*, 330 F. Supp. 2d at 1094). Similarly here, because Craig has failed to point to any specific and unambiguous disclosures of confidential information made to Mr. Sedlik that would prejudice Craig, Craig's motion to disqualify must be denied.

## IV.   PUBLIC INTEREST REQUIRES DENIAL OF THIS MOTION

Public policy also weighs in favor of denying the motion. Contrary to Craig's assertions, the photography copyright valuation expert market is not "populated with experts." Dkt. No. 56, 9. While there may well be many people purporting to be such an expert, Mr. Sedlik is only one of a few *qualified* experts in the photography copyright space. Sedlik Decl., ¶ 55. Contrary to Craig's assertions, Mr. Sedlik's expertise is indeed "rare" – he is the *only* photography copyright licensing expert who has taught CLE courses to attorneys on copyright law, trained employees at the U.S. Copyright Office, taught workshops on copyright at Stanford Law School, has served as the President of the Advertising Photographers of America, is the current CEO of the glogal standards body for the photography licensing industry, is a globally recognized photographer who has been recognized as "Photography Person of the Year," among other awards, and who has taught copyright law and copyright licensing at the college level for 21 years. Report, at 2-5 and Ex. A.

Moreover, granting Craig's motion would in fact jeopardize Mr. Sedlik's ability to earn an essential source of income. If an expert could be disqualified on the facts of this case – where no payments have been made, no confidentiality or other consulting or retainer agreement signed, where only public information was disclosed, where the information allegedly disclosed to the expert *was actually disclosed to Defendants by Plaintiff,* and where there were only a handful of brief interactions with the movant – parties in other cases might be tempted to create a purported conflict solely for the purpose of preventing their adversaries from using the services

of that expert, thereby jeopardizing the expert's ability to earn such income.  Indeed, if "experts are too easily disqualified, unscrupulous attorneys may attempt to create relationships with numerous potential experts … hoping to preempt the ability of their adversaries to obtain expert assistance."  *Hewlett-Packard*, at 1095 (quoting *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1083 (C.D.Ca. 2000).  As such, it is in the interest of public policy to deny Craig's motion for disqualification.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's motion to disqualify Mr. Jeffrey Sedlik as Defendants' expert be denied, and for such other and further relief as this Court deems just and proper.

Dated:  New York, New York
       December 22, 2017

                                  LOEB & LOEB LLP

                                  By:*/s/ Barry I. Slotnick*
                                     Barry I. Slotnick
                                     C. Linna Chen
                                     345 Park Avenue
                                     New York, New York 10154

                                  *Attorneys for Defendants*
                                  *UMG Recordings, Inc., Kingsid Ventures, Ltd., and Estate of Riley B. King*

15460074.1
210088-10006