**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-- - - - - - -- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                        :
GLEN CRAIG                                               :
                                                        :
                          *Plaintiff,*                  : 16-cv-05439 (JPO)
                                                        :
                                                        :
          vs.                                           :
                                                        :
                                                        :
UNIVERSAL MUSIC GROUP, INC.,                            :
KINGSID VENTURES, LTD., and ESTATE OF                   :
RILEY B. KING,                                          :
                                                        :
                          *Defendants.*                 :
-- - - - - - -- - - - - - - - - - - - - - - - - - - - - - - - - -x


### REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANTS' EXPERT WITNESS

## I.     INTRODUCTION AND BACKGROUND

In their opposition to Plaintiff's motion to disqualify Mr. Sedlik, Defendants hang their hat on the fact that Mr. Sedlik was never officially retained by Craig.  This purported failure to formally retain the expert witness does much of the heavy lifting in Defendants' argument. Misguidedly, Defendants argue that without a retainer, it is unreasonable to believe that a confidential relationship exists.  Furthermore, Defendants distinguish the authorities Craig cites as inapposite because in those cases the movant either retained or employed the expert witness. This, however, is a distinction without a difference.  It is well established that there is a paucity of legal authority on the disqualification of expert witnesses.  There is no identical fact pattern to be found in the relevant case law.  That does not mean, contrary to Defendants' position, that Plaintiff cannot support its legal arguments with relevant authorities.

The Defendants also challenge Craig's representations that he shared confidential information with Mr. Sedlik during their telephone conversations.   Defendants argue that any information Craig revealed in conversations with Mr. Sedlik was either publicly available or revealed through the process of discovery.   Taken to its logical conclusion, no information given to any expert witness is ever confidential.   As a practical matter, an expert witness is often exposed to facts that are publicly available or are part of the record of the case.   The expert witness culls this information and renders an opinion, using his or her expertise and applying expert methodologies to facts as they are known to the parties.  It is precisely in the culling of the information, or in the selection that the confidences lie.   All expert witnesses are privy to known facts, but which facts are advantageous, detrimental, and how these facts play into the legal strategy – that is where the confidential nature of the expert witness relationship matters.  Here, Defendants cannot hide behind the record of the case and publicly available information because

Mr. Sedlik was specifically given facts that were a source of strength, or weakness, and facts that informed legal strategies and theories of the case. Dk. 57 ¶¶6-10, 13-14; Supp. Decl. Craig ¶¶4-12. Therefore, while the bare facts might be available publicly and/or in the record, confidential information Mr. Sedlik received from the Plaintiff made the culling process easier.  In other words, Plaintiff shone the light on the facts that informed his legal strategy, pointed out weaknesses of his own case thereby revealing confidential information.

Moreover, Craig did reveal facts that were not on the record, though technically they were publicly available.  Supp. Decl. ¶¶5-12.   In one particular instance that Craig recalls – he told Mr. Sedlik that there are additional infringements involving the Defendants and the same photographs.  These infringements in the form of song books, t-shirts, posters and other promotional materials were not part of the record of this case.  These promotional materials were, however, publicly available in the sense that they were available for sale online.   These particular facts are good examples of something available publicly, via the internet, but revealed as confidential information to Mr. Sedlik.  This confidential information pointed out a fact, that while available to anyone, informs the Plaintiff's position.   There are many similar facts that were divulged to Mr. Sedlik throughout his interactions with the Plaintiff.  Some of these confidences have been alluded to or discussed in Declarations filed on ECF.  A detailed account of confidential information revealed to Mr. Sedlik can only be revealed in an *ex-parte, in camera* hearing.   Defendants object to Plaintiff's conclusory language, thereby asking him to file public documents that reveal confidential, detrimental facts that may prejudice the Plaintiff's case.  If the Court finds that Plaintiff's submissions were insufficient, then he must be afforded the opportunity to fully present his confidential revelations in an *ex-parte, in camera hearing*.

Finally, public interest requires that Mr. Sedlik be disqualified.  As a matter of public policy the Court should deter an expert who mines one party for information germane to the case, just to sell his services to the adversary in the same litigation.   The unsavory truth behind this transaction is that Mr. Sedlik used his reputation among the professional photographers to ingratiate himself to the Plaintiff.  The latter, having trusted Mr. Sedlik as an advocate for the 'little guy' revealed many confidences with the reasonable belief that these will stay confidential.  Mr. Sedlik did not stop there, however.  He offered Craig his own quasi-legal services like sending Cease & Desist letters and negotiating settlements.  Dkt. 57 ¶10 When Craig did not express the requisite enthusiasm for Mr. Sedlik's entrepreneurial spirit, Mr. Sedlik resorted to attacking Plaintiff's counsel.  In addition to casting personal and professional aspersions, Mr. Sedlik also set up a meeting between Craig and his own attorney of choice.  Dkt. 57 ¶11.  Mr. Sedlik expressed a strong preference for his own attorney.   When that meeting did not result in a partnership and he could not the undersigned counsel to pay his exorbitant fees, he turned to Craig's adversary.  Supp. Decl. Craig ¶13.  The Court should not and cannot countenance such behavior from an expert witness.   Mr. Sedlik's own conduct demands that he be disqualified as an expert in this case.

## II.  DEFENDANTS' EXPERT WITNESS SHOULD BE DISQUALIFIED.

Plaintiff has sufficiently shown that 1) Craig had a reasonable belief that he had a confidential relationship with Mr. Sedlik and 2) Craig disclosed confidential information relevant to the case.   Having failed to show any countervailing reasons that Defendants' right to retain a comparable expert would be frustrated by the disqualification or that Mr. Sedlik's ability to earn a living would be impeded, Defendants cannot name any public interest or policy that outweighs the interest of the Court to protect the integrity of the judicial process.

A.  Plaintiff Reasonably Believed That He Had A Confidential Relationship with Mr. Sedlik.

Courts have considered several factors in determining the reasonableness of a litigant's conclusion that it maintained a confidential relationship with an expert witness. They include (1) the length of the relationship and frequency of contact with the expert, including the number of meetings between the expert and the attorneys; (2) whether the expert was provided with confidential information, work product or documents, (3) whether the parties entered into a formal confidentiality agreement, (4) whether the expert was asked to agree not to discuss the case with the opposing parties or counsel, (5) whether the expert was retained to assist in the litigation or testify as a trial witness and/or receive a fee, (6) whether the moving party funded or directed the formation of the opinion to be offered at trial, and (7) whether the expert derived any of his specific ideas from work done under the direction of the retaining party. *Hewlett–Packard Co. v. EMC Corp.,* 330 F.Supp.2d 1087, 1093 (N.D.Cal.2004) (quotations marks and citations omitted). The focus of the inquiry is whether the relationship "would permit the litigant reasonably to expect that any communications would be maintained in confidence." *Id.; accord In re Ambassador Grp., Inc., Litig.,* 879 F. Supp. 237, 243 (E.D.N.Y. 1994); *In re Dreier LLP*, 482 B.R. 863, 869 (Bankr. S.D.N.Y. 2012).

Defendants argue that if the expert wasn't formally retained, then no confidential relationship could exist. *In re Dreier* opines that even in the absence of retaining an expert, a confidential relationship is possible.[1]   *In re Dreier LLP*, 482 B.R. at 870 ("It is true… that no confidentiality

---

[1] "Whether it would make a difference if JLC was officially retained or not by the Receiver on Ambassador … this is a 'distinction without a difference.' The inquiry is not a 'bright line test', *i.e.,* the emphasis is not on whether JLC was retained, *per se.* Rather, the appropriate inquiry is: did JLC and the Receiver have a 'relationship which permitted [the Receiver] reasonably to expect that any communications concerning [Ambassador] would be maintained in confidence by [JLC].'  *Ambassador Group,* 879 F.Supp. at 243. (internal citations and quotations omitted. "The case law does not support …a "bright-line" rules which would make the question of

agreement existed between Amaranth and Onefater. Furthermore, Amaranth did not retain

Onefater or ask him to produce an expert report on its behalf. However, Onefater was asked to

opine on Amaranth's internal processes and administration. This presumably required candid

communications between Onefater and Amaranth personnel or the use of information supplied

by Amaranth, a party to the Joint Defense Agreement with Maounis. Accordingly, the Court

finds that it was objectively reasonable for Amaranth to believe that any information that it

provided for use by Onefater was given in confidence.")  Failure to formally retain an expert

does not defeat the possibility of a confidential relationship.   In this case, Plaintiff did ask Mr.

Sedlik for an expert report.  Dkt. 57 ¶¶4, 9, 15.  Plaintiff also discussed at length confidential

matters pertaining to this case, without the benefit of his own counsel on the line.  In fact, the

telephone conferences between Plaintiff and Mr. Sedlik lasted over 90 minutes.   In their first

lengthy conversation, Mr. Sedlik asked numerous, probing questions about all aspects of the

case, including the circumstances surrounding the creation of the photographs, employment and

---

disqualification turn exclusively on the determination of whether a contractual relationship
existed..." *Paul By & Through Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271, 279 (S.D.
Ohio 1988).  In *Paul By*, the Court found that a rule would prove both too little and too much.
"Under certain circumstances, it might be reasonable for an attorney or his principal to
communicate privileged or confidential matters to an expert witness even in the absence of a
formal contractual relationship. … the proper focus in such situations is to determine, first,
whether the attorney or client acted reasonably in assuming that a confidential or fiduciary
relationship of some sort existed and, if so, whether the relationship developed into a matter
sufficiently substantial to make disqualification or some other judicial remedy appropriate." *Id.
Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.,* 734 F. Supp. 334, 336 (N.D. Ill. 1990)
("[I]t is evident that there is no "right" way for an attorney to retain an expert for purposes of
litigation. While a formal, written contract establishing both the existence of the relationship and
prohibiting the disclosure of any information gained by the expert during the course of the
relationship would be an ideal way to eliminate questions of the sort which have arisen in this
case, neither lawyers nor experts always, or even often, go to such lengths.") In certain
circumstances it is reasonable for a party to communicate confidential information to an expert in
the absence of a formal contract and to expect those communications to remain confidential.

licensing history, litigation and settlement strategy and a myriad of other inquiries meant to elicit confidential information.  Dk. 57 ¶¶7, 10, 14.  Here, Mr. Sedlik spoke so frankly about a host of issues, including the effectiveness Plaintiff's counsel, suggesting that Mr. Sedlik himself could send out Cease & Desist letters and negotiate settlements on Plaintiff's behalf; referring Plaintiff to a favored attorney and arranging a meeting between them; emailing Plaintiff information and explicitly asking him to keep that information confidential.  Plaintiff's belief that they enjoyed a confidential relationship was eminently reasonable.  *Id.*

B.  Plaintiff Shared Confidential Information Relevant to the Case.

Having satisfied the first prong, Plaintiff posits that he revealed confidential information to Mr. Sedlik.  Court have considered what constitutes confidential information.  "It could include discussion of the party's 'strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses.'" *Hewlett-Packard Co. v. EMC Corp.,* 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004).  Moreover, the confidential information must be relevant or substantially related.  *Gordon v. Kaleida Health*, No. 08-CV-378S F, 2013 WL 2250506, at *5 (W.D.N.Y. May 21, 2013) (collecting cases).

In this case, Plaintiff has met his burden in showing that he revealed confidential information.   On at least two occasions, Plaintiff spoke to Mr. Sedlik without counsel present. Their telephone conferences lasted well over 90 minutes, during which Plaintiff pinpointed strengths and weaknesses of the case, identified potential issues with his employment status at the time of the creation of the photograph, discussed not just bare facts but the pointed out the most contentious facts.   Plaintiff also discussed litigation strategy and discussed additional infringement involving at least some of the Defendants on various merchandise, including T-

shirts, posters, and song books.  Supp. Decl. Craig ¶5.  Plaintiff discussed the possibility of a

preliminary injunction as a settlement strategy.  There are several reasons these disclosures are

sufficient to constitute confidential information.

First, expert witnesses are routinely given information that is publicly available and/or is part

of the record of the case.   That does not negate the confidential nature of that information.  In a

case with a voluminous record, with several depositions, and photographs from the 1960's – any

information that mines the record or publicly available facts is confidential.   Anything that

would shine the light on a specific legal issue, separate the wheat from the chaff in the record is a

precious commodity.   Plaintiff didn't just discuss the nuts and the bolts of the case with Mr.

Sedlik, he pinpointed where rust lies.   Undoubtedly, Mr. Sedlik was privy to very valuable,

confidential information.

Second, Plaintiff discussed legal and settlement strategy.  In their discussions, Mr. Sedlik

also learned the reasons for filing this particular lawsuit, involving these specific Defendants,

these particular photographs and, crucially, the tactical reasons for including only some of the

discovered infringing merchandise.   Plaintiff revealed a whole universe of infringing materials

and potential other claims.  Supp. Decl. Craig ¶¶7-12.

Third, the timing of these confidential disclosures matter.   According to Defendants' own

account, Plaintiff and Mr. Sedlik had two telephone conferences in September of 2016.  The first

and most in-depth conference was held on September 21, 2016 without Plaintiff's counsel.

Plaintiff served his responses and objections to discovery over a month later, on November 25,

2016.  Furthermore, Plaintiff testified at his deposition on March 17, 2017.   Defendants rely on

the record in the case for the proposition that the information revealed to Mr. Sedlik was not

confidential.  That analysis misses the point that on September 19, 21, and 22 of 2016 that

information was confidential.   During the substantive exchanges with Mr. Sedlik, Plaintiff revealed confidential information even before discovery had commenced in earnest.   This is a critical point that Defendants neglect.

The Plaintiff has made a sufficient showing that relevant, and/or substantially related confidential information was exchanged.  If the Court, however, finds Plaintiff's and his counsel's declarations insufficient, Plaintiff respectfully requests an *in camera, ex-parte* hearing to substantiate Plaintiff's allegations.  "The movant must identify specific and unambiguous disclosures that if revealed would prejudice the party." *In re Dreier LLP*, 482 B.R. at 871 (internal quotations omitted).  To that end, if the Court deems Plaintiff's allegations not specific enough, Plaintiff must be allowed to make a showing without revealing the potentially prejudicial information to the public and/or the Defendants.

C.  *In Camera* or *Ex-Parte* Hearing Should Be Held.

Many courts have held *in camera* hearings, and allowed *in camera* affidavits when contemplating expert witness disqualification.  *In re Dreier LLP,* 482 B.R. at 865 (on motion to disqualify expert, party permitted to "submit a post-hearing *in camera* affidavit setting forth the specific relevant privileged and confidential information it alleges was disclosed to" the expert). Since the requirements *per se* involve the disclosure of confidential information, the Court weighed the public and other parties' interests in access to this material against the strong privacy interests of the plaintiff in maintaining the confidentiality of any privileged information. *Franzone v. Lask*, No. 14 CIV. 3043 GHW GWG, 2015 WL 1379066, at *7 (S.D.N.Y. Mar. 26, 2015).  Following *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119–20 (2d Cir.2006), Plaintiff posits that this testimony must not be heard in public and notes that to do otherwise would frustrate the confidential nature of these disclosures.   Some courts have held hearings as a

8

matter of expediency. In *Franzone*, the Court believed that any conflicts in the testimony could be resolved more speedily if the testimony was presented orally. *See also Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564, 2003 WL 23101783, at *3 (W.D.N.Y. Dec. 4, 2003) ("In order to sort out these conflicting claims, a factual hearing was held.").

Therefore, if the Court finds Plaintiff's submissions lacking, then Plaintiff should be allowed a supplemental submission for *in camera, ex parte* review or a hearing.   *In re Dreier LLP*, 482 B.R. at 871 ("At oral argument, the Court expressed its view that Amaranth's objection was too general and failed to identify any specific confidential communication … Counsel for Amaranth expressed a reluctance to disclose confidential information publically, and suggested the submission of an *in camera* affidavit. The Court agreed: 'maybe the answer is an *in camera* submission in which you specifically identify what it is you think he was told or the information he received that would be in essence prejudicial to you in this particular case.'").  In fact, another Court criticized the movant for failing to ask for such a review or hearing. *Gordon v. Kaleida Health*, 2013 WL 2250506, at *20 ("Defendants should have filed the supplemental material for *ex parte* review as part of Defendants' reply, or requested an *ex parte* hearing.").  Should the Court find Plaintiff's submission heretofore inadequate, Plaintiff kindly requests an *in camera, ex-parte* review or hearing.

## III. DISQUALIFICATION IS IN THE PUBLIC'S INTEREST

Defendants argue that their interest to retain Mr. Sedlik outweighs the Court's interest in ensuring the integrity of the judicial process. Mr. Sedlik is a qualified expert in this field, but he is by no means exceptional in his qualifications.  Any expert can tout analogous

accomplishments amidst the puffery of a professional CV.   Defendants can easily find another expert with a similar background on the same referral websites that list Mr. Sedlik.[2]

Nor would disqualification adversely effect Mr. Sedlik's ability to earn a living as an expert witness.  Mr. Sedlik remains in high demand and his livelihood is not in any danger of being destroyed.  Moreover, Mr. Sedlik's conduct in this matter needs to be deterred.  After establishing trust and probing for confidential information, Mr. Sedlik attempted to persuade the Plaintiff to use him to write Cease & Desist letters and negotiate settlement.  Having failed to convince Plaintiff to relegate legal work to an unlicensed agent, Mr. Sedlik went on to cast aspersions and personal attacks on Plaintiff's counsel and even set up a meeting with a preferred attorney.   Finally, when negotiations for Mr. Sedlik's fees failed due his exorbitant demand, he switched sides and was retained by the Defendants.[3]   If this is how an esteemed expert earns his living, the Court's need for vigilance is critical.   *Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.,* 734 F. Supp. 334, 336-7 (N.D. Ill. 1990) ("The court adopted a more reasoned approach in order to balance the interests involved. On the one side is the party's interest in protection of confidential communications… On the other side is the opposing party's right to retain those persons it feels are needed to prosecute its case. Also, at issue is the interest of experts to seek employment. Overlaying all these interests is the court's interest in protecting and preserving the integrity and fairness of the judicial proceedings before it.")

---

[2] http://www.almexperts.com/, http://www.experts.com, https://expertpages.com, https://www.hg.org/

[3] *Hinterberger v. Catholic Health Sys., Inc*., No. 08-CV-380S F, 2013 WL 2250591, at *7 (W.D.N.Y. May 21, 2013) (citing *Koch Refining Company v. Jennifer L. Boudreau M/V ("Koch"),* 85 F.3d 1178, 1881 (5th Cir.1996) ("In cases like the present ... where an expert has switched sides in litigation, satisfying the test [for disqualification] is not necessary and an expert must be disqualified because of the inherent and obvious nature of the conflict").

**IV. CONCLUSION**

In light of the foregoing reasons, we respectfully ask the Court to grant the Plaintiff's

motion to disqualify Defendants' expert witness or, alternatively, grant *in camera*, *ex-parte*

review or hearing to determine the same.

Respectfully Submitted,
/s/ Yekaterina Tsyvkin
Yekaterina Tsyvkin
Richard P. Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
RL@LiebowitzLawFirm.com

*Attorneys for Glen Craig*