UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                 :

GLEN CRAIG,                         :   No. 16 Civ. 5439 (JPO)

                                :

            Plaintiff,          :

                                :

           -against-         :

                                :

UMG RECORDINGS, INC., KINGSID    :
VENTURES, LTD., and ESTATE OF RILEY  :
B. KING,                      :

                                :

           Defendants.      :

                                :
----------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

LOEB & LOEB LLP
Barry I. Slotnick
C. Linna Chen
345 Park Avenue
New York, NY  10154
Telephone: 212.407.4000

*Attorneys for Defendants*
*UMG Recordings, Inc., Kingsid Ventures,*
*Ltd., And Estate Of Riley B. King*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................III

PRELIMINARY STATEMENT ...............................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

    I.     PLAINTIFF'S PHOTOGRAPHY WAS A SIDE BUSINESS IN THE
            LATE 1960s ....................................................................................................3

    II.    PLAINTIFF ALLEGEDLY TOOK THE PHOTOGRAPHS IN 1969
            AND GAVE COPIES TO CHANGES MAGAZINE ...........................................3

    III.   PLAINTIFF DID NOT EXPLOIT OR OTHERWISE ASSERT
            OWNERSHIP OF THE PHOTOGRAPHS UNTIL 2015....................................4

    IV.   THERE IS NO EVIDENCE OF ANY INFRINGEMENT BY
            KINGSID OR THE ESTATE.................................................................................5

    V.    UMGI DID NOT PUBLISH THE FOREIGN ALBUMS ...................................6

    VI.   PLAINTIFF'S DAMAGES ARE LIMITED TO $9,452.21. ...............................6

SUMMARY JUDGMENT STANDARD ...................................................................................7

LEGAL ARGUMENT .............................................................................................................8

    I.     PLAINTIFF CANNOT PROVE ESSENTIAL ELEMENTS OF HIS
            COPYRIGHT INFRINGEMENT CLAIM ........................................................8

    II.    THERE IS NO EVIDENCE OF INFRINGEMENT BY THE ESTATE
            OR KINGSID ....................................................................................................9

    III.   UMGI CANNOT BE HELD LIABLE FOR THE FOREIGN ALBUMS ...........10

            A.     UMGI Did Not Manufacture or Distribute The Foreign Albums ............10

            B.     UMGI Is Not Liable For The Actions of Its Foreign Affiliates ...............11

            C.     UMGI Cannot Be Liable For Extraterritorial Infringements ...................12

    IV.   PLAINTIFF CANNOT RECOVER FOR THE VAST MAJORITY OF
            HIS CLAIMS...................................................................................................12

    V.    PLAINTIFF'S ACTUAL DAMAGES, IF ANY, ARE LIMITED TO
            $9,452.21 ........................................................................................................13

16412918.1

VI.   PLAINTIFF FAILED TO DEMONSTRATE ANY ENTITLEMENT
      TO DEFENDANTS' PROFITS ..........................................................................15

      A.     Plaintiff Cannot Show A Logical, Let Alone Causal,
             Connection Between The Use of the Photographs and UMGI's
             Profits...............................................................................................16

VII.  PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES,
      ATTORNEYS' FEES OR COSTS ...................................................................19

VII.  EVEN IF CRAIG WERE ENTITLED TO STATUTORY DAMAGES,
      HE WOULD BE ENTITLED TO ONLY ONE AWARD FOR
      INNOCENT INFRINGEMENT ........................................................................20

      A.     Only One Award of Statutory Damages Is Available .............................20

      B.     There Is No Evidence of Willful Infringement; Any
             Infringement Was Innocent..................................................................21

IX.   PLAINTIFF ADMITTED THAT HIS DMCA CLAIM LACKS
      MERIT ........................................................................................................23

CONCLUSION..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1996) ...................................................................................................8

*Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*,
   303 F. Supp. 2d 356 (S.D.N.Y. 2003) ......................................................................21

*Bryant v. Media Rights Prods., Inc.*,
   603 F.3d 135 (2d Cir. 2010) .....................................................................................21

*Carter v. Goodman Grp. Music Publishers*,
   848 F. Supp. 438 (S.D.N.Y. 1994) ...........................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...................................................................................................8

*Complex Sys. v. ABN Ambro Bank N.V.*,
   2013 U.S. Dist. LEXIS 160291 (S.D.N.Y. Nov. 8, 2013) .........................................16

*Crawford v. Franklin Credit Mgmt. Corp.*,
   758 F.3d 473 (2d Cir. 2014) .....................................................................................14

*D.C. Comics v. Mini Gift Shop*,
   912 F.2d 29 (2d Cir. 1990) .......................................................................................22

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992) ...................................................................................................7

*EZ-Tixz, Inc. v. Hit-Tix, Inc.*,
   919 F. Supp. 728 (S.D.N.Y. 1996) ...........................................................................19

*Faulkner v. Nat'l Geographic Soc'y*,
   211 F. Supp. 2d 450 (S.D.N.Y. 2002), *modified on other grounds*, 220 F.
   Supp. 2d 237, *aff'd sub nom.*, 409 F.3d 26 (2d Cir. 2005) .............................. 10, 11

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ...................................................................................................8

*Fischer v. Forrest*,
   2017 U.S. Dist. LEXIS 109682 (S.D.N.Y. July 14, 2017), *adopted by* 286 F.
   Supp. 3d 590 (S.D.N.Y. 2018) ..................................................................................24

*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
   22 F.3d 1219 (2d Cir. 1994) .......................................................................................8

*Gattoni v. Tibi, LLC,*
    254 F. Supp. 3d 659 (S.D.N.Y. 2017) ...................................................................23

*Granger v. Gill Abstract Corp.,*
    566 F. Supp. 2d 323 (S.D.N.Y. 2008) ..................................................................19

*Hart Holding Co. v. Drexel Burnham Lambert, Inc.,*
    1992 Del. Ch. LEXIS 112 (Del. Ch. May 28, 1992)............................................11

*Int'l Bus. Mach. Corp. v. BGC Partners, Inc.,*
    2013 U.S. Dist. LEXIS 59779 (S.D.N.Y. Apr. 25, 2013) ...................................18

*Irwin v. ZDF Enters. GmbH,*
    2006 U.S. Dist. LEXIS 6156 (S.D.N.Y. Feb. 16, 2006) .....................................20

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
    2016 U.S. Dist. LEXIS 127307 (S.D.N.Y. Sept. 19, 2016) .................................23

*Lessem v. Taylor,*
    766 F. Supp. 2d 504 (S.D.N.Y. 2011) ........................................................... 10, 11

*Luckett v. Bethlehem Steel Corp.,*
    618 F.2d 1373 (10th Cir. 1980)...........................................................................12

*Mackie v. Rieser,*
    296 F.3d 909 (9th Cir. 2002) ....................................................................... 16, 18

*Mager v. Brand New Sch.,*
    2004 U.S. Dist. LEXIS 21686 (S.D.N.Y. Oct. 27, 2004)....................................17

*Mobil Oil Corp. v. Linear Films, Inc.,*
    718 F. Supp. 260 (D.Del. 1989) ..........................................................................11

*On Davis v. Gap, Inc.,*
    246 F.3d 152 (2d Cir. 2001) .................................................................. 14, 15, 16

*Outokumpu Eng'g Enters. v. Kvaerner Enviropower,*
    685 A.2d 724 (Del. Sup. Ct. 1996) .....................................................................11

*Papazian v. Sony Entm't,*
    2017 U.S. Dist. LEXIS 164217 (S.D.N.Y. Sept. 28, 2017) .................................13

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
    134 S. Ct. 1962 (2014) .................................................................................. 12, 13

*Philpot v. Music Times LLC,*
    2017 U.S. Dist. LEXIS 48454 (S.D.N.Y., Mar. 29, 2017), *adopted by* 2017
    U.S. Dist. LEXIS 70744 (S.D.N.Y. May 9, 2017)...............................................21

*Poindexter v. Cash Money Records,*
    2014 U.S. Dist. LEXIS 26985 (S.D.N.Y. Feb. 25, 2014) .............................................. 10, 11

*Porto v. Guirgis,*
    659 F. Supp. 2d 597 (S.D.N.Y. 2009) ...................................................................................9

*Scotto v. Almenas,*
    143 F.3d 105 (2d Cir. 1998) ...................................................................................................8

*Shady Records, Inc. v. Source Enters.,*
    2004 U.S. Dist. LEXIS 26143 (S.D.N.Y. Dec. 30, 2004) ...................................................20

*Shaw v. Rizzoli Int'l Publn's., Inc.,*
    1999 U.S. Dist. LEXIS 3233 (S.D.N.Y. Mar. 19, 1999) ....................................................12

*Solid Oak Sketches, LLC v. 2K Games, Inc.,*
    2016 U.S. Dist. LEXIS 101119 (S.D.N.Y. Aug. 2, 2016) ...................................................20

*Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.,*
    335 F. Supp. 2d 466 (S.D.N.Y. 2004) .................................................................................15

*Stevens v. Corelogic, Inc.,*
    194 F. Supp. 3d 1046 (S.D.Cal., 2016) ...............................................................................25

*Twin Peaks Prods. v. Pub'ns Int'l, Ltd.,*
    996 F.2d 1366 (2d Cir. 1993) ...............................................................................................21

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.,*
    2008 U.S. Dist. LEXIS 64297 (S.D.N.Y. Aug. 21, 2008) ...................................................20

*Update Art, Inc. v. Modiin Publ'g, Ltd.,*
    843 F.2d 67 (2d Cir. 1988) ...................................................................................................12

*Vcom Int'l Multi-Media Corp. v. Gluck,*
    2017 U.S. Dist. LEXIS 44425 (D.N.J. Mar. 27, 2017) .......................................................25

*Williams v. Crichton,*
    84 F.3d 581 (2d Cir. 1996) .....................................................................................................9

*Wyler v. United States,*
    725 F.2d 156 (2d Cir. 1983) ...................................................................................................8

*Ying Jing Gan v. City of New York,*
    996 F.2d 522 (2d Cir. 1993) ...................................................................................................8

*Zappa v. Rykodisc, Inc.,*
    819 F. Supp. 2d 307 (S.D.N.Y. 2011) .............................................................................. 10, 11, 12

16412918.1

**Statutes and Rules**

17 U.S.C. § 401(d) ...................................................................................................22

17 U.S.C. § 412(1) ...................................................................................................19

17 U.S.C. § 504(b) ........................................................................................ 14, 15, 16

17 U.S.C. § 504(c)(1) ...............................................................................................20

17 U.S.C. § 504(c)(2) ...............................................................................................23

17 U.S.C. § 507(b) ...................................................................................................12

17 U.S.C. § 1202(b)(3) .............................................................................................23

Fed. R. Civ. P. 56 .......................................................................................................7

**Other Authorities**

https://www.bls.gov/data/inflation_calculator.htm....................................................15

https://www.rockhall.com/inductees/bb-king;
    https://www.grammy.com/grammys/artists/bb-king;
    https://www.arts.gov/honors/medals/riley-bb-king;
    https://www.washingtonpost.com/archive/lifestyle/style/1995/12/03/1995s-
    kennedy-center-honorees-bb-king-lucilles-electric-blues/fe8fa052-b14a-4024-
    83d3-0fd0a0e2d022/?utm_term=.e0cfa6ac4c80;
    http://www.bbking.com/2006/12/11/presidential-medal-of-freedom/ ..................17

Defendants UMG Recordings, Inc., Kingsid Ventures, Ltd., and Estate of Riley B. King (collectively, the "Defendants"), respectfully submit this Memorandum of Law in support of their motion for summary judgment and partial summary judgment.

## PRELIMINARY STATEMENT

This case presents a classic "gotcha" action, which Plaintiff conveniently waited to bring until years after witnesses who could have testified, or adduced relevant evidence on Defendants' behalf were long dead (including B.B. King, his long-time managers, old employees of his record label, or even Plaintiff's old employers). But, even assuming that Plaintiff can establish that he actually authored the photographs at issue here (which Defendants assume only for purposes of this motion), the record evidence adduced to date reveals that most of Plaintiff's claims must be dismissed altogether, or significantly limited, for failure of proof.

Plaintiff Glen Craig alleges that he took three photographs of legendary blues guitarist and singer B.B. King, which are at issue in this action ("the Photographs"). Defendants are Mr. King's Estate, Kingsid Ventures, Ltd. ("Kingsid") (a licensing entity that has no involvement in the release of Mr. King's sound recordings), and UMG Recordings, Inc, ("UMGI"), the indirect successor to ABC/Dunhill Records, one of Mr. King's early record labels.

For nearly 50 years, Mr. King recorded and released dozens of albums throughout the world. Plaintiff alleges that some of those albums – beginning with the *Live in Japan* album, which was released exclusively in Japan in 1971 by King Record Co. Ltd., not ABC/Dunhill – included the Photographs in connection with their packaging. It was not until November 2014 (43 years later), when Plaintiff's initial counsel wrote to Defendants claiming Plaintiff's ownership of the Photographs and demanding compensation for various uses, that any Defendant became aware of Plaintiff's claims.

16412918.1

The parties negotiated a settlement, which Craig reneged by hiring his current counsel and filing this action. Plaintiff assert a claim for copyright infringement and a claim that Defendants violated the Digital Millennium Copyright Act ("DMCA") by removing Plaintiff's alleged copyright management information ("CMI") in connection with the Photographs. Defendants now move for summary judgment and partial summary judgment on several grounds:

**Kingsid and the Estate Are Not Liable**: Plaintiff has adduced no evidence tying any of the alleged infringements to Kingsid or the Estate. Neither Kingsid nor the Estate has anything to do with any sale or distribution Mr. King's recorded live music, and Plaintiff has been on notice of this fact since, at least, January 2017.

**UMGI Is Not Liable for Any Alleged Foreign Infringements by Foreign Affiliates**: The overwhelming majority of the allegedly infringing albums were released outside of the U.S. by other, foreign entities that UMGI neither owns nor controls. None of these foreign entities is named as a defendant, nor did any engage in any activities within the U.S. The alleged foreign infringements by non-parties cannot be attributed to UMGI.

**No Evidence of Actual Damages**: Plaintiff cannot prove that he suffered any actual damages, because, as he admitted during his deposition, he does not generally license his photographs, and has never licensed or sought to license any of the Photographs. To the extent that Plaintiff suffered any actual damages, which Defendants deny, those damages would be less than $10,000.

**No Evidence to Establish Plaintiff's Entitlement to Defendants' Profits**: Plaintiff cannot recover any of Defendants' profits from sales of B.B. King's albums, because Plaintiff has utterly failed to meet his burden of proving any causal link between any such profits, and the alleged use of the Photographs. Logic dictates that consumers purchased those albums for one reason and one reason only: the legendary musicianship of B.B. King, not because of any photographs on the packaging – especially photographs contained on the back covers and album inserts, as is in this case.

**Plaintiff Is Not Entitled to Statutory Damages or Attorneys' Fees**: With the exception of <u>one</u> release (which was a repackaging of an earlier release), all of the albums identified in the Complaint were released <u>prior</u> to Plaintiff's registration for the Photographs. Accordingly, Plaintiff is not entitled to statutory damages or attorneys' fees. Case law in this and other Circuits uniformly establishes that Plaintiff is not entitled to statutory damages or attorneys' fees if the initial act of infringement occurred prior to registration, even if Defendants' alleged infringement continued post-registration.

**Defendants' Conduct Was Innocent**: The record is clear. Neither the Estate nor Kingsid had any role in the manufacture, distribution or sale of the record albums in issue. Moreover, UMGI innocently utilized the Photographs that sat in its archives for

almost half a century, without any knowledge of Plaintiff's claimed ownership. Plaintiff did not exploit or publish the Photographs, nor register a copyright claim in the Photographs for over four decades after their creation.

**No DMCA Violations**: There is no evidence of any DMCA violations by any of the Defendants. Plaintiff admitted that CMI, if any, was removed in 1970 or 1971, decades prior to the effective date of the DMCA, and decades prior to the statute of limitations applicable to Plaintiff's DMCA claim.

## FACTUAL BACKGROUND

### I.    PLAINTIFF'S PHOTOGRAPHY WAS A SIDE BUSINESS IN THE LATE 1960s

According to Plaintiff, he began working for Sid Bernstein, a concert promoter, in 1966 when he was in high school, through which Plaintiff gained access to the bands and musical acts that Mr. Bernstein managed or promoted. Dkt. No. 62-6 ("Craig Depo Trs."), 57:20-24, 60:12-61:3, 64:23-65:20. Plaintiff used this access to take photographs of those bands and acts, and, according to Plaintiff, to generate some side income. *Id.*, 67:9-23, 68:11-69:19, 70:7-10.

Plaintiff claimed at his deposition that in the late 1960s and early 1970s, he licensed his photographs to newspapers and magazines for $100 each for ordinary photographs, or up to $500 for "rare" photographs. *Id.*, 71:17-22. Plaintiff also claimed that he licensed his photographs for use in connection with three separate albums: Plaintiff claimed to have been paid around $500-$1,000 for the use of one photograph on the back cover of an album for The Rascals (*id.*, 78:3-6), $550-750 for the use of one photograph on a back cover of a Lee Michaels album (*id.*, 80:12-14, 21-22), and $1,000 for the use of five photographs on the front and back covers of an album by a group known as The CBS Jazz All-stars (*id.*¸ 89:8-16).

### II.    PLAINTIFF ALLEGEDLY TOOK THE PHOTOGRAPHS IN 1969 AND GAVE COPIES TO CHANGES MAGAZINE

In late November 1969, while working for Mr. Bernstein, Plaintiff attended a B.B. King concert at the Los Angeles Inglewood Forum. Dkt. No. 62-1 at 5, Craig Depo Trs. At 138:7-9, 155:22-156:15. According to Plaintiff, he took photographs of Mr. King at that concert,

including the Photographs, made working prints of the photographs, and submitted between 30-60 photographs to editors at Changes Magazine shortly thereafter for publication in the magazine. Craig Depo Trs., 57:11-16, 187:20-189:19.

A total of eleven B.B. King photographs were published in the June 1, 1970 issue of Changes Magazine, including five photos that Plaintiff alleges he took. *Id.*, 201:18-22; Slotnick Decl., Ex. A (the "June 1970 Changes Magazine"). Those five photographs – but not the Photographs – were published in the June 1970 Changes Magazine with the legend "Photos/Glenn Craig." *Id.* According to Plaintiff, Changes Magazine never returned the working prints of his B.B. King photographs that were not published, including the Photographs. Craig Depo Trs., 189:20-190:3.

Based on this, Plaintiff speculates that Ruby Mazur, the then-Art Director of the magazine, kept and used the Photographs in a book that was published in connection with B.B. King's 1971 Japanese tour ("the 1971 Tour Book"), and that ABC/Dunhill Records (for whom Plaintiff claims Mr. Mazur allegedly went on to work) copied the Photographs from the 1971 Tour Book for use on the subsequent B.B. King record album packaging. Craig Depo Trs., 167:10-14; 212:6-16, 217:6-15; 248:4-7. Plaintiff, however, never "connected the dots" between Mr. Mazur and the publishers of the 1971 Tour Book. Moreover, Plaintiff admits that this entire "theory" is based on nothing more than "deduction," and "maybe . . . irrational thinking." *Id*. at 212:6-16.

## III. PLAINTIFF DID NOT EXPLOIT OR OTHERWISE ASSERT OWNERSHIP OF THE PHOTOGRAPHS UNTIL 2015

As Plaintiff admitted, he has never licensed any of the Photographs, and he had never sought to license or exploit any of the Photographs prior to Mr. King's death in 2015. Craig Depo Trs., 205:7-17, 206:6-11, 207:12-14; Dkt. No. 73-1 ("Hrg. Trs."), 6:14-15, 10:10-11,

15:22, 23:25-24:7.  In fact, Plaintiff did not file any copyright registrations for the Photographs until March 2014, when he did so along with several other photographs of Mr. King that had been published in magazines in the 1970s.  Plaintiff applied for, and the Copyright Office issued, only one registration, number VAu 1-159-683, for all of these works.  Slotnick Decl., Ex. B.

Indeed, Defendants had never heard of Plaintiff until June 2014 when he contacted UMGI, identified himself as a photographer who had taken certain photographs of Mr. King, and asked UMGI for "originals" of those photographs in order to display them at a gallery showing of his works in Germany.  *Id.*, Ex. C.  UMGI's employees assisted Plaintiff, gave him background information, and provided Plaintiff with *gratis* copies of certain B.B. King CDs on which the Photographs appeared.  *Id.*  Plaintiff did not assert any claim of infringement, object to the uses, or seek compensation for the uses.  *Id.*; Craig Depo Trs., 225:4-225:18, 231:15-232:24.

It was not until November 2014, when UMGI received a demand letter from Plaintiff's former attorney, asserting ownership and seeking compensation, that any Defendant became aware of Plaintiff's claims.  Slotnick Decl., Ex. D.  Defendants attempted to resolve Plaintiff's claims with his initial counsel and, indeed, believed that they had reached a resolution.  Slotnick Decl., ¶ 6.  However, Plaintiff abruptly fired him, retained his current attorney, and filed this action.  *Id.*

## IV.    THERE IS NO EVIDENCE OF ANY INFRINGEMENT BY KINGSID OR THE ESTATE

On July 7, 2016, Plaintiff sued Defendants alleging that Defendants infringed his copyright in the Photographs by reproducing, distributing and publicly displaying the Photographs in the packaging of 42 recorded albums by Mr. King (the "King Albums"),[1] and

---

[1] Paragraphs 22 and 39 of the Complaint refer to the same release.

violated the DMCA.  Dkt. No. 1 ("Complaint" or "Cmplt.").  Plaintiff alleged that UMGI published the King Albums, but did not allege that either Kingsid or the Estate ever produced or distributed any of the King Albums.  Cmplt., ¶¶ 13-55.

Neither Kingsid nor the Estate produced or distributed any of the King Albums.  Kingsid (which was not formed until 1991) is used to license Mr. King's name to third parties and has nothing to do with Mr. King's recording career.  Declaration of Dennis King, ¶¶ 2-4.  Similarly, the Estate does not manufacture or distribute any of the King Albums.  *Id.*, ¶ 6.  Rather, in 1968, ABC/Dunhill Records entered into an agreement with B.B. King Productions, Inc. ("Productions") through which Productions (not a party to this lawsuit) furnished Mr. King's services exclusively to ABC/Dunhill as a recording artist.  Slotnick Decl., Ex. E.

## V.    UMGI DID NOT PUBLISH THE FOREIGN ALBUMS

Of the 42 King Albums, Plaintiff admits in the Complaint that 29 were produced by foreign companies who are not named defendants (the "Foreign Albums").  Cmplt., ¶¶ 23-28, 30, 32-38, 40-42, 44-47, 49-55.  The Foreign Albums were manufactured and distributed outside of the United States by entities other than Defendant UMGI.  Declaration of Sheryl Gold ("Gold Decl."), ¶¶ 4, 6, 9-17.  Defendant UMGI did not release or distribute any of the Foreign Albums, nor does UMGI own or control any of the foreign entities who did.  *Id.*, ¶¶ 9-17.

## VI.    PLAINTIFF'S DAMAGES ARE LIMITED TO $9,452.21.

Plaintiff confirmed that he has never licensed any of the Photographs, that he never licensed any other photographs of Mr. King, and that he has never sought to license such photographs prior to Mr. King's death in 2015.  Craig Depo Trs., 205:7-17, 206:6-11, 207:12-14.

16412918.1

Absent any licensing history of the Photographs, Defendants' damages expert, Professor Jeffrey Sedlik,[2] analyzed the alleged uses of the Photographs and comparable stock photography license fees to determine what a hypothetical buyer and seller would have agreed as licensing fees for the allegedly infringing uses, and concluded that the fair market value for the uses is $9,452.21.  Dkt. No. 62-7 ("Sedlik Rept.").

In stark contrast to Professor Sedlik's well-reasoned analysis and well-grounded opinion, Plaintiff produced an "expert" report rendered by an economist, Michael Einhorn (who has no apparent expertise in the commercial market for licensing  photography), which is devoid of any opinion on actual damages.  *See* Slotnick Decl., Ex. F ("Einhorn Report" or "Einhorn Rept.").  Rather, Mr. Einhorn relies on Plaintiff to establish his "expert" opinion, reserving any opinion until Plaintiff can give further testimony at trial.  Einhorn Rept., at 5.  Of course, at the evidentiary hearing before the Court on May 25, 2018, Plaintiff admitted that he does not license photographs and is not in the business of licensing his photographs.  Hrg. Trs., 6:14-15, 10:10-11, 15:22, 23:25-24:7.

## SUMMARY JUDGMENT STANDARD

Summary judgment is designed to expedite civil cases by eliminating from the trial calendar those claims that can properly be resolved as a matter of law.  Under Rule 56(c), summary judgment is warranted when, viewing the evidence in a light most favorable to the nonmovant, the Court determines that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456-7 (1992).  A motion for summary judgment requires the

---

[2] Professor Sedlik is a professional photographer with decades of experience in photo licensing.  Dkt. No. 63, ¶ 1.  He has taught college courses, seminars and workshops on copyright and photography licensing for more than thirty years.  *Id.*

party with the burden of proof at trial to come forward with proper evidence and "make a showing sufficient to establish the existence of [each] element essential to that party's case…since a complete failure of proof concerning an essential element of…[the] case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Under Second Circuit precedent:

> [T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). To avoid summary judgment, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993); *see Scotto v. Almenas*, 143 F.3d 105, 114-15 (2d Cir. 1998) (citations omitted; *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983). "The mere existence of a scintilla of evidence in support of the [non-moving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 2528 (1996).

## LEGAL ARGUMENT

## I.    PLAINTIFF CANNOT PROVE ESSENTIAL ELEMENTS OF HIS COPYRIGHT INFRINGEMENT CLAIM

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). The court may grant summary judgment for the defendant where the plaintiff has failed to present evidence that the defendant

copied the work. *See Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996); *Porto v. Guirgis*, 659 F. Supp. 2d 597 (S.D.N.Y. 2009).

Plaintiff cannot establish that the Estate or Kingsid committed any act of infringement with respect to the releases of the King Albums. Similarly, Plaintiff cannot establish that UMGI committed any act of infringement with respect to the Foreign Albums. Accordingly, the Court should grant summary judgment in favor of the Estate and Kingsid, summary judgment in favor of UMGI with respect to the Foreign Albums. Moreover, the Court should also grant partial summary judgment on damages. As explained in detail below, Plaintiff is not entitled to statutory damages, attorneys' fees, Defendants' profits or actual damages. To the extent that Plaintiff can show actual damages, his damages are under $10,000.

## II.    THERE IS NO EVIDENCE OF INFRINGEMENT BY THE ESTATE OR KINGSID

The Complaint does not allege, and Plaintiff has adduced no evidence, that either Kingsid or the Estate produced or distributed any of the King Albums. Discovery has not established any facts to the contrary. The full extent of Plaintiff's claim against Kingsid and the Estate is a bare allegation in the Complaint stating that "Kingsid and Estate improperly facilitated and wrongly benefited from [UMGI's] publishing of" the King Albums. Cmplt., ¶ 12. However, there is no evidence that Kingsid or the Estate "facilitated" or "wrongly benefited" from the production or distribution of the King Albums.

Even Plaintiff's rather amorphous concept of "facilitation" is belied by Plaintiff's own deposition testimony in which he repeatedly stated that copies of the Photographs were taken and kept by Ruby Mazur, who kept and used the Photographs in the 1971 Tour Book. *Supra*, 4. Of course, Plaintiff has not produced any evidence to confirm his suspicions regarding Mr. Mazur, much less his unsupported allegations against Kingsid and the Estate. Indeed, whatever

16412918.1

Plaintiff's mistaken beliefs may have been at the time of the filing of the Complaint, the evidence produced by Defendants in discovery was clear that Productions, not Kingsid or the Estate, entered into a recording artist agreement with ABC/Dunhill and that agreement makes no mention of the Photographs or any photographs. *See* Slotnick Decl., Ex. E. As such, there is no basis for a claim against either Defendant.

Where a plaintiff has failed to establish a defendant's involvement in the allegedly infringing conduct, summary judgment must be awarded in that defendant's favor. *See, e.g., Lessem v. Taylor*, 766 F. Supp. 2d 504, 515 (S.D.N.Y. 2011) (granting summary judgment where "plaintiffs have produced no evidence whatsoever that [defendant record companies]…had anything to do with the copyright infringement alleged in this case"); *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450, 472 (S.D.N.Y. 2002) (same result where there was no evidence that that defendant publicly distributed any of the allegedly infringing material), *modified on other grounds*, 220 F. Supp. 2d 237, *aff'd sub nom.*, 409 F.3d 26 (2d Cir. 2005); *Poindexter v. Cash Money Records*, 2014 U.S. Dist. LEXIS 26985, at *27 (S.D.N.Y. Feb. 25, 2014) (same result where "the evidence shows the named [d]efendant in this action had no involvement with the alleged infringement"); *Zappa v. Rykodisc, Inc.*, 819 F. Supp. 2d 307, 315-16 (S.D.N.Y. 2011) (there "is no evidence establishing direct liability, since [the plaintiff] cannot point to volitional conduct by [the named Defendant] that caused the distribution" of the allegedly infringing recordings and sound compositions).

## III.    UMGI CANNOT BE HELD LIABLE FOR THE FOREIGN ALBUMS

### A.    UMGI Did Not Manufacture or Distribute The Foreign Albums

Similarly, summary judgment should be granted in UMGI's favor for the Foreign Albums. Plaintiff has adduced no evidence that UMGI reproduced or distributed any of the Foreign Albums. Third parties produced and distributed each of the Foreign Albums. *Supra*, 6.

As such, there is no basis for a claim against UMGI with respect to the reproduction and distribution of the Foreign Albums.  *See Lessem*, 766 F. Supp. 2d at 514; *Faulkner*, 211 F. Supp. 2d at 472; *Poindexter*, 2014 U.S. Dist. LEXIS 26985, at *27; *Zappa*, 819 F. Supp. 2d at 315-316.

**B.      UMGI Is Not Liable For The Actions of Its Foreign Affiliates**

Nor can UMGI be held responsible for the actions of the foreign affiliates who released the Foreign Albums (the "Foreign Affiliates").  UMGI is a Delaware corporation (Gold Decl., ¶ 2), and under Delaware law, a corporation may be liable for the actions of another only if "the corporate structure cause[s] fraud or similar injustice."  *Outokumpu Eng'g Enters. v. Kvaerner Enviropower*, 685 A.2d 724, 729 (Del. Sup. Ct. 1996) (citations omitted).

Plaintiff cannot succeed under this theory.  Plaintiff has not established <u>any</u> relationship between UMGI and the various Foreign Affiliates, much less that UMGI controlled their actions. Even so, mere dominion and control of one company over another will not support alter ego liability.  *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271, n.15 (D.Del. 1989).  A finding of liability requires evidence of "exclusive domination and control…to the point that [the subsidiary] no longer has legal or independent significance of [its] own."  *See Hart Holding Co. v. Drexel Burnham Lambert, Inc.*, 1992 Del. Ch. LEXIS 112, at *35 (Del. Ch. May 28, 1992). There is no evidence that UMGI had <u>any</u> – much less exclusive – dominion, ownership, or control over any of the Foreign Affiliates.  Gold Decl., ¶¶ 9-17.

Similarly, there is no evidence of injustice.  Plaintiff's copyright claim cannot support a finding of injustice.  *Mobil Oil*, 718 F. Supp. at 268 (the "injustice" must be more than the tort alleged in the complaint).  "To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping."  *Id.*  Further, "the possible inconvenience to plaintiff of suing in another forum…is [also] not the type of injustice [if, indeed, it is an injustice

16412918.1

at all] which warrants piercing the corporate veil." *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1379 (10th Cir. 1980) (affirming grant of summary judgment to the defendant on the issue of alter ego liability where the plaintiff could freely sue the Singaporean tortfeasor in Singapore).

Because there is no evidence that UMGI had total dominion and control over the Foreign Affiliates which <u>caused</u> injustice to Plaintiff, UMGI cannot be held liable for the actions of the Foreign Affiliates.

### C.    UMGI Cannot Be Liable For Extraterritorial Infringements

Finally, UMGI cannot be held liable for the releases of the Foreign Albums because "[i]t is well established that copyright laws generally do not have extraterritorial application." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). Plaintiff can offer no evidence that this well-established rule should be ignored. The overseas manufacture and distribution of the Foreign Albums thus cannot create liability for direct infringement under the federal copyright laws. *Shaw v. Rizzoli Int'l Publn's., Inc.*, 1999 U.S. Dist. LEXIS 3233, at *11-12 (S.D.N.Y. Mar. 19, 1999) (granting partial summary judgment in favor of defendants for infringement claim based on alleged infringements manufactured and distributed abroad); *Carter v. Goodman Grp. Music Publishers*, 848 F. Supp. 438, 443 (S.D.N.Y. 1994) (same); *Zappa v. Rykodisc, Inc.*, 819 F. Supp. 2d 307, 315 (S.D.N.Y. 2011) (same).

## IV.    PLAINTIFF CANNOT RECOVER FOR THE VAST MAJORITY OF HIS CLAIMS

A civil copyright infringement action must be commenced "within three years after the claim accrued." 17 U.S.C. § 507(b). Pursuant to the Supreme Court's ruling in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014):

> Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete

infringing acts, the copyright holder's suit ordinarily will be timely under
§ 507(b) with respect to more recent acts of infringement (i.e., acts within the
three-year window), but untimely with respect to prior acts of the same or similar
kind.

*Id.,* at 1969-70.  Here, Plaintiff filed the Complaint on July 7, 2016, and thus all claims that

accrued prior to July 7, 2013 are barred by the statute of limitations.

Even if Plaintiff's claims are technically timely under the Second Circuit's discovery

rule, Plaintiff cannot recover damages for the vast majority of his claims.  The Second Circuit

employs a "rolling" approach to determine the scope of a plaintiff's relief for copyright

infringement.  *Papazian v. Sony Entm't*, 2017 U.S. Dist. LEXIS 164217, at *12-13 (S.D.N.Y.

Sept. 28, 2017) (collecting Second Circuit cases post-*Petrella* that continue to apply this

"rolling" approach to determine the scope of a plaintiff's relief for copyright infringement).

Under the rolling approach, a plaintiff's recovery is limited to damages for infringing acts

actually occurring up to three years before the filing of the complaint.  *Id.* at *13 (granting partial

summary judgment on damages where the plaintiff failed to adduce any evidence that the

defendant performed any infringing acts during the three years prior to the filing of the

complaint).

Of the 15 King Albums that were distributed or produced by UMGI in the United States,

thirteen were actually sold within three years of the filing of the Complaint (the "Relevant King

Albums").  *See* Declaration of Kathleen Reinhold ("Reinhold Decl."), ¶ 2.  Thus, any damages

award would be limited to those arising from UMGI's sale of the Relevant King Albums

between July 7, 2013 and July 7, 2016.

## V.    PLAINTIFF'S ACTUAL DAMAGES, IF ANY, ARE LIMITED TO $9,452.21

Plaintiff has produced no evidence to demonstrate that he actually suffered any damages

as a result of the alleged infringements.  Despite representing in his initial disclosures that he had

"documents and things in [his] possession" including documents substantiating the "[l]icensing history of the Photographs," Plaintiff admitted that no such documents exist because he never licensed any of the Photographs.  Slotnick Decl., Ex. G, Ex. H, at 7-8.  Despite alleging in his initial disclosures that he had "[k]nowledge regarding the … licensing … of" the Photographs" and "[k]nowledge regarding his … damages," (Slotnick Decl., Ex. G), Plaintiff failed to produce any information regarding either issue, the licensing of the Photographs or his damages.

Rather, Plaintiff confirmed at both his deposition and the evidentiary hearing that he has never licensed any of the Photographs or any other photographs of Mr. King, and that he is not in the business of licensing his photographs.  *Supra*, 6-7.  Having produced no licensing history for either the Photographs or any other works of his, Plaintiff cannot establish actual damages based on his licensing history.  Rather, Plaintiff appears to rely solely on his purported expert on the issue of damages, despite the fact that his "expert" failed to even opine regarding Plaintiff's actual damages suffered as a result of the infringement.  *Supra*, 7.

To the contrary, Plaintiff's expert referred to Plaintiff's own testimony to establish damages.  *Id.*  As stated, Plaintiff's testimony utterly failed to meet his burden.  Plaintiff cannot now make any attempt to expand upon his expert's non-opinion at this stage of the case.  *See Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 482 (2d Cir. 2014) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (quoting *Hayes v. New York City Department of Corrections,* 84 F.3d 614, 619 (2d Cir. 1996)).

Absent any evidence of actual damages suffered, Plaintiff can recover only the fair market value of a license covering the allegedly infringing uses.  *See On Davis v. Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001).  Any award under 17 U.S.C. § 504(b) for the fair market value of a

16412918.1

license covering the defendant's infringing use must be based on "sufficiently concrete evidence of a modest fair market value of the use made by" the infringer, so that the owner may not claim "unreasonable amounts as the license fee" but rather "what is the fair market value" for the item. *Id.* at 172. The standard for determining the fair market value of the infringing use is an objective one – "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *Id.* at 167. Actual damages are to be determined from an *ex ante*, or pre-infringement, perspective. *See id.* Finally, an actual damages calculation under § 504(b) cannot encompass punitive elements. *See e.g., Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.,* 335 F. Supp. 2d 466, 468 (S.D.N.Y. 2004).

After reviewing each of the actual uses of the Photographs by UMGI on the Relevant King Albums, obtaining comparable stock photography license fee quotes from two stock photography agencies, and calculating total fees based on, among other things, the media in which the Photograph was reproduced, the reproduction quantity, size, placement, and period of use, Defendants' damages expert, Professor Sedlik, concluded that the objective, fair market value for the allegedly infringing uses – what a hypothetical buyer and seller would have agreed as licensing fees – is $9,452.21. Sedlik Rept. at 28. The appropriateness of this calculation is further confirmed by Plaintiff's own self-serving testimony that he licensed his photographs for between $500-$1,000[3] for use on album covers in the late 1960s and early 1970s. *Supra*, 3.

## VI.    PLAINTIFF FAILED TO DEMONSTRATE ANY ENTITLEMENT TO DEFENDANTS' PROFITS

Plaintiff has utterly failed to meet his burden to come forward with evidence that he is entitled to any of Defendants' profits from their purported use of the Photographs. Indeed, he

---

[3] Even when adjusted for inflation to 2013, the license fees equal only $2,875.67-$5,751.33. *See* https://www.bls.gov/data/inflation_calculator.htm.

adduced **no** evidence of a causal link between the alleged infringement and those profits.  In addition to recovering actual damages, Plaintiff can only recover "any profits of the infringer that are <u>attributable to the infringement</u> and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b) (emphasis added); *On Davis*, 246 F.3d at 159-60 (revenues must have a "reasonable relationship to the act of alleged infringement," and a "causal connection between the infringement and the defendant's profits" must be established).

Plaintiff "bears the initial burden of demonstrating a causal nexus between the infringement and the appropriate gross revenues."  *Complex Sys. v. ABN Ambro Bank N.V.*, 2013 U.S. Dist. LEXIS 160291, at *9 (S.D.N.Y. Nov. 8, 2013).  If Plaintiff can make that initial showing, UMGI is permitted to show "the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).  Plaintiff failed to satisfy even the initial burden.

### A.    Plaintiff Cannot Show A Logical, Let Alone Causal, Connection Between The Use of the Photographs and UMGI's Profits

Plaintiff has not even attempted to make any showing that the revenues received by UMGI from the sales of the Relevant King Albums are caused by or reasonably attributable to the alleged infringement, where there could be "virtually endless permutations to account for an individual's decision" to purchase the B.B. King album -- "reasons that have nothing to do with the artwork in question." *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002).  There is simply no logical or evidentiary connection between the alleged infringements and UMGI's profits.

The copyright laws do not allow speculative recovery.  "[M]ere connection or usage alone [is] insufficient" to show a causal link.  *Complex Sys.*, 2013 U.S. Dist. LEXIS 160291, at *13.  "[A] copyright owner must meet the statutory requirement of showing <u>attribution</u>," i.e., the profits were " <u>caused</u> – or 'attributable' – to the infringement."  *Id.* (emphasis in original).  For example, in *Mager v. Brand New Sch.*, 2004 U.S. Dist. LEXIS 21686 (S.D.N.Y. Oct. 27, 2004),

the alleged infringement comprised less than three seconds of a 44-minute broadcast, and the plaintiff sought to disgorge all of defendants' profits from its contribution to the broadcast. *Id.* at *11-13. The district court held on a motion for summary judgment that there was no causal or logical connection between the alleged infringement and the defendants' profits because the infringement was not significant to the overall program. *Id.* at *13.

Similarly here, there is no causal or logical connection between the alleged use of the Photographs and UMGI's profits, because the alleged infringement was insignificant and irrelevant to the sales of the Relevant King Albums. Common sense dictates that all of UMGI's profits are attributable to Mr. King, his status as one of the greatest guitarists and blues performers of all time, and his prolific touring schedule: Mr. King routinely played between 200 and 300 shows <u>per year</u>, and his many honors and awards included 15 Grammy awards and 30 Grammy nominations (with his first Grammy award in 1971, a Lifetime Achievement Award in 1987 and a Hall of Fame award in 1998), induction into the Rock & Roll Hall of Fame in 1987, a National Medal of Arts in 1990, the Kennedy Center Honors in 1995, and the Presidential Medal of Freedom in 2006.[4] Moreover, the Relevant King Albums incorporate 659 of Mr. King's performances and 659 musical compositions, in addition to the dozens of photographs that are used in the packaging and various album inserts, compared to only 14 total uses of the Photographs.[5] *See* Reinhold Decl., ¶ 2. As other federal courts have held, summary judgment on

---

[4] *See* https://www.rockhall.com/inductees/bb-king; https://www.grammy.com/grammys/artists/bb-king; https://www.arts.gov/honors/medals/riley-bb-king; https://www.washingtonpost.com/archive/lifestyle/style/1995/12/03/1995s-kennedy-center-honorees-bb-king-lucilles-electric-blues/fe8fa052-b14a-4024-83d3-0fd0a0e2d022/?utm_term=.e0cfa6ac4c80; http://www.bbking.com/2006/12/11/presidential-medal-of-freedom/

[5] Defendants do not suggest that there are 659 unique performances or 659 unique musical compositions incorporated in the Relevant King Albums. Rather, these totals are used

profits is properly awarded to defendants where a plaintiff fails to proffer "non-speculative evidence" that profits are caused by the allegedly infringing uses. *Mackie*, 296 F.3d at 916. Like in *Mackie*, Plaintiff's theory that any of UMGI's profits is caused by the Photographs "is no less speculative than our effort in this paragraph to enumerate even a relatively short list of the myriad factors that could influence an individual's purchasing decisions." *Id.* "Rank speculation of that sort will not allow a copyright holder to survive a summary judgment motion on his claim for indirect profits." *Id.*

Of course, Plaintiff has failed to even offer any speculative evidence that any of UMGI's profits are attributable to the use of the Photographs. Indeed, Plaintiff's expert altogether ignored the requirement of establishing a causal link, and instead merely assumed, without any basis, that some causal connection existed. Einhorn Rept., 4. Plaintiff cannot meet his burden of proof on a baseless assumption.

Where, as here, Plaintiff has no evidence of a causal link between the infringement and UMGI's profits, partial summary judgment should be granted, barring Plaintiff from any disgorgement of UMGI's profits. *Int'l Bus. Mach. Corp. v. BGC Partners, Inc.*, 2013 U.S. Dist. LEXIS 59779 (S.D.N.Y. Apr. 25, 2013) ("Because of the at-best highly speculative nature of all indirect profits claims…the decision to send such claims to a jury should be extremely rare.") (citing 6 Patry on Copyright, § 22:131 (2010)) (internal quotation marks omitted) (granting motion to bar recovery of defendants' profits because IBM failed to proffer sufficient evidence of a causal link between the defendants' profits, derived from commissions charged on transactions involving securities and other financial instruments, and the back-office infringing

---

here solely to contrast the total amount of musical content with the total uses of the Photographs across the Relevant King Albums.

use of IBM's software, which administratively processed trades after execution and generated various reports); *see Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 331-32 (S.D.N.Y. 2008) (granting summary judgment on defendants' profits where the plaintiff "has no evidence whatsoever regarding what portion of [the defendant's] profits can be attributed to [the infringement]" and thus failed to establish the causal link between profits and infringement).

## VII.   PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES, ATTORNEYS' FEES OR COSTS

Statutory damages, attorneys' fees, and costs are not available because Plaintiff did not register the Photographs for copyright protection until March 2014, decades after the alleged initial infringements occurred.   17 U.S.C. § 412(1).   Where a series of acts constituting infringement is alleged, the infringement "commences" for the purposes of determining eligibility for statutory damages, attorneys' fees, and costs "when the first act of infringement in a series of on-going discrete infringements occurs."   *EZ-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996).

The King Albums have used the same Photographs in the same manner for decades.   The only post-registration release, the November 2015 release of *Ladies and Gentlemen Mr. B.B. King* (Cmplt., ¶ 22)[6], is simply a re-packaging of the album *Ladies and Gentlemen Mr. B.B. King* that was initially released in 2012, pre-registration.   Reinhold Decl., ¶ 4; Cmplt., ¶¶ 13, 15[7].   The 2015 release used the same front cover and back cover as the 2012 release, used the same four photographs in its album inserts that appeared in the 2012 release inserts, and contained 17 musical compositions and sound recordings by Mr. King that also appeared in the 2012 release.

---

[6] Paragraphs 22 and 39 of the Complaint refer to the same release.

[7] Paragraph 15 of the Complaint erroneously allege the release date of the 10 CD box set of *Ladies and Gentlemen Mr. B.B. King* to be 1992.   The box set was released in 2012.   Reinhold Decl., ¶ 2.

Reinhold Decl., ¶ 5.  The only differences between the two releases are that the 2012 release included more tracks, and included more photographs of Mr. King in the box set inserts.  *Id.*, ¶ 6.

Such a re-packaging or new "version" of previously released content constitutes, at best, a continuation of the alleged infringement that began pre-registration, and thus precludes Plaintiff from recovering statutory damages or attorneys' fees.  *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 2016 U.S. Dist. LEXIS 101119, at *8-9 (S.D.N.Y. Aug. 2, 2016) (the post-registration release of a new version of the allegedly infringing video game was a continuation of the pre-registration infringement, because "the same Defendants have allegedly and continuously been infringing the same tattoo designs owned by Plaintiff" in the same manner); *Irwin v. ZDF Enters. GmbH*, 2006 U.S. Dist. LEXIS 6156, at *6 (S.D.N.Y. Feb. 16, 2006) (same result where a TV program's second "newly configured version of [the prior allegedly infringing] program" with a different title constituted a continuation of that program's infringement); s*ee Shady Records, Inc. v. Source Enters.*, 2004 U.S. Dist. LEXIS 26143 (S.D.N.Y. Dec. 30, 2004) (the re-posting of lyrics and audio files a month later, and releasing a CD containing the works, constituted on-going infringements of the prior infringing posts); *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, 2008 U.S. Dist. LEXIS 64297 (S.D.N.Y. Aug. 21, 2008) (statutory damages and attorneys' fees precluded where defendants began distributing copyrighted television programs before the copyrights were registered and continued after registration).

## VII. EVEN IF CRAIG WERE ENTITLED TO STATUTORY DAMAGES, HE WOULD BE ENTITLED TO ONLY ONE AWARD FOR INNOCENT INFRINGEMENT

### A. Only One Award of Statutory Damages Is Available

Even assuming that statutory damages are available to Plaintiff (and, as demonstrated above, they are not), only one award of statutory damage could be made here "for all infringements involved in the action."  17 U.S.C. § 504(c)(1).  Indeed, contrary to Plaintiff's

16412918.1

"expert"'s conclusory and erroneous legal conclusion that one award would "otherwise reward recidivist conduct that could, theoretically, exploit one copyrighted work an unlimited number of times on separate products," (Einhorn Rept., 6), it is well-established law that "[t]he current statute shifts the unit of damages inquiry from number of infringements to number of works." *Twin Peaks Prods. v. Pub'ns Int'l, Ltd.*, 996 F.2d 1366, 1381 (2d Cir. 1993); *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361 (S.D.N.Y. 2003) ("An infringer is liable for the number of original works infringed, not for the number or types of copies made.").

Where, as here, Plaintiff registered a collection of photographs under one copyright registration, that registration is deemed one work for purposes of awarding statutory damages. *Philpot v. Music Times LLC*, 2017 U.S. Dist. LEXIS 48454 (S.D.N.Y., Mar. 29, 2017) (R&R) (finding that the defendant infringed only one work, because even though the defendant used two of the plaintiff's photographs, the plaintiff registered the two photos in one registration); *adopted by* 2017 U.S. Dist. LEXIS 70744 (S.D.N.Y. May 9, 2017).

### B.    There Is No Evidence of Willful Infringement; Any Infringement Was Innocent

Plaintiff has the burden of demonstrating that an infringer acted willfully, *i.e.*, "had knowledge that its conduct represented infringement or…recklessly disregarded the possibility." *Bryant v. Media Rights Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010). None of the Defendants, including UMGI, can be charged with such knowledge or reckless disregard. For decades, the Photographs were used without any knowledge or other information concerning their authorship or ownership, or any knowledge regarding an "authorized" clearinghouse designated to license their use. Moreover, the Photographs were used for decades in connection with dozens of B.B. King albums, without objection from Plaintiff or any other person or entity. *Supra*, 5. Indeed, Plaintiff never even registered them with the Copyright Office until March 2014. *Id.*

16412918.1

Although Plaintiff testified in his deposition that he was unaware of Defendants' uses of the Photographs for over 40 years, (Craig Depo Trs., 254:23-255:2), he, inexplicably, knew enough to contact UMGI for assistance in getting copies of some of the B.B. King albums for use in connection with his gallery show in Germany. *Id.*, 248:25-249:22. Yet, even then, he did not object to the uses. While Plaintiff may now be entitled to rise from his Rip Van Winkle-like slumber to bring a lawsuit all these decades later, he is not entitled to claim, without a shred of evidence, that those who labored industriously during his sleep, are willful violators of his rights.

Instead, these same factors – no actual or constructive knowledge of Plaintiff's purported authorship, no exploitation by Plaintiff, and the multiple uses of these Photographs by many entities – justify that Defendants' conduct, such as it was, was under the good faith and reasonable belief of the innocence of that conduct. *D.C. Comics v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990) (citing 17 U.S.C. § 504(c)(2)) (an innocent infringer is one who "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright..."). Plaintiff did not exploit or publish the Photographs or register a copyright in the Photographs for decades after their creation. *Supra*, 4-5. Accordingly, UMGI would have neither actual nor constructive knowledge of Plaintiff's ownership claim.

Even if, as Plaintiff speculates, ABC/Dunhill had access to the Photographs through the 1971 Tour Book (which had no copyright notice or any other indicia of Plaintiff's authorship or ownership), it would have been reasonable for it to treat the Photographs as being in the public domain. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2016 U.S. Dist. LEXIS 127307, at *10-12 (S.D.N.Y. Sept. 19, 2016) (innocent infringement defense available to a book seller who had no reason to suspect that the copy of the book he received, which bore no copyright notice, was a counterfeit); *cf.* 17 U.S.C. § 401(d) (no weight shall be accorded to a defense of

innocent infringement if there is a notice of copyright on copies of a work to which the defendant had access). And of course, Plaintiff stood idly by as the Photographs were used on numerous album releases for over four decades.

At worst, Defendants' infringement was innocent, and a statutory damages award should be limited to $200. 17 U.S.C. § 504(c)(2).[8]

## IX. PLAINTIFF ADMITTED THAT HIS DMCA CLAIM LACKS MERIT

Finally, Plaintiff's § 1202(b) claim fails as a matter of law because Plaintiff admitted at his deposition that the removal of any CMI, if it existed at all, necessarily occurred prior to 1971, decades prior to the enactment of the DMCA. *Supra,* 4. Moreover, even assuming *arguendo* the DMCA applied, Plaintiff's claim still fails because there is no evidence that Defendants engaged in any conduct that would violate § 1202.

"To establish a violation under subsection 1202(b), a plaintiff must show '(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally.'" *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017) (quoting *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010)). Alternatively, a plaintiff can show that the defendant "distribute[d] . . . copies of works . . . knowing that [CMI] has been removed or altered without authority of the copyright owner . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement . . . ." 17 U.S.C. § 1202(b)(3).

---

[8] Plaintiff's economic expert's legal "opinion" on statutory damages is not only inappropriate but also incorrect. There is no legal "presumpt[ion]" of willfulness, nor is there any evidence that UMGI knew or could easily obtain information regarding Craig's ownership of the Photographs. Einhorn Rept., 4, 6. Moreover, even if Defendants' actions were found to be willful, the applicable statutory damages range is still $750-$150,000, not $30,000-$150,000. *Id.*, 6. Lastly, Mr. Einhorn provides no basis, reasoning, or analysis to justify his inappropriate legal opinion that a high statutory damages award is justified as an "economic matter." *Id.*, 4.

16412918.1

Plaintiff has no evidence to satisfy any of those elements. There is no evidence that Plaintiff conveyed any CMI in connection with the Photographs. As Plaintiff admitted, he brought in a batch of his photographs, including the Photographs, to a meeting with editors from Changes Magazine. *Supra,* 4. There is no evidence that Plaintiff included any CMI on the photographs he provided to Changes Magazine. To the extent that any CMI was ever conveyed in connection with any of the photographs, it was conveyed in connection with the publication of five of Plaintiff's B.B. King photographs in the June 1970 Changes Magazine. *Id*. Even so, the Photographs were not published in that magazine, and there is no evidence that any of the Photographs ever had any such similar legend, or that Defendants removed or altered such a legend. *Id*. As such, Plaintiff has no evidence that any CMI conveyed with the Photographs was removed or altered by the Defendants.

Moreover, even assuming *arguendo* there was such a legend associated with the Photographs, Plaintiff testified at his deposition that he believed that the legend was removed by Ruby Mazur *prior* to the 1971 release of *Live in Japan*, the first King Album on which any of the Photographs appear. Craig Depo Trs., 55:13-25, 212:6-16, 220:24-221:10. Thus, even if CMI was removed or altered, it occurred decades prior to the enactment of the DMCA, and was done by a third party.

Even assuming the DMCA applied, Plaintiff cannot adduce any evidence, if credited, that could justify a finding that Defendants violated § 1202. Accordingly, Plaintiff's § 1202 claim should be dismissed as a matter of law. *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 109682 (S.D.N.Y. July 14, 2017) (R&R) (granting summary judgment for defendants on DMCA claims where the plaintiff failed to submit any evidence that any CMI was conveyed with his photo, or that defendants removed any such CMI), *adopted by* 286 F. Supp. 3d 590 (S.D.N.Y. 2018);

*Vcom Int'l Multi-Media Corp. v. Gluck*, 2017 U.S. Dist. LEXIS 44425 (D.N.J. Mar. 27, 2017) (same result where the plaintiff failed to present any evidence that CMI was conveyed with the plaintiff's work); *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D.Cal., 2016) (same result where plaintiff failed to present any evidence of § 1202 violations).

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Estate and Kingsid respectfully request that the Court enter summary judgment in their favor, and UMGI respectfully requests that the Court enter partial summary judgment in its favor with respect to the Foreign Albums, the DMCA claim, and damages.

Dated:  New York, New York  
        June 25, 2018

LOEB & LOEB LLP  
By:*/s/ Barry I. Slotnick*  
      Barry I. Slotnick  
      C. Linna Chen  
      345 Park Avenue  
      New York, NY 10154  
      Telephone: 212.407.4000  

      *Attorneys for Defendants*  
      *UMG Recordings, Inc., Kingsid Ventures, Ltd.,*  
      *and Estate Of Riley B. King*