**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-- - - - - - - - - - - - - - - - --- - - - - - - - - - - - - - - - - - - - - -x
                                                        :
GLEN CRAIG                                              :
                                                        :
                              *Plaintiff*,             : 16-cv-05439 (JPO)
                                                        :
                                                        :
         vs.                                            :
                                                        :
                                                        :
UNIVERSAL MUSIC GROUP, INC.,                           :
KINGSID VENTURES, LTD., and ESTATE OF                  :
RILEY B. KING,                                          :
                                                        :
                              *Defendants*.            :
-- - - - - - - - - - - - - - - --- - - - - - - - - - - - - - - - - - - - -x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT**

Liebowitz Law Firm PLLC
Richard P. Liebowitz
Yekaterina Tsyvkin
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Tel.: (516) 233-1660
rl@liebowitzlawfirm.com

*Attorneys for Plaintiff Glen Craig*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ……………………………………………………………..ii

INTRODUCTION ………………………………………………………………………..1

UNDISPUTED FACTS  …………………………………………………………………1

LEGAL STANDARD ……………………………………………………………………3

ARGUMENT ……………………………………………………………………………..4

    I.      CRAIG HAS ESTABLISHED A MATERIAL FACT IN DISPUTE REGARDING
            ESTATE'S LIABILITY FOR COPYRIGHT INFRINGEMENT **……………………**4

    II.     CRAIG HAS ESTABLISHED A MATERIAL FACT IN DISPUTE REGARDING
            UMGI'S LIABILITY FOR ALBUMS SOLD ABROAD. …………………………...6

          A. UMGI Contributed to and Benefited from the Manufacturing and Distribution of
             Album Abroad. …………………………………………………………………..7

          B. UMGI Is Liable for the Its Contributions and Benefit From Its Affiliates, Partners,
             Subsidiaries Based Abroad. …………………………………………………7

          C. UMGI Is Liable for Infringements that Originated in the U.S. …………………..8

    III.    CRAIG IS ELIGIBLE FOR DAMAGES STEMMING FROM ANY INFRINGING
            CONDUCT FROM JULY 7, 2013 TO THE PRESENT. …………………………9

    IV.    CRAIG PRODUCED EVIDENCE THAT HE HAS SUFFERED ACTUAL
            DAMAGES …………………………………………………………………...9

    V.     CRAIG PRODUCED EVIDENCE THAT HE IS ENTITLED TO DEFENDANTS'
            PROFITS ………………………………………………………………………12

          A. Case Law Provides a Causal Link Between UMGI's Profits and the Infringement
             …………………………………………………………………13

    VI.    CRAIG IS ENTITLED TO STATUTORY DAMAGES, ATTORNEY'S FEES AND
            COSTS ………………………………………………………………………13

    VII.   CRAIG IS ENTITLED TO THREE STATUTORY DAMAGES AWARDS ……...15

          A. Craig Had Established A Material Fact in Dispute Regarding Whether the
             Infringement was Willful ……………………………………………………17

    VIII.  CRAIG HAS ESTABLISHED A MATERIAL FACT IN DISPUTE REGARDING
            HIS DMCA CLAIM.  ………………………………………………………19

CONCLUSION ………………………………………………………………………20

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295 (S.D.N.Y. 2011).  ……………………20

*Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346(S.D.N.Y. 2003) ……………………….10

*Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400 (S.D.N.Y. Sept. 16, 2004) …………..12

*Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866, 2014 WL 7392905 (S.D.N.Y. Dec. 29, 2014) …………………………………………………………………………………………13

*Bryant v. Media Right Prods., Inc*, 603 F.3d 135 (2d Cir. 2010) …………………………….16

*Capitol Records, LLC v. ReDigi Inc.*, 934 F.Supp.2d 640 (S.D.N.Y.2013)…………………... 4

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ……………4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)…………………………………………………3

*Complex Sys., Inc. v. ABN Ambro Bank N.V.*, No. 08 Civ. 7497, 2013 WL 5970065 (S.D.N.Y. Nov. 8, 2013). ……………………………………………………………………………………13

*Estate of Stewart v. Sugar Hill Music Pub. Ltd.*, No. 10 CIV. 2632 LTS JLC, 2012 WL 4900927, (S.D.N.Y. Oct. 12, 2012), *order vacated in part on reconsideration sub nom. Stewart v. Estate of Sugar Hill Music Pub. Ltd.*, No. 10 CIV. 2632 LTS JLC, 2013 WL 1405422 (S.D.N.Y. Apr. 8, 2013). …………………………………………………………………………………………..8

*Faulkner v. Nat'l Geo. Soc'y*, 211 F.Supp.2d 450 (S.D.N.Y.2002), *modified on other grounds*, 220 F.Supp.2d 237, *aff'd sub nom. Faulkner v. Nat'l Geo. Enters. Inc.*, 409 F.3d 26 (2d Cir.2005) ………………………………………………………………………………………..5

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110 (2d Cir. 1986) …………………..10, 15

*Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 2992663 (S.D.N.Y. July 14, 2017)... 20

*Fournier v. Erickson*, 242 F.Supp.2d 318 (S.D.N.Y. 2003) ……………………………………..13

*Friedman* v. *Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016). ………………………20

*Graham v. Prince*, 265 F. Supp. 3d 366 (S.D.N.Y. 2017) ……………………………..10, 13

*In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677 (2d Cir. 2009)………………19

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005). …18

*Leonard v. Stemtech Int'l Inc*, 834 F.3d 376 (3d Cir. 2016), *cert. denied sub nom. Stemtech Int'l, Inc. v. Leonard*, 138 S. Ct. 975, 200 L. Ed. 2d 246 (2018) …………………………………..12

*Lessem v. Taylor,* 766 F.Supp.2d 504 (S.D.N.Y.2011) ………………………………………….5

*Luar Music Corp v. Universal Music Grp., Inc*, No. 09-2263(DRD), 2012 WL 12549571 (D.P.R. July 2, 2012). ………………………………………………………………………………………..8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) …………………3

*Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260 (D.Del. 1989)………………………… 7

*Papazian v. Sony Music Entertainment*, No 1:16-cv-07911(RJS) (S.D.N.Y. September 28, 2017) …………………………………………………………………………………………………….3

*Philpot v. Music Times LLC*, No. 16CV1277 (DLC) (DF), 2017 WL 9538900 (S.D.N.Y. Mar. 29, 2017), *report and recommendation adopted,* No. 16CV1277 (DLC), 2017 WL 1906902 (S.D.N.Y. May 9, 2017) ……………………………………………………………………………15

*Poindexter v. Cash Money Records*, No. 13 CIV. 1155, 2014 WL 818955 (S.D.N.Y. Mar. 3, 2014). …………………………………………………………………………………………..5-6

*Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529 (2d Cir.1999) …………………………………19

*Psihoyos v. Pearson Educ., Inc.,* 855 F. Supp. 2d 103 (S.D.N.Y. 2012)………………………..6

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001), *as amended (May 15, 2001)* ..10, 11, 13

*Richard Feiner & Co., Inc. v. BMG Music Spain, S.A.,* 01 Civ. 0937(JSR), 2003 WL 740605 (S.D.N.Y. Mar. 4, 2003) …………………………………………………………………………8

*Rule v. Brine, Inc.,* 85 F.3d 1002 (2d Cir. 1996) ………………………………………………..4

*SEC v. Meltzer,* 440 F. Supp. 2d 179 (E.D.N.Y. 2006) …………………………………………3

*Silberman v. Innovation Luggage, Inc.*, No. 01 CIV. 7109, 2003 WL 1787123(S.D.N.Y. Apr. 3, 2003) …………………………………………………………………………………………10

*Smith v. BarnesandNoble.com, LLC,* 143 F. Supp. 3d 115 (S.D.N.Y. 2015), *aff'd on other grounds,* 839 F.3d 163 (2d Cir. 2016) ……………………………………………………………..4

*Sygma Photo News, Inc. v. High Society Magazine,* 778 F.2d 89 (2d Cir.1985) ………………10

*Twin Peaks Productions v. Publications International,* 996 F.2d 1366 (2d Cir.1993) …………16

*Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67 (2d Cir. 1988) ……………………………8

*Villante v. Department of Corrections,* 786 F.2d 516 (2d Cir.1986)…………………………… 4

*WB Music Corp v. RTV Com,* 445 F.3d 538 (2d Cir. 2006) …………………………………16

*Zappa v. Rykodisc, Inc.,* 819 F.Supp.2d 307, 315 (S.D.N.Y.2011)…………………………….. 6

**STATUTES AND RULES**

Fed. R. Civ. P. 56(c) …………………………………………………………………..passim

17 U.S.C. § 504 …………………………………………………………………11, 13, 15-17

17 U.S.C.412 …………………………………………………………………………..14

## SECONDARY AUTHORITIES

William F. Patry, *Copyright Law and Practice* 1167 (1994) …………………………………10

4 *Nimmer* § 14.02[A], at 14–12 …………………………………………………………………10

## INTRODUCTION

Having been caught in a brazen and unrepentant act of infringement spanning five decades, Defendants now come before the Court in a last attempt to avoid a jury.  The Photographs at the heart of this litigation have been exploited commercially by the Defendants as album cover art for one of the most legendary musicians of our time, Mr. B.B. King.  Without so much as regard to the author and creator, Defendants have published, distributed and/or profited from the proliferation of these of these now-iconic images.  They have graced the covers of over 40 distinct albums and have been distributed and sold across the globe.   These images have, to some extent, become synonymous with the artist himself.

Plaintiff Glen Craig ("Craig") believes his day in court is well-deserved.  There are material facts in genuine dispute that Craig argues should be determined by a trier of fact.  In their opening briefs, Defendants cannot show that any part of Craig's claims should fail as a matter of law.  Moreover, if the Court makes all reasonable inferences in Craig's favor, the Defendants cannot show that any claim that a juror could not find in Craig's favor.  The motion for summary judgment and partial summary judgment must be denied in its entirety.

## UNDISPUTED FACTS

Defendants ineffectively attempt to attack this straight-forward copyright infringement case on several grounds in order to see what will stick.  Their half-hearted kitchen-sink arguments are either meritless or are procedurally improper.  Defendants cannot make a case for even a partial summary judgment, much less in its entirety based on the record before the Court.  Given that Court will make all inferences in the favor of the non-moving party, and that the record is full of material facts in genuine dispute, Defendants' motion should be denied.

1

Craig was in the fortunate position in the late 1969 to take exclusive photographs of a young B.B. King in concert.  He testified that around that time he would license images of other musicians for album covers for up to $1,000.   Three photographs he took of Mr. King were submitted to Changes Magazine, but never published.  Craig's photographs that we published in the June 1970 issue appeared with the following credit line "Photos/Glenn Craig". Unfortunately, Changes Magazine never returned Craig's work prints from that concert.  Among the prints never returned were the three Photographs in question.

In 2014, Craig began working on a Leica photography exhibition and through his research discovered decades long unauthorized exploitation of his Photographs by Defendants. Craig's research revealed over 40 different records, albums, LPs released that featured one or more of his images – all without permission.   The albums were released domestically in the United States, as well as abroad through UMG's affiliates, partners, subsidiaries, etc.   The Estate received royalties pursuant to existing contracts and reviewed album release materials sent from UMG.  Decl. Liebowitz, ¶7, Exhibit D, 17:21-19:25.[1]

In June of 2014 Craig contacted Defendants UMGI and Estate regarding their exploitation of the Photographs.  In September of 2014 Craig's then-counsel sent more official cease & desist letters to the Defendants.   As late as November of 2015, over a year of being put on actual notice of the infringement, UMG released yet another album featuring the Photographs. Decl. Liebowitz, ¶7, Exhibit D 91:7-93:10.

---

[1] Craig concedes that the record is insufficiently developed as to Defendant's Kingsid Ventures Ltd. involvement in the infringing activity.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material).  *See Papazian v. Sony Music Entertainment*, No 1:16-cv-07911(RJS), p.3 (S.D.N.Y. September 28, 2017).

A moving party is "entitled to a judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).

The burden is on the moving party to establish the lack of any factual issues.  *See Celotex Corp. v. Catrett*, 477 U.S. at 323.  The district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *SEC v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006).

3

"Although a party does not show a triable issue of fact merely by submitting an affidavit that disputes his own prior sworn testimony, a material issue of fact may be revealed by his subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony, *see, e.g., Villante v. Department of Corrections,* 786 F.2d 516, 522 (2d Cir.1986), especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996)(internal citations omitted).

## ARGUMENT

I.     **CRAIG HAS ESTABLISHED A MATERIAL FACT IN DISPUTE REGARDING ESTATE'S LIABILITY FOR COPYRIGHT INFRINGEMENT**

Defendants concede that the Complaint alleges that Estate improperly facilitated and wrongly benefited from UMGI's infringement of the Photographs.   Dkt. 78, Defendants' Memorandum of Law in Support of Summary Judgment "Def. Memo. S.J.", p. 9, Compl. 12. Craig has produced ample evidence that Estate benefited from the UMGI infringement and facilitated its continuation.   The plaintiff must prove that defendant "engaged in some volitional conduct sufficient to show that [it] actively" violated one of Plaintiff's exclusive rights. *Capitol Records, LLC v. ReDigi Inc.,* 934 F.Supp.2d 640, 657 (S.D.N.Y.2013); *Smith v. BarnesandNoble.com, LLC,* 143 F. Supp. 3d 115, 121 (S.D.N.Y. 2015), *aff'd on other grounds,* 839 F.3d 163 (2d Cir. 2016).

In *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008) the court allowed that a case may exist where "one's contribution to the creation of an infringing copy [is] so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy." *Id.*

4

Here, Craig has established a material fact in dispute as to whether Estate had exhibited volitional conduct sufficient to warrant a reasonable juror to find liability for copyright infringement.  Craig testified, and Estate admitted, that it was contacted repeatedly in regards in the ongoing infringement.   Decl. Liebowitz, ¶7, Exhibit D. Craig produced emails between him and Estate in regards in the infringement.   Finally, Craig sent cease and desist letters to the Estate outlining his claims in copyright to the infringing Photographs.  Decl. Liebowitz, ¶6, Exhibit C.  Despite these concerted efforts to enforce Craig's copyright, more instances of infringements followed in 2015.

Ms. Toney testified that she received communications, emails, phone calls from Craig in regards to the ongoing infringement.  She also testified that she would receive all album releases from UMGI, delivered to her for review.  Decl. Liebowitz, ¶7, Exhibit D.  Ms. Toney also testified that she would receive royalties from UMGI.   There are sufficient material facts here that a juror might find constitutes volitional conduct sufficient to warrant a finding of liability.

The cases Defendants cite are inapposite.   Largely, in these cases the non-moving party had produced no evidence whatsoever that the defendant had anything at all to do with the infringement.  See *Lessem v. Taylor,* 766 F.Supp.2d 504, 514 (S.D.N.Y.2011) (granting summary judgment where "plaintiffs have produced no evidence whatsoever that [defendant record companies] had anything to do with the copyright infringement alleged in this case"); *Faulkner v. Nat'l Geo. Soc'y,* 211 F.Supp.2d 450, 472 (S.D.N.Y.2002) (plaintiffs "have brought forward absolutely no evidence suggesting that Kodak itself engaged in conduct that violated any of the exclusive rights granted to copyright holders"), *modified on other grounds,* 220 F.Supp.2d 237, *aff'd sub nom. Faulkner v. Nat'l Geo. Enters. Inc.,* 409 F.3d 26 (2d Cir.2005); *Poindexter v. Cash Money Records*, No. 13 CIV. 1155, 2014 WL 818955, at *8 (S.D.N.Y. Mar. 3, 2014).

("Plaintiff has not presented any evidence that Cash Money undertook any conduct including the requisite 'volitional conduct' with respect to the allegedly infringing work");

*Zappa v. Rykodisc, Inc.,* 819 F.Supp.2d 307, 315 (S.D.N.Y.2011) (upon a finding that "there is no evidence establishing direct liability since [plaintiff] cannot point to volitional conduct…"). In these cases, there was absolutely no evidence presented showing volitional conduct.

Interestingly, in *Zappa* the court denied a cross-motion for summary judgment based on the fact that the sole trustee of the Zappa Family Trust 'delivered these tracks' to the defendant, and that Mr. Zappa's widow "cooperated in the album's release by drafting liner notes and designing the album's cover art." *Id.* 318–20. Crucially, the court held that the delivery of the recordings to the record label, and the participation in ancillary aspects of a potential release of those recordings, were sufficient to raise a genuine issue of fact to preclude a summary judgment. *See Psihoyos v. Pearson Educ., Inc.,* 855 F. Supp. 2d 103, 122 (S.D.N.Y. 2012). Though the issue at stake in the cross-motion was whether there was an implied license, the extent of widow's/sole trustee's participation in the release of the recordings created a genuine issue of material fact, precluding a summary judgment. Analogously, Ms. Toney's participation in the release of the albums in addition to Estate's receipt of royalties for the albums featuring the infringed Photographs creates a genuine issue of material fact in dispute so that a reasonable juror might find that Craig has shown enough volitional conduct on the behalf of Estate to find it liable for copyright infringement. Craig has raised a material fact in dispute to preclude summary judgment as to the Estate.

## II.   CRAIG HAS ESTABLISHED A MATERIAL FACT IN DISPUTE REGARDING UMGI'S LIABILITY FOR ALBUMS SOLD ABROAD.

**A. UMGI Contributed to and Benefited from the Manufacturing and Distribution of Album Abroad.**

Contrary to Defendants' assertions, evidence exists that UMGI caused the infringing Photographs to be used on at least some album reproduced or distributed abroad.   Defendants claim that third parties are responsible for these, yet the record indicates otherwise.   UMGI provided the infringing photographs to its affiliates, partners and subsidiaries abroad.  Moreover, UMGI benefited directly from the manufacturing and distribution of the albums featuring the infringing Photographs.   Causing affiliates and subsidiaries to reproduce and distribute the infringing works, in addition to profiting from the said infringement directly is sufficient to hold UMGI responsible.    In the light most favorable to Craig, a reasonable juror may conclude that the downstream infringements of affiliates, partners, subsidiaries abroad are attributable to UMGI.

**B. UMGI Is Liable for the Its Contributions and Benefit From Its Affiliates, Partners, Subsidiaries Based Abroad.**

UMGI next claims that Craig cannot pierce the corporate veil and reach the affiliates abroad.   It argues that Craig cannot establish alter ego liability, even if dominion and control may be found.  UMGI primarily relies on the *Mobil Oil* case which is clearly distinguishable from the present case on its facts. *Mobil Oil* involved the denial of a plaintiff's Rule 25(c) motion to substitute a successor-in-interest defendant into a case where the court had determined that the original defendant was not liable. *Mobil Oil Corp. v. Linear Films, Inc.,* 718 F. Supp. 260, 272-3 (D.Del. 1989). In essence, the court held that the plaintiff could not cure its error of "su[ing] the wrong party," 718 F.Supp. at 263, by substituting the correct successor-in-interest party under Rule 25(c).

Here, Craig is not attempting to substitute a successor-in-interest.  Rather, Craig has

shown that UMGI caused the infringing Photographs to be used by the affiliates, partners and

subsidiaries abroad and UMGI, in turn, financially benefitted from the perpetuated infringement.

The argument is not based an alter-ego theory making UMGI's argument here inapplicable.

### C.  UMGI Is Liable for Infringements that Originated in the U.S.

"[W]hile the United States copyright regime does not generally have extraterritorial

application, an exception exists where the defendant commits a predicate act of infringement

within the U.S." *Richard Feiner & Co., Inc. v. BMG Music Spain, S.A.,* 01 Civ. 0937(JSR), 2003

WL 740605 (S.D.N.Y. Mar. 4, 2003) (citing *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d

67, 73 (2d Cir. 1988)); *Estate of Stewart v. Sugar Hill Music Pub. Ltd.*, No. 10 CIV. 2632 LTS

JLC, 2012 WL 4900927, at *5 (S.D.N.Y. Oct. 12, 2012), *order vacated in part on

reconsideration sub nom. Stewart v. Estate of Sugar Hill Music Pub. Ltd.*, No. 10 CIV. 2632

LTS JLC, 2013 WL 1405422 (S.D.N.Y. Apr. 8, 2013).  Under the predicate act exception, a

defendant may be liable for copyright infringement occurring abroad if the plaintiff establishes

that: (1) the defendant violated the Copyright Act within the United States; and (2) the alleged

domestic infringement "permits further reproduction abroad. *Luar Music Corp v. Universal

Music Grp., Inc*, No. 09-2263(DRD), 2012 WL 12549571, at *2 (D.P.R. July 2, 2012).

In *Luar*, UMGI was able to show that no predicate act had taken place in the United

States.  Here, Craig has submitted sufficient evidence and Defendants all but concede that a

predicate act of copyright infringement occurred in the United States.   Unlike in *Luar*, Craig

"has established a genuine issue of material fact that Defendants violated the Copyright Act in

the United States in a manner that permitted reproduction abroad." *Id.* at *3.  UMGI violated the

Copyright Act in the United States and allowed it to be infringed abroad.   Decl. Liebowitz, ¶4, Exhibit A.

III.   **CRAIG IS ELIGIBLE FOR DAMAGES STEMMING FROM ANY INFRINGING CONDUCT FROM JULY 7, 2013 TO THE PRESENT.**

Defendants further mischaracterize a well-established principle in this Circuit and most other sister Circuit, known as the discovery rule.  Defendants disingenuously argue that all claims accruing prior to July 7, 2013 are barred by the statute of limitations.   As Defendants and the Court is well aware, this Circuit follows the discovery rule that allows claims to accrue upon a reasonable discovery of the infringement.  Craig's claims are not "technically timely" but are not barred by the applicable statute of limitations.

While Craig acknowledges that the Second Circuit follows a "rolling" approach to damages, Craig believes that he is entitled to damages for infringing acts of all the King Albums if any were sold from July 7,2013 to the present.  Defendants arbitrarily trim the number of infringing albums first to 15 based on a misconceived notion that only albums manufactured and distributed in the United States are subject to damages.   As explained above in Part II, Craig disagrees.   If Defendants have benefitted, gained an advantage or profited from the exploitation of the Photographs since July 7, 2013 then Craig is entitled to those damages.   Contrary to Defendants' assertions that only 13 albums are relevant for the purposes of the damages assessment, and that Craig is not entitled to damages accruing after July 7, 2016, Craig has presented sufficient evidence to raise a material fact in dispute that a reasonable juror may determine in his favor.

IV.   **CRAIG PRODUCED EVIDENCE THAT HE HAS SUFFERED ACTUAL DAMAGES**

Defendants' characterization of Craig's burden is damages in similarly misguided. "Courts and commentators agree" that actual damages "should be broadly construed to favor victims of infringement." *On Davis v. The Gap, Inc., 246 F.3d 152, 164 (2d Cir. 2001), as amended (May 15, 2001); See* William F. Patry, *Copyright Law and Practice* 1167 (1994) ("Within reason, any ambiguities should be resolved in favor of the copyright owner."); 4 *Nimmer* § 14.02[A], at 14–12 ("[U]ncertainty will not preclude a recovery of actual damages if the uncertainty is as to amount, but not as to the fact that actual damages are attributable to the infringement.");  ("[A]ctual damages are not ... narrowly focused."); *Sygma Photo News, Inc. v. High Society Magazine,* 778 F.2d 89, 95 (2d Cir.1985) (stating that when courts are confronted with imprecision in calculating damages, they "should err on the side of guaranteeing the plaintiff a full recovery").

Defendants cling to the notion that because Craig never licensed the particular Photographs in question, he has not "actually suffered any damages as a result of the alleged infringements." Def. Mem. SJ, p. 13.  It is not surprising that Defendants cite no legal support for this proposition.  In fact, Craig need not have an extensive or any licensing history in order to claim actual damages. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346. 357–58 (S.D.N.Y. 2003)(reasonable licensing fee was appropriate even though the plaintiff "initially stated that he has only worked on assignment and has not sold or licensed photography in his career"); *Silberman v. Innovation Luggage, Inc.*, No. 01 CIV. 7109, 2003 WL 1787123, at *10 (S.D.N.Y. Apr. 3, 2003) ("[C]alculation of the appropriate [license] fee is for a finder of fact at trial, and not for the Court on summary judgment."); *Graham v. Prince*, 265 F. Supp. 3d 366, 387 (S.D.N.Y. 2017) (same).   Defendants' cries that Craig has not met a burden are misleading at best.

17 U.S.C. § 504 imposes two categories of compensatory damages: the infringer's profits and the copyright owner's actual damages.  Crucially, these "two categories of compensation have different justifications and are based on different financial data. The award of the infringer's profits examines the facts only from the infringer's point of view. If the infringer has earned a profit, this award makes him disgorge the profit to ensure that he not benefit from his wrongdoing. The award of the owner's actual damages looks at the facts from the point of view of the copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act."  *On Davis v. The Gap, Inc.,* 246 F.3d at 159.

Here, Defendants concede that Craig has testified that he previously licensed photographs for use on album covers around same time the present infringement had begun.   To the best of his recollections, Craig stated that he charged $500-$1,000 in the late 1960's and early 1970's. While Defendants' mischaracterization of the complete absence of a licensing history is odd, it is also unnecessary for the purposes of calculating actual damages.

As Defendants further concede, Craig is entitled to the fair market value of a license covering the infringing use.  That fair market value is best expressed in what a willing buyer and a willing seller would have agreed upon." *Id.* at 167.  Defendants further concede that actual damages are to be determined from pre-infringement perspective.  The fair market value then would have to be assessed from 1971 to the present, on infringing uses appearing worldwide, on over 40 album covers.

Defendants' expert concludes that the fair market value for the infringing uses is under $10,000 based on only the domestic albums released in the three years prior to the beginning of the lawsuit.   In another copyright infringement case where Defendants' expert Sedlik recently testified, he concluded that "in the sum calculated from the stock photo agency rates did not

11

represent a full calculation of the fair market value of … images because the rates did not account for scarcity and exclusivity." *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 393 (3d Cir. 2016), *cert. denied sub nom. Stemtech Int'l, Inc. v. Leonard*, 138 S. Ct. 975, 200 L. Ed. 2d 246 (2018).  According to Sedlik, fair market value calculation has two components: the stock agency quotes and the adjustments to reflect the uniqueness of the images and the impact of the infringing usage.  In *Stemtech*, the court relied on Sedlik's conclusion that "the fair market value calculation was complete only after these additional factors were applied." *Id*.  In its opening brief, Defendants do not even mention the uniqueness or scarcity of the images infringed upon. These factors are simply unaccounted for and Mr. Sedlik only reports a bare stock agency quote based on incomplete parameters such as the number of albums, circulation, and territories. *Barrera v. Brooklyn Music, Ltd*., 346 F. Supp. 2d 400, 409 (S.D.N.Y. Sept. 16, 2004) ("The calculation of a reasonable license fee for use of a photograph may be based on such factors as the type of use, size of use, and circulation.")  Among other factors considered is the type of media in which the photograph is reproduced, the size of the image of the Photograph in relation to the materials in which it is used, the geographic scope of the market in which the infringing use was made, and whether the use of the photograph contains a "credit line" that completely and accurately identifies the author(s) of the photograph. *Id.* at 409-410.  Defendants' expert witness creates a material issue of fact in dispute all on his own.  Defendants cannot show that as a matter of law the actual damages are limited to $ 9,452.21.  Nor can Defendants show that a reasonable juror could not award more than that number.

## V.     CRAIG PRODUCED EVIDENCE THAT HE IS ENTITLED TO DEFENDANTS' PROFITS

### A.  Case Law Provides a Causal Link Between UMGI's Profits and the Infringement

To establish an infringer's profits, a plaintiff "is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). "The plaintiff can discharge his evidentiary burden by simply proving the defendants' gross revenues; it is then up to the infringer to prove that those revenues are not linked to any infringing use of the plaintiff's original work." *Graham v. Prince*, 265 F. Supp. 3d at 388) (punctuation altered).

Contrary to Defendants' argument, "*Davis* did not disrupt the basic burden-shifting framework of 17 U.S.C. § 504(b); it does *not* require the copyright owner to provide evidence of 'profits derived solely and directly from the infringing activity'." *Fournier v. Erickson*, 242 F.Supp.2d 318, 327 (S.D.N.Y. 2003); *see also Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866, 2014 WL 7392905, at *9 (S.D.N.Y. Dec. 29, 2014). After *Davis* profits are still "legally cognizable if the copyright owner can provide sufficient proof of a causal nexus" to the infringement. *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, No. 08 Civ. 7497, 2013 WL 5970065, *2 (S.D.N.Y. Nov. 8, 2013).  The causal nexus, however, is satisfied by merely asking for profits related to the infringed works and not all works regardless of whether they feature an infringing work.   That is to say, if Craig is only seeking profits for albums featuring the infringed Photographs, he has satisfied the causal nexus requirement.

### VI.   CRAIG IS ENTITLED TO STATUTORY DAMAGES, ATTORNEY'S FEES AND COSTS

13

Having admitted to exploiting the Photographs in question for decades and "simply [a] re-packaging" the albums featuring unauthorized images, Defendants claim that November 2015 release of Ladies and Gentlemen Mr. B.B.King was already released in 2012, making Craig ineligible for statutory damages pursuant to 17 U.S.C.412.   Defendants neglect to note that not only is the November 2015 release post-registration, but it was also made post-actual notice.  As the record shows, Defendants UMGI and Estate received cease and desist letters regarding the unauthorized exploitation of the Photographs in September of 2014.  Decl. Liebowitz, ¶6, Exhibit C, 7, Exhibit D.

Furthermore, Defendants admit that the 2015 release was edited down to have fewer tracks and photographs. Defendants try to minimize this distinct release but they cannot disguise that someone had to review, make decisions and edit the November 2015 release of the album. UMGI employees concede that by their own standards the 2015 release is considered a new compilation. Decl. Liebowitz, ¶4, Exhibit A.  The most important factor, however, is that 2015 release occurred over a year after the Defendants were on actual notice of the infringement.

The Second Circuit has not adopted the "bright-line" rule barring statutory awards for infringements that may have started prior to registration.  While the Court might consider the developing "bright-line" rule among the District Courts[2], in this case the fact that Defendants knew that the use was infringing when they released a new album – deserves a second look. Defendants cannot hide behind the continuing infringements doctrine to shield from a statutory award whose primary purpose is to deter.   The District Courts have expressed concern about the implementation of a case-by-case analysis of whether an infringement has sufficiently stopped to constitute a new infringement.  Understandably, a bright-line rule would relieve the courts from

---

[2] The cases cited by Defendants on this point prefer the "bright-line" rule to a case-by-case analysis.

deciding arbitrary time periods.  But the courts cannot dispense with their obligation to apply the statutory purpose of statutory awards.   If the purpose of the statutory award is to deter, the Court should consider what deterrent message would be sent to Defendants and those similarly situated if they were absolved of releasing an infringing product after a cease-and-desist has been received.  *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d at 1117 ("Awards of statutory damages serve two purposes—compensatory and punitive.").  In the light most favorable to the non-moving party, Defendants did not show that Craig is barred from recovering a statutory award for the release of November 2015 infringing work.

## VII.   CRAIG IS ENTITLED TO THREE STATUTORY DAMAGES AWARDS

While it is uncontroversial that Craig is eligible for one statutory award per work infringed, the Defendants' assertion that one copyright registration encapsulates one work for the purposes of awarding statutory damages is wrong.   Defendants only support for this proposition *Philpot v. Music Times LLC*, No. 16CV1277 (DLC) (DF), 2017 WL 9538900, at *5 (S.D.N.Y. Mar. 29, 2017), *report and recommendation adopted,* No. 16CV1277 (DLC), 2017 WL 1906902 (S.D.N.Y. May 9, 2017) ("For the purposes of [17 U.S.C. 504 (C) (1)], all the parts of a compilation or derivative work constitute one work.") (internal citation omitted).   To be sure, there are exceptions to the 17 U.S.C. §504(c) the one-award-per-work clause when it comes to compilations.  While §504(c) does apply to compilations, or works that are comprised of many individually copyrightable works – the one statutory damage award per work limitation is triggered only when the Plaintiff is responsible for putting together the compilation.   In cases where the Defendant compiles many distinct, separately copyrightable works, the last sentence of §504(c) is not triggered, and each separately copyrightable work in the compilation counts as a

separate work for the purposes of calculating statutory damages.   This is a critical distinction that the Defendants' argument ignores entirely.

In *Bryant v. Media Right Prods., Inc*, 603 F.3d 135 (2d Cir. 2010), the Hon. Judge Wood interprets the "per work" limitation as it applies to compilations.  In that case, the plaintiff created a compilation of songs, each subject to copyright protection, but issued as a single unit. As a result, the Court limited the award of statutory damages to one work.  The Court distinguished *Bryant* by referring to the fact that the plaintiff was the creator of the compilation. The Second Circuit does recognize, however, that compilations created by defendants should not limit the awards for statutory damages.   *See Twin Peaks Productions v. Publications International,* 996 F.2d 1366 (2d Cir.1993); *WB Music Corp v. RTV Com*, 445 F.3d 538 (2d Cir. 2006) (where *Twin Peaks* is "squarely controlling").  In those cases, the defendants were responsible for the compilations and the Court treated each constituent, separate, copyrightable part of the compilation as warranting a separate statutory damages award.

Here, Defendants put together the infringing Photographs on album covers without any authorization or assistance from Craig.  The Defendants selected, edited, published and distributed three distinct copyrightable works. The present case is clearly distinguishable from *Bryant* and more closely resembles the facts in *Twin Peaks* and *WB Music*.

It follows then that the Defendants erroneously rely on the fact that the three Photographs were registered in one registration as evidence that they should be treated as a compilation, and not individually copyrighted works, for the purposes of statutory damages.  The Second Circuit has spoken on this faulty presumption in *Twin Peaks*, where the defendant's unauthorized compilation of multiple separate copyrights did not trigger the last sentence of §504 (c)(1). In that case, the defendant, having illegally copied several separate teleplays of the TV show Twin

Peaks and published them in one book, unsuccessfully argued that only one work was at issue for statutory damages.   The court plainly rejected the idea that the defendant could benefit from his/her own wrongdoing by creating an illegal compilation and thereby limiting the plaintiff's ability to recover the appropriate damages.   In *WB Music* the defendant similarly attempted to limit the plaintiff's statutory damages by relying on a compilation CD of several separately copyrighted works. The court found no evidence that the copyright owners authorized any separately copyrighted works to be included in a compilation.   In fact, the court was adamant that if the compilation was created by the defendant, each separately copyrighted work is treated individually for the purposes of statutory damages.

The Defendants cannot use the fact that three infringing Photographs that were merely registered under one registration number as a shield.  Beyond going against precedent set in *Twin Peaks* and *WB Music*, that the administrative choice of registering photographs under one registration, without more, cannot be determinative of damages.   That result cannot be in the public's interest and cannot be consistent with Congressional Intent in §504(c)(1) nor with the Second Circuit rulings on the compilation limitation of the one-award-per-work doctrine.   It follows that the Defendant's claim three Photographs are a compilation for the purposes of one-work limitation is invalid and should be rejected in accordance with Second Circuit precedent. Defendants cannot show that as a matter of law Craig is only eligible for one statutory award.

### A.  Craig Had Established A Material Fact in Dispute Regarding Whether the Infringement was Willful

Defendants present two false alternatives between willful or innocent infringement.   The statutory range for a non-willful infringement is $750 - $30,000, with willfulness pushing the award up to $150,000 per work.   Even if Craig does not show willfulness, which he clearly

does, he does not need to prove it in order to recover up to $30,000 per image.   Nor does Craig

need to show knowledge or reckless disregard, which incidentally, he does.  At any rate, the

absence of willfulness is not, as the Defendants contend, innocent infringement reducible to

$200.  Defendants are misapplying the law in a brazen attempt to collapse the category of

enhanced damages.

At the very least, Craig has shown that Defendants distributed an infringing album after

learning of the unauthorized exploitation via cease and desist letters.  Persisting with the

infringement after actual notice was given is the paradigmatic definition of willfulness.   One

could argue about whether UMGI or Estate could have known or should have known about the

infringing exploitation of the Photographs earlier, but there is no explanation that avoids

willfulness, knowledge and reckless disregard in the 2015 release of an infringing album

subsequent to actual notice.

Defendants' multitude of excuse about public domain, good faith, reasonable beliefs

faulter in the face of the November 2015 release.  Given, the unrepentant release of an infringing

album, and that at this stage of the proceedings, where the Court must draw all inferences in

favor of the non-moving party, Defendants cannot show, as a matter of law, that they are entitled

to summary judgment on the question of willfulness. *Island Software & Computer Serv., Inc. v.

Microsoft Corp*., 413 F.3d 257, 263–64 (2d Cir. 2005).

Even without establishing actual knowledge, Second Circuit recognizes that

circumstantial evidence of willfulness may be proffered. *Id.* At 264.  Here, Craig has proffered

evidence of infringing conduct after cease and desist letters were received.   Surely, that conduct

sufficiently establishes willfulness for the Defendants' summary judgment to be denied.

## VIII.   CRAIG HAS ESTABLISHED A MATERIAL FACT IN DISPUTE REGARDING HIS DMCA CLAIM.

The Second Circuit advises courts to be "lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences," because such issues are "appropriate for resolution by the trier of fact." *Press v. Chem. Inv. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir.1999); *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009). Defendants now ask the Court to resolve the issue on a summary judgment.  Their argument falls woefully short.

Craig's name appeared in connection with the Photographs.  Subsequently, as a result of Defendants' conduct, his name was removed.  Whether the stripping of his name from the Photographs occurred with sufficient intent is a question for the fact finder.

Defendants speculate that any removal of the CMI happened prior to the enactment of the DMCA.  The reliance on Craig's deposition for knowledge about when the CMI would have been removed by Defendants is bizarre.   Craig has no basis of knowledge to testify as to the removal of the CMI.  He can merely say his name was on the Photographs and that it was missing from the Defendants' infringing albums.  Any speculation in Craig's deposition as to who specifically or when removed the CMI is just that.

Defendants admit that the photographs provided to Changes Magazine in 1970 had CMI attached to them.   In that batch of photographs were three Photographs in question.   There is no reason to assume that the three Photographs in contention had anything less than the CMI that appeared in Changes Magazine.  This group of photographs was given to Changes Magazine around the same time.   Taken in the light most favorable to Craig, a reasonably juror may conclude that the Photographs contained CMI.

Craig also need not show that Defendants removed the CMI, but rather that they distributed the infringing works having reason to know that CMI was removed or altered. *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011). "The statute does prohibit the intentional removal of CMI. But [plaintiff] could also prevail upon a showing that [defendant] distributed his works with the knowledge that CMI had been removed, even if [defendant] did not remove it." *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 2992663, at \*17 (S.D.N.Y. July 14, 2017) (quoting *Friedman* v. *Live Nation Merch., Inc.*, 833 F.3d 1180, 1187 (9th Cir. 2016).

Defendants only cite two other cases outside of this Circuit for the proposition that if no CMI whatsoever was conveyed, then defendant is entitled to a summary judgment.   The same does not pertain to the present case.  As Defendants concede, Craig has produced a publication of Changes Magazine where photographs from the same series as the Photographs in question were published with CMI.   In the light most favorable to Craig, the Photographs contained CMI which was either removed by Defendants or they had reasonable grounds to know was removed. Defendants have not shown that no reasonable juror could find that the Defendants have violated DMCA Section 1202.

## **CONCLUSION**

In light of the foregoing reasons, and because taken in the light most favorable to the non-moving party, Defendants have not shown as a matter of law that summary judgment, partial or otherwise, is appropriate.  Craig has raised material issue of fact in genuine dispute that would best be decided by the trier of fact.  The Defendants' motion should be denied.

DATED: July 16, 2018                                  Respectfully Submitted,

      Valley Stream, NY

                              /s/Richard Liebowitz

Richard P. Liebowitz
Yekaterina Tsyvkin
Liebowitz Law Firm
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516)233-1660
rl@liebowitzlawfirm.com

*Attorneys for Glen Craig*

21