UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GLEN CRAIG,                                              :
                                                         :   No. 16 Civ. 5439 (JPO)
             Plaintiff,                                  :
                                                         :
      -against-                                          :
                                                         :
UMG RECORDINGS, INC., KINGSID                            :
VENTURES, LTD., and ESTATE OF RILEY                      :
B. KING,                                                 :
                                                         :
             Defendants.                                 :
                                                         :
------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

LOEB & LOEB LLP
Barry I. Slotnick
C. Linna Chen
345 Park Avenue
New York, NY  10154
Telephone: 212.407.4000

*Attorneys for Defendants*
*UMG Recordings, Inc., Kingsid Ventures,*
*Ltd., And Estate Of Riley B. King*

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| LEGAL ARGUMENT | 1 |
| I. KINGSID MUST BE DISMISSED FROM THIS ACTION | 1 |
| II. THE ESTATE DID NOT PARTICIPATE IN ANY INFRINGEMENT | 2 |
| III. UMGI DID NOT MANUFACTURE, SELL, OR DISTRIBUTE THE FOREIGN ALBUMS | 3 |
| IV. UMGI IS NOT LIABLE FOR THE ACTS OF ITS FOREIGN AFFILIATES | 3 |
| V. UMGI IS NOT LIABLE FOR EXTRATERRITORIAL INFRINGEMENTS | 4 |
| VI. PLAINTIFF'S DAMAGES ARE LIMITED TO U.S. SALES THAT OCCURRED WITHIN THREE YEARS OF THE FILING OF THE COMPLAINT | 5 |
| VII. PLAINTIFF'S ACTUAL DAMAGES, IF ANY, ARE LIMITED TO $9,452.21 | 5 |
| VIII. PLAINTIFF FAILS TO DEMONSTRATE ANY ENTITLEMENT TO DEFENDANTS' PROFITS | 6 |
| IX. PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES, ATTORNEYS' FEES OR COSTS | 7 |
| X. PLAINTIFF REGISTERED THE PHOTOGRAPHS AS ONE WORK; HE IS ENTITLED TO ONLY ONE AWARD, IF ANY, OF STATUTORY DAMAGES | 8 |
| XI. THERE IS NO EVIDENCE OF WILLFUL INFRINGEMENT; ANY INFRINGEMENT WAS INNOCENT | 9 |
| XII. THERE IS NO EVIDENCE OF ANY DMCA VIOLATION | 9 |
| CONCLUSION | 10 |

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1996) .................................................................................................................4

*Bryant v. Media Right Prods., Inc.*,
    603 F.3d 135 (2d Cir. 2010) .....................................................................................................9

*Capitol Records, LLC v. ReDigi Inc.*,
    934 F. Supp. 2d 640 (S.D.N.Y. 2013) ......................................................................................2

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008) .....................................................................................................2

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
    1996 U.S. Dist. LEXIS 18653 (S.D.N.Y. Dec. 17, 1996) ...................................................... 4-5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) .............................................................................................................5

*Smith v. BarnesandNoble.com*,
    143 F. Supp. 3d 115 (S.D.N.Y. 2015), *aff'd*, 839 F.3d (2d Cir. 2016) ....................................2

*Troll Co. v. Uneeda Doll Co.*,
    483 F.3d 150 (2d. Cir. 2007) ....................................................................................................7

*Twin Peaks Prods. V. Publ'ns Int'l, Ltd.*,
    996 F.2d 1366 (2d Cir. 1993) ...................................................................................................8

*WB Music Corp. v. RTV Commc'n Grp., Inc.*,
    445 F.3d 538 (2d Cir. 2006) .................................................................................................8, 9

**Statutes**

17 U.S.C. § 507(b) ..........................................................................................................................5

Defendants UMG Recordings, Inc. ("UMGI"), Kingsid Ventures, Ltd. ("Kingsid"), and Estate of Riley B. King (the "Estate") (collectively, the "Defendants"), respectfully submit this Reply Memorandum of Law in further support of their motion for summary judgment and partial summary judgment.

## PRELIMINARY STATEMENT

Plaintiff cannot avoid summary judgment with *ipse dixit* and conclusory allegations, yet that is precisely the basis of his opposition. Plaintiff provided <u>no evidence</u> (a) tying any of the alleged infringements to Kingsid or the Estate, (b) that UMGI manufactured, sold, or distributed the Foreign Albums[1], (c) that UMGI can be held liable for the acts of its Foreign Affiliates, (d) that UMGI committed any predicate act in the U.S.; (e) that his actual damages are more than $10,000; (f) of a causal nexus between the allegedly infringing uses and UMGI's profits; (g) that he is entitled to statutory damages or attorneys' fees, or, at best, that he is entitled to more than one award of statutory damages; (h) that any Defendants' conduct was willful, or (i) to support his DMCA claim. With no proof to establish Plaintiff's case, there is no genuine issue of any material fact, and summary judgment and partial summary judgment for Defendants is proper.

## LEGAL ARGUMENT

### I. KINGSID MUST BE DISMISSED FROM THIS ACTION

Plaintiff admits that Kingsid did not commit any act of infringement with respect to the releases of the King Albums. Dkt. No. 92 ("56.1 Counter-Stmt."), ¶¶ 15-20; *see generally*, Dkt. No. 90 ("Opp." or "Opposition"). As such, Kingsid must be dismissed from this action. Br., 8-10.

---

[1] All capitalized terms not defined herein shall have the meanings set forth in Defendants' moving brief (Dkt. No. 78 ("Brief" or "Br.")).

## II. THE ESTATE DID NOT PARTICIPATE IN ANY INFRINGEMENT

Plaintiff also admits that the Estate did not commit any act of infringement relating to the King Albums. 56.1 Counter-Stmt., ¶¶ 15, 18-20. Nevertheless, Plaintiff asserts, without legal or factual basis, that the Estate is liable for copyright infringement simply because it received communications from Plaintiff decades after the alleged initial infringement, and received royalties from UMGI for the use of Mr. King's recordings. Opp., 4-5.

The receipt of communications and recording artist royalties is neither conduct nor volitional, and Plaintiff cites no law to suggest otherwise. Plaintiff's own cases require actionable volitional conduct to be both active and infringing, not passive. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130-31 (2d Cir. 2008) ("There must be <u>actual infringing conduct</u> with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [defendant] trespassed on the exclusive domain of the copyright owner.") (no volitional conduct where the defendants' actions were passive; the infringing copies were actively made by a third party); *Smith v. BarnesandNoble.com,* 143 F. Supp. 3d 115, 122-23 (S.D.N.Y. 2015), *aff'd*, 839 F.3d (2d Cir. 2016) (same); *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 657 (S.D.N.Y. 2013) (volitional conduct found where evidence showed that ReDigi's founders actively made the decision to build a service where only copyright works could be sold). The Estate's receipt of communications of claims <u>of past infringement</u> and of royalties is not volitional conduct.

Plaintiff's contention that the Estate "would receive all album releases from UMGI, delivered to [the trustee] for review" is both unsupported and patently false. Opp., 5. Plaintiff cites to portions of Ms. Toney's deposition transcript (*id.* (citing to Dkt. No. 91-4)), but it does not support Plaintiff's assertion that Mr. King or the Estate had any approval rights over any King Album packaging. Rather, that exhibit reveals that Mr. King "did not involve himself in that kind of decision-making or choosing a photo or not choosing a photo," (Dkt. No. 91-4, 67:25-68:4) and

2

that Ms. Toney recalls only that she had received a package from UMGI containing one of the King Albums. *Id.*, 92:4-21. Significantly, Plaintiff specifically omits Ms. Toney's repeated testimony that she "do[es]n't recall getting any request for anything to be approved," from UMGI, that UMGI "didn't" ask for approval or permission regarding any B.B. King releases, and that she only received copies of Mr. King's albums "as a courtesy," to let her know that an album by Mr. King was being released. Declaration of Barry I. Slotnick, Ex. I, 59:8-61:6.

### III. UMGI DID NOT MANUFACTURE, SELL, OR DISTRIBUTE THE FOREIGN ALBUMS

Plaintiff contends that UMGI manufactured, sold, and distributed the Foreign Albums, but cites to no evidence. 56.1 Counter-Stmt., ¶ 34. However, Plaintiff fails to come forward with any evidence to rebut UMGI's Corporate Secretary's testimony that UMGI does not manufacture, sell, or distribute in the U.S. any albums released by Foreign Affiliates, and that the Foreign Affiliates do not manufacture, sell or distribute albums in the U.S. Dkt. No. 81 ("Gold Decl."), ¶¶ 12, 14-15. Rather, Plaintiff merely identifies portions of Caroline Frilot's deposition where she testified that as UMGI's Vice President of Royalty Operations for Artists and Copyrights, she has the ability to query foreign profits, revenues and sales reported by foreign affiliates, and that UMGI pays its U.S. artists for foreign sales and collected information regarding foreign revenues for the King Albums for purposes of this litigation. 56.1 Counter-Stmt., ¶ 34. This does not raise a genuine issue as to the material fact that UMGI did not manufacture, sell, or distribute the Foreign Albums. *See* Br., 10-11.

### IV. UMGI IS NOT LIABLE FOR THE ACTS OF ITS FOREIGN AFFILIATES

UMGI, a Delaware corporation, may only be liable for the actions of another if it exerted control over the Foreign Affiliates and "the corporate structure cause[s] fraud or similar injustice." *Id*., 11. Rather than addressing the applicable standard, Plaintiff asserts without any legal basis

3

that UMGI can be held responsible for the actions of its Foreign Affiliates because it "caus[ed] affiliates and subsidiaries to reproduce and distribute the infringing works" and "profit[ed] from the said infringement directly..." Opp., 7. Plaintiff's only evidentiary support are the same portions of Ms. Frilot's testimony and a portion of Ryan Null's deposition. 56.1 Counter-Stmt, ¶¶ 29-34. However, neither Ms. Frilot's nor Mr. Null's testimony supports Plaintiff's contention or rebuts the testimony from UMGI's Corporate Secretary that UMGI has no involvement, control, or influence over any of the Foreign Affiliates or their operations. Gold Decl., ¶¶ 9-15.

Ms. Frilot testified that UMGI merely has access to financial information related to foreign sales. *Supra*, III.A. Mr. Null testified that in 2012, he sent a group of photographs to one Foreign Affiliate, at that Foreign Affiliate's request, and that the Foreign Affiliate chose the photographs to be used on the release. Dkt. No. 91-1, 128:22-129:9, 129:23-130:6, 131:7-14. These tenuous connections cannot raise a genuine question as to the material fact that UMGI does not have <u>any</u> – much less exclusive – dominion, ownership, or control over any of the Foreign Affiliates. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1996) ("The mere existence of a scintilla of evidence in support of the [non-moving] party's position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].").

Moreover, Plaintiff does not dispute that no injustice was caused by UMGI's corporate structure. Absent any evidence of dominion or injustice, UMGI cannot be held liable for the actions of the Foreign Affiliates. Br., 11-12.

V.  **UMGI IS NOT LIABLE FOR EXTRATERRITORIAL INFRINGEMENTS**

UMGI cannot be held liable for the Foreign Album releases because "copyright laws generally do not have extraterritorial application." Br., 12. Though a predicate act in the U.S. is an exception to this rule, Plaintiff identifies no such predicate act. *Supra,* III.A; *see Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 1996 U.S. Dist. LEXIS 18653, at *14 (S.D.N.Y. Dec. 17, 1996)

4

(the copyright infringement plaintiff "must first demonstrate that the domestic predicate act was itself an act of infringement in violation of the copyright laws"). All Plaintiff can point to is the testimony of Mr. Null in which he stated that he sent a "selection of photos" to the UK Affiliate, including the Star Photo. Dkt. No. 91-1, 129:4-9. However, the UK Affiliate, not Mr. Null or UMGI, chose to use the Star Photo.

## VI. PLAINTIFF'S DAMAGES ARE LIMITED TO U.S. SALES THAT OCCURRED WITHIN THREE YEARS OF THE FILING OF THE COMPLAINT

Plaintiff cites no case law to dispute that under 17 U.S.C. § 507(b) and *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), all claims that accrued prior to July 7, 2013 are barred by the statute of limitations. *See* Opp., 9. Indeed, Plaintiff admits that even under the most liberal construction of the Second Circuit's discovery rule, he cannot recover damages for any sales of the Relevant King Albums sold on or before July 7, 2013. *Id.*

Further, Plaintiff is not entitled to damages flowing from claims that accrued on or after the filing of the Complaint. Opp., 9. An infringement action can only be maintained if "it is commenced within three years <u>after</u> the claim accrued." 17 U.S.C. § 507(b) (emphasis added). Thus, Plaintiff cannot recover for any claims that accrued after the filing of the Complaint.

## VII. PLAINTIFF'S ACTUAL DAMAGES, IF ANY, ARE LIMITED TO $9,452.21

Plaintiff erroneously asserts that he can recover both his lost licensing income and a fair market value for a license covering the infringing use. Opp., 10-11. However, actual damages are established by evidence of licensing history <u>or</u> if that is not available, by a fair market value of a license covering the infringing use. Br., 14.

Plaintiff cannot establish actual damages based on his licensing history because there is no evidence, other than his self-serving deposition testimony, of a licensing history for either the Photographs or any other of his works. That testimony is further refuted by his repeated

5

admissions at the evidentiary hearing before this Court that he does not license photographs (Dkt. No. 73-1, 6:13-14, 18:7-19:17) and he has no experience in licensing or valuing photographs ((*id.*, 6:13-15, 10:9-11, 13:21-22, 15:22-16:1, 23:25-24:7). Likewise, Plaintiff's "expert" failed to opine on actual damages. 56.1 Counter- Stmt., ¶ 43.

Thus, Plaintiff can only recover the fair market value of a license covering the allegedly infringing uses as actual damages - $9,452.21. Br., 14. Plaintiff's attacks on Mr. Sedlik's analysis and conclusion (Opp., 12) are entirely baseless. Mr. Sedlik's report specifically noted that "a scarcity multiplier would be inappropriate" here because "[a] brief review of BB King photographs available for licensing indicates that there are many 'live concert' photographs of BB King available…including photographs of a quality equal to or greater than [Plaintiff's] Photographs. The Photographs are neither iconic nor especially rare." Dkt. No. 62-7, 30. Likewise, Mr. Sedlik concluded that an "exclusivity multiplier" would be inappropriate because "Defendants' use of the Photographs does not comprise exclusive use." *Id.*, 30-31. Lastly, Mr. Sedlik's report is clear that he did consider the factors delineated in the Opposition in reaching his conclusion. *Id.*, 29.

## VIII. PLAINTIFF FAILS TO DEMONSTRATE ANY ENTITLEMENT TO DEFENDANTS' PROFITS

Plaintiff alleges, without legal authority, that the required causal nexus between UMGI's profits and the alleged infringements is satisfied because he seeks only "profits for albums featuring the infringed Photographs." Opp., 13. That position is nonsensical. It is black letter copyright law that Plaintiff must show more than a mere connection or usage of the Photographs on a product; he must show that any profits from sales of those products are actually *attributable* to the use of the Photographs, *i.e.*, causation. Br., 16-17. Plaintiff adduced no evidence—and, accordingly, failed to meet his burden of—showing such a causal nexus between the allegedly infringing uses of the Photographs and UMGI's profits. *See* Opp., 13.

6

There is simply no logical or evidentiary connection between the alleged infringements and UMGI's profits. The alleged infringement was insignificant and irrelevant to the sales of the Relevant King Albums. Plaintiff admits that Mr. King was one of the greatest guitarists and blues performers of all time, that he toured extensively through 2014, and that he was the recipient of numerous prestigious awards for his musical accomplishments. 56.1 Counter-Stmt., ¶¶ 1-2. Similarly, Plaintiff admits that the Relevant King Albums embody 659 of Mr. King's performances and 659 musical compositions, in addition to dozens of photographs that are used in the packaging and various album inserts, compared to only 14 total uses of the Photographs. *Id.*, ¶ 35. Plaintiff cites to no evidence that can raise a genuine issue as to the material fact that Mr. King's legendary reputation, his renowned skills as a musician, and his prolific tour schedule were the factors that drove sales of the Relevant King Albums. With no evidence of a causal link, Plaintiff is not entitled to any portion of UMGI's profits. Br., 16-19.

## IX. PLAINTIFF IS NOT ENTITLED TO STATUTORY DAMAGES, ATTORNEYS' FEES OR COSTS

Plaintiff does not dispute that the Photographs had been used on Mr. King's records for decades prior to his registration of a copyright in any of the Photographs. Nevertheless, Plaintiff asserts that he is entitled to statutory damages because the November 2015 Release occurred after the effective date of his copyright registration. Opp., 14. However, Plaintiff ignores well-established Second Circuit jurisprudence set forth in Defendants' Brief, prohibiting any award of statutory damages or attorneys' fees "for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration." *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-59 (2d. Cir. 2007).

Consequently, Plaintiff can only argue that the November 2015 Release constitutes a "new" infringement. This argument fails. Plaintiff does not actually dispute that the November 2015

Release was merely a re-packaging of the October 2012 Release. 56.1 Counter-Stmt, ¶ 36. Instead, Plaintiff engages in meaningless word-play trying to distinguish "re-packaging" from a "straight re-issue" of an earlier release. *Id.* Plaintiff asserts that it was not a "straight re-issue" because the November 2015 Release required someone "to review, make decisions and edit" the release. Opp., 14. This argument is misplaced. As detailed in the Brief, a re-packaging or new "version" of previously released content constitutes, at best, a continuation of the earlier recording released well before registration, thereby precluding Plaintiff from recovering statutory damages and attorneys' fees. Br., 19-20. Plaintiff cites to no legal authority that would compel a finding otherwise, and does not otherwise dispute that the November 2015 Release is a "streamlined" re-packaging of the October 2012 Release, with the November 2015 Release merely using fewer photographs and embodying fewer musical compositions and sound recordings. 56.1 Counter-Stmt, ¶ 36. The remaining content of the November 2015 Release is otherwise identical to the October 2012 Release, including the cover photograph. Accordingly, Plaintiff's argument that the November 2015 Release is a "new" infringement should be rejected.

X. **PLAINTIFF REGISTERED THE PHOTOGRAPHS AS ONE WORK; HE IS ENTITLED TO ONLY ONE AWARD, IF ANY, OF STATUTORY DAMAGES**

Plaintiff argues that he is entitled to three statutory damages awards because UMGI released the Relevant King Albums as compilations. Opp., 16. However, the nature of UMGI's releases is irrelevant and Plaintiff's reliance on *Twin Peaks* and *WB Music Corp. v. RTV Commc'n Grp., Inc.*, 445 F.3d 538 (2d Cir. 2006) is entirely misplaced. In both cases, the plaintiffs had <u>obtained separate registrations for each infringed work</u>. *See Twin Peaks Prods. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1371, 1381 (2d Cir. 1993) (eight statutory damages awards were appropriate because the plaintiff had obtained eight separate registrations); *WB Music Corp.*, 445 F.3d at 540-41 (13 statutory damages awards were appropriate because there were 13 infringed copyrights).

8

Here, Plaintiff obtained only one copyright registration for multiple Photographs. 56.1 Counter-Stmt., ¶ 7. As such, only one award of statutory damages is available. *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135 (2d Cir. 2010) (where the plaintiff registered his works as a compilation, *i.e.*, there was only one registration, only one award was appropriate); *see* Br., 21.

## XI. THERE IS NO EVIDENCE OF WILLFUL INFRINGEMENT; ANY INFRINGEMENT WAS INNOCENT

Because, as demonstrated, Plaintiff is not entitled to statutory damages, the issue of willfulness is irrelevant. Nonetheless, Plaintiff has the burden of demonstrating that an infringer acted willfully. *Id.* Plaintiff has not met that burden. Plaintiff conclusorily asserts that he "clearly" showed willfulness, and that he showed Defendants' knowledge of and reckless disregard for his rights (Opp., 17-18), but, again, cites to no evidence of either. As detailed in the Brief, there is no evidence that any Defendant acted willfully. *Id.*, 21-23. Instead, the evidence demonstrates that UMGI had a good faith and reasonable belief in the innocence of its conduct. *Id*.

At rock bottom, Plaintiff can only suggest that one album, the November 2015 Release, was released after UMGI received a cease and desist letter from Plaintiff's counsel. Opp., 18. However, there is no evidence that this album was released with knowledge that UMGI's conduct represented infringement or that UMGI recklessly disregarded the possibility.

## XII. THERE IS NO EVIDENCE OF ANY DMCA VIOLATION

Plaintiff does not dispute that his § 1202(b) claim fails as a matter of law. He admitted at his deposition and now in his Opposition that the removal of any CMI, if it happened at all, occurred prior to 1971, decades before the enactment of the DMCA. Br., 4, 23; *see* Opp., 19-20. Nevertheless, even assuming *arguendo* the DMCA applied, Plaintiff's claim still fails because there is no evidence that *Defendants* engaged in any conduct that would violate § 1202. Plaintiff cites to no evidence (and falsely asserts that Defendants admitted) that the Photographs were

9

provided to Changes Magazine with CMI. Opp., 19. Plaintiff attempts to create a question of fact by speculating and asking the Court to assume that each photograph that Plaintiff provided to Changes Magazine bore the CMI "Photos/Glenn Craig." *Id.* Not only is this theory not supported by any evidence, it is also entirely rebutted by the fact that Plaintiff Glen Craig would have spelled his name correctly if he actually supplied the alleged CMI.

Moreover, even assuming *arguendo* CMI was associated with the Photographs, Plaintiff now admits that the Defendants did not remove or alter the CMI. *See* Opp., 19-20. Rather, Plaintiff asserts that Defendants distributed the Relevant King Albums with the knowledge that CMI had been removed. *Id.*, 20. Plaintiff cites to no evidence that could support such a finding. Neither Kingsid nor the Estate distributed the Relevant King Albums, and there is no evidence that UMGI distributed the Relevant King Albums with knowledge that CMI had been removed. Absent any evidence of any element of the DMCA claim, the claim fails as a matter of law.

## CONCLUSION

For all of the foregoing reasons and those stated in the Brief, the Estate and Kingsid respectfully request that the Court enter summary judgment in their favor, and UMGI respectfully requests that the Court enter partial summary judgment in its favor with respect to the Foreign Albums, the DMCA claim, and damages.

| | |
|---|---|
| Dated: New York, New York<br>July 23, 2018 | LOEB & LOEB LLP<br>By: */s/ Barry I. Slotnick*<br>Barry I. Slotnick<br>C. Linna Chen<br>345 Park Avenue<br>New York, NY  10154<br>Telephone: 212.407.4000<br><br>*Attorneys for Defendants*<br>*UMG Recordings, Inc., Kingsid Ventures, Ltd.,*<br>*and Estate of Riley B. King* |

16492246.1