UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLEN CRAIG

                              Plaintiff,                    Case No. 1:16-cv-0539-JPO

        - against -

UNIVERSAL MUSIC GROUP, INC.,
KINGSID VENTURES, LTD., and
ESTATE OF RILEY B. KING,

                              Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
RECONSIDERATION OR REARGUMENT PURSUANT TO LOCAL RULE 6.3 AND
RULE 60(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD ........................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

**POINT I:    THE COURT HAS OVERLOOKED CONTROLLING AUTHORITY WHICH HOLDS THAT VINDICATION IS A PROPER MOTIVE FOR TAKING ACTION ON BEHALF OF AN AGGREIVED CLIENT ................... 3**

   A.  THE SECOND CIRCUIT HAS CONSISTENTLY RULED THAT SANCTIONS MAY ONLY BE IMPOSED WHERE THERE IS A "CLEAR SHOWING" THAT ATTORNEY'S ACTION WAS MOTIVATED BY AN IMPROPER PURPOSE, SUCH AS DELAY OR HARASSMENT ..................... 3

   B.  THE COURT HAS OVERLOOKED EVIDENCE SHOWING THAT THE MOTION WAS, IN FACT, PROPERLY MOTIVATED BY THE NEED TO VINDICATE CRAIG'S INTEREST .......................... 5

   C.  THE DISTRICT COURT HAS NOT IDENTIFIED "WITH A HIGH DEGREE OF SPECIFICITY" ANY PURPOSE WHICH MOTIVATED LIEBOWITZ'S ACTION OTHER THAN TO DISQUALIFY AN EXPERT WITNESS WHO BETRAYED A "VERY SHOCKED" CLIENT ..................................... 7

   D.  DEFENDANTS HAVE FAILED TO PRESENT ANY EVIDENCE THAT LIEBOWITZ'S ZEALOUS ADVOCACY EXCEEDED THE BOUNDARIES OF ANY LAW OR ETHICAL RULES .................... 8

**POINT II:    THE COURT HAS OVERLOOKED CONTROLLING AUTHORITY WHICH HOLDS THAT AN ERROR OF JUDGMENT ON THE PART OF AN ATTORNEY IS NOT SUFFICIENT BASIS TO INFER BAD FAITH ....... 9**

   A.  UNDER SECTION 1927, ERRORS OF JUDGMENT, MISTAKES, OVERZEALOUSNESS, OR MISGUIDED ARGUMENTS ARE NOT GROUNDS FOR SANCTIONS AGAINST ATTORNEYS ....... 9

   B.  THE COURT HAS OVERLOOKED RECORD EVIDENCE SHOWING THAT LIEBOWITZ HARBORED A GENUINE BELIEF IN THE VALIDITY OF THE MOTION .................................................... 10

     (1)  *Based on Information Provided by Craig, Liebowitz Sincerely Believed that Sedlik and Craig Had Forged a Confidential Relationship* ......................................................... 11

     (2)  *Based on Information Provided by Craig, as Well as Grounded on Liebowitz's Extensive Experience in Litigating Copyright Actions, Liebowitz Held a Genuine Belief that Craig's Licensing Practices Were Confidential* .................................................. 13

C.   THE DISTRICT COURT'S FACTUAL FINDING THAT NO CONFIDENTIAL INFORMATION WAS EXCHANGED IS NOT CONSISTENT WITH THE TERMS OF THE PROTECTIVE ORDER ............. 15

**CONCLUSION**..................................................................................................................... **16**

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Bernard v. United States,*
    25 F.3d 98, 104 (2d. Cir.1994) ............................................................................. 4

*Eisemann v. Greene,*
    204 F.3d 393, 396–97 (2d Cir. 2000) ................................................................ 7

*Energy Brands Inc. v. Spiritual Brands, Inc.,*
    571 F.Supp.2d 458, 472–73 (S.D.N.Y.2008) ..................................................... 10

*First Interregional Equity Corp. v. Haughton,*
    1994 WL 364038, at *4 (S.D.N.Y. July 13, 1994) .............................................. 3

*Gordon v. Kaleida Health,*
    No. 08-CV-378, 2013 WL 2250506, at *5 (W.D.N.Y. May 21, 2013) ................. 10

*Hudson Motors Partnership v. Crest Leasing Enterprises,*
    845 F.Supp. 969, 978 (E.D.N.Y.1994) ............................................................... 4

*In re Khan*, 488 B.R. 515, 529 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, No.
    13-CV-3079 DLI, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*,
    593 F. App'x 83 (2d Cir. 2015) ........................................................................... 8

*In re Namenda Direct Purchaser Antitrust Litigation*,
    15-cv-7488 (CM), 2017 WL 3085342, * 2 (S.D.N.Y. July 20, 2017) ................... 10

*In re Schmelcher*, No. 11-61607, 2015 WL 639076, at *7 (Bankr. N.D.N.Y. Feb. 13,
    2015), order aff'd, appeal dismissed sub nom. Schmelcher v. Cty. of Oneida, No. 6:15-CV-
    00245 (MAD), 2016 WL 297713 (N.D.N.Y. Jan. 22, 2016) ................................ 5

*In re Sutter*,
    543 F.2d 1030, 1035 (2d Cir. 1976) .................................................................. 9

*International Controls Corp, v. Vesco,*
    556 F.2d 665, 670 (2d Cir. 1977) ...................................................................... 3

*Keller v. Mobil Oil Corp.,*
    55 F.3d 94, 99 (2d Cir.1995) ............................................................................. 4

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar,*
    168 F.3d 347, 350 (9th Cir. 1999) ..................................................................... 3

*Lugo v. Artus*,
   No. 05-cv-1998 (SAS), 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008).............................. 2

*Mahan v. Roc Nation, LLC*,
   No. 14 CIV. 5075 (LGS), 2016 WL 4718018, at *4 (S.D.N.Y. Sept. 9, 2016)........................ 9

*Milltex Indus. Corp. v. Jacquard Lace Co.,*
   55 F.3d 34, 38 (2d Cir. 1995)...........................................................................................7

*Murphy v. Cuomo,*
   913 F. Supp. 671, 683 (N.D.N.Y. 1996)..............................................................................9

*Oliveri v. Thompson,*
   803 F.2d 1265, 1273 (2d Cir. 1986)

*Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) ..................................................... 3

*Pentagen Techs. Int'l Ltd. v. United States,*
   172 F. Supp. 2d 464, 474 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) ................. 4

*Salovaara v. Eckert,*
   222 F.3d 19, 35 (2d Cir. 2000).............................................................................................9

*Sanofi-Synthelabo v. Apotex, Inc.,*
   363 F. Supp. 2d 592, 594 (S.D.N.Y. 2005). ......................................................................2

*Schlaifer Nance & Co. v. Estate of Warhol,*
   194 F.3d 323, 336 (2d Cir. 1999)................................................................................passim

*Shafii v. British Airways, PLC,*
   83 F.3d 566, 571 (2d Cir.1996)..................................................................................passim

*Shrader v. CSX Transp., Inc.,*
   70 F.3d 255, 257 (2d Cir. 1995)..........................................................................................2

*Wood v. Brosse U.S.A., Inc.,*
   149 F.R.D. 44, 48 (S.D.N.Y.1993)......................................................................................3

STATUTES

28 U.S.C. § 1927 ............................................................................................................... 6

RULES

Fed. R. Civ. P. 60(b)(1) .........................................................................................passim
Local Civil Rule 6.3 ...............................................................................................passim

Pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) of the Federal Rules of Civil Procedure, Plaintiff Glen Craig ("Craig"), via counsel Richard Liebowitz and Liebowitz Law Firm, PLLC (collectively, "Liebowitz") respectfully submits this memorandum of law in support of Plaintiff's Motion for Reconsideration and/or Reargument of the District Court's Order, dated March 29, 2019, which granted Defendants' motion for sanctions against Liebowitz [Order and Opinion, Dkt. # 96] or, in the alternative to vacate that portion of the Order relating to sanctions pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure.

## **INTRODUCTION**

Based solely on its assessment of the merits of Craig's disqualification motion (the "Motion"), the Court determined that Liebowitz, acting as a zealous advocate upon Craig's insistence, filed the motion in "bad faith" and for an improper purpose. Neither the Court nor the Defendants have identified what collateral purpose was served by Liebowitz other than the intended purpose of disqualifying an expert who betrayed Craig's confidence and flip-flopped to Defendant's side while this action was pending.

In the context of attorney sanctions, the Second Circuit has held that vindication is a legitimate motive for taking action. The record evidence shows quite clearly that Liebowitz, serving Craig as a zealous advocate, filed the Motion to vindicate the interests of an aggrieved client who was "very shocked" by Sedlik's betrayal. And in doing so, the record shows that Liebowitz harbored a genuine belief in the merits of the Motion.

Moreover, there is simply no evidence that Liebowitz filed the Motion to effectuate delay of the proceeding or to harass Defendants or for any other collateral purpose unrelated to the stated objective of disqualifying a flip-flopping expert witness. To the extent that the Court found that Liebowitz made an error of judgment in assessing whether Craig's licensing history

1

constituted confidential information, the Second Circuit has held that an attorney's errors of judgment, mistakes of law, and/or overzealousness are not grounds to infer bad faith.

In sum, by invoking the extraordinary remedy of sanctioning an attorney for advancing a disqualification motion which fell short of a very high legal standard, the District Court has overlooked both controlling Second Circuit authority and critical facts on the record which, in the furtherance of justice, necessitate reconsideration and/or reargument of the Court's imposition of sanctions against Liebowitz.

## <u>LEGAL STANDARD</u>

A party seeking reconsideration or reargument pursuant to Local Civil Rule 6.3 must demonstrate that the Court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (to prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). In the alternative, the movant must "demonstrate the need to correct a clear error or prevent manifest injustice." *Sanofi-Synthelabo v. Apotex, Inc.,* 363 F. Supp. 2d 592, 594 (S.D.N.Y. 2005).

Rule 60(b)(1) of the Federal Rules of Civil Procedure provides in relevant part that "the court may relieve a party . . . from a[n] . . . order . . . for the following reasons: (1) mistake . . ." Fed. R. Civ. P. 60(b)(1). "Rule 60(b)(1) motions premised upon 'mistake' are intended to provide relief to a party when the judge has made a substantive mistake of law or fact in the final judgment or order." *Lugo v. Artus*, No. 05-cv-1998 (SAS), 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008) (citation and internal quotations omitted). "Thus, Rule 60(b)(1) motions can be used by a trial court to correct judicial errors." *Id., citing International Controls Corp, v. Vesco,* 556 F.2d 665, 670 (2d

Cir. 1977) (stating that district court's mistake of "substantive legal nature" may be corrected under Rule 60(b)(1)).  "Ordinarily, a movant alleging a 'mistake' under Rule 60(b)(1) must show that the district court committed a specific error." *Id.* (citation and internal quotations omitted); *see also Kingvision Pay-Per-View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir. 1999) ("[T]he words 'mistake' and 'inadvertence' . . . may include mistake and inadvertence by the judge.")

As more fully detailed below, Plaintiffs' motion for reconsideration or reargument pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) satisfies the applicable standards.

## ARGUMENT

### POINT I:  THE COURT HAS OVERLOOKED CONTROLLING AUTHORITY WHICH HOLDS THAT VINDICATION IS A PROPER MOTIVE FOR TAKING ACTION ON BEHALF OF AN AGGRIEVED CLIENT

### A.  THE SECOND CIRCUIT HAS CONSISTENTLY RULED THAT SANCTIONS MAY ONLY BE IMPOSED WHERE THERE IS A "CLEAR SHOWING" THAT ATTORNEY'S ACTION WAS MOTIVATED BY AN IMPROPER PURPOSE, SUCH AS DELAY OR HARASSMENT

Section 1927 authorizes the imposition of sanctions when "there is a clear showing of bad faith on the part of an attorney." *Shafii v. British Airways, PLC,* 83 F.3d 566, 571 (2d Cir.1996); *accord Oliveri,* 803 F.2d at 1273; *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000). Indeed, "[b]ad faith is the key element in the imposition of § 1927 sanctions...." *Wood v. Brosse U.S.A., Inc.,* 149 F.R.D. 44, 48 (S.D.N.Y.1993), which 'is highly unusual and requires a clear showing of bad faith," *First Interregional Equity Corp. v. Haughton,* 1994 WL 364038, at *4 (S.D.N.Y. July 13, 1994).

As with sanctions imposed pursuant to a court's inherent power, in the section 1927 context, bad faith may be inferred "only if actions are so completely without merit as to require the conclusion that they <u>must have been undertaken for some improper purpose such as</u>

delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Shafii,* 83 F.3d at 571 (internal quotation marks omitted)).

In addition to delay, examples of improper motivation include harassment, i.e., " a pattern of litigation designed to evade previous rulings," *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 474 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) or the "seeking [of] some collateral advantage or corresponding detriment to the [adverse party] which is outside the legitimate ends of process," *Bernard v. United States,* 25 F.3d 98, 104 (2d. Cir.1994).

Other types of acts that would justify sanctions under the "bad faith" test of section 1927 include "resubmitting a motion that had previously been denied;" "bringing a motion based on 'facts' the opposite of which were previously found by the court;" "making several insupportable bias recusal motions and repeated motions to reargue;" "continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased;" and "waiting until the eve of trial before making a jury demand." *Hudson Motors Partnership v. Crest Leasing Enterprises,* 845 F.Supp. 969, 978 (E.D.N.Y.1994); *Keller v. Mobil Oil Corp.,* 55 F.3d 94, 99 (2d Cir.1995).

Thus, under controlling Second Circuit law, bad faith can only be inferred to establish the requisite second factor (i.e., improper purpose) where Defendants have made a clear showing that the purpose of the motion is *collateral* to the prayer for relief sought or there is some kind of repeated and continuous failure on the part of an attorney to follow the Court's orders. But there is not a scintilla of evidence showing that Liebowitz's actions were motivated by a collateral purpose such as delay or harassment. Nor is there any evidence that Liebowitz has repeatedly failed to abide by this Court's orders (or failed even once).

First, there is absolutely no record evidence showing that Liebowitz filed the Motion to delay adjudication of the proceeding.  Indeed, the proceeding was not delayed at all.  Defendant moved forward with the summary judgment briefing schedule as scheduled.  Moreover, given that Liebowitz works on contingency, there would be no plausible motivation for delaying *any* proceeding.  The faster the case gets resolved, the better.

Second, there is no evidence that Liebowitz filed the Motion to harass Defendants.  The issue of disqualification was a matter of first impression before the Court.  There are no previous rulings by the Court in this action which Liebowitz sought to evade by filing the Motion.

Finally, to the extent Defendant argues that Liebowitz filed the Motion to increase Craig's leverage on settlement discussions, there is no evidence to support such argument.  Indeed, every pleading, every motion, every letter, conference, phone call or e-mail that takes place during the course of litigation could be readily construed as an effort to increase a party's leverage in settlement.  There is no evidence that the motion to disqualify, as compared to any other action taken by Liebowitz during the course of this proceeding, was calculated to gain some kind of unfair advantage in settlement negotiations.

**B.**      **THE COURT HAS OVERLOOKED EVIDENCE SHOWING THAT THE MOTION WAS, IN FACT, PROPERLY MOTIVATED BY THE NEED TO VINDICATE CRAIG'S INTEREST**

Second Circuit also holds that "[v]indication . . . [is a] legitimate motive[] for bringing a legal action." *Schlaifer Nance*, 194 F.3d at 339; see also *In re Schmelcher*, No. 11-61607, 2015 WL 639076, at *7 (Bankr. N.D.N.Y. Feb. 13, 2015), order aff'd, appeal dismissed sub nom. Schmelcher v. Cty. of Oneida, No. 6:15-CV-00245 (MAD), 2016 WL 297713 (N.D.N.Y. Jan. 22, 2016) ("Were the Court to hold otherwise, 28 U.S.C. § 1927 would necessarily be implicated each and every time Attorney Selbach filed a motion seeking to redress a discharge injunction violation and, assuming a lack of colorability, the movant's burden would be much

less onerous. The Court therefore has no basis to find that Attorney Selbach violated 28 U.S.C. § 1927.")

Here, the record evidence shows quite transparently that Liebowitz's action was motivated by his duty to provide zealous advocacy and vindicate Craig's aggrieved interests. Once again, there is no dispute that Sedlik hastily flip-flopped his party allegiance in less than six months during the discovery process. Any reasonable person in Craig's position would be "shocked" and infuriated and demand vindication.

Indeed, Craig declared that "I was upset and felt betrayed by a person I trusted. I told my attorney that this is wrong and that I wanted to challenge this expert witness" [Dkt. # 58, Craig Decl., ¶ 21] Craig also testified in open court that he was "shocked afterwards, six months later, that all of a sudden there's an expert witness report [by Sedlik] that was generated by UMG." [Dkt. # 73-1, 12:17-19]. Craig also felt aggrieved because Sedlik had taken the same damages methodology suggested by Sedlik to Craig and then used it against Craig by cherry-picking low quality images as benchmark licenses: "And I was very shocked to see a completely different photograph, not even my photograph, being used, which was a common photograph, as a bad example as pricing, really low pricing, for an image that meant nothing." [Dkt. # 73-1, Hearing Tr. 15:6-9]. Indeed, the Court recognized during the hearing that a person in Craig's position would feel aggrieved by Sedlik's actions. [*Id.,* Hearing Tr. 46:2-21 ("whether or not Mr. Craig expected it to be confidential, and he may well have and people do, . . .") (underlined added)]

Given the record evidence showing that Craig was aggrieved by a flip-flopping expert witness who held himself out as an ally and colleague to Craig only then to accept a check from Defendants months later, Liebowitz should not be saddled with a crushing financial burden for serving as a zealous advocate to vindicate his client's interests.

**C.    THE DISTRICT COURT HAS NOT IDENTIFIED "WITH A HIGH DEGREE OF SPECIFICITY" ANY PURPOSE WHICH MOTIVATED LIEBOWITZ'S ACTION OTHER THAN TO DISQUALIFY AN EXPERT WITNESS WHO BETRAYED A "VERY SHOCKED" CLIENT**

As a matter of controlling Second Circuit law, "the court's factual findings of bad faith must be characterized by a high degree of specificity." *Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 38 (2d Cir. 1995) (quoting *Oliveri,* 803 F.2d at 1272.

In light of that requirement, the Second Circuit has reversed a district court's imposition of sanctions on an attorney where a conclusory determination of bad faith rested almost entirely on a motion's lack of merit.  In *Eisemann v. Greene*, 204 F.3d 393, 396–97 (2d Cir. 2000), the Second Circuit stated:

> [T]he District Court did not make sufficiently specific factual findings to support its conclusion that Eisemann's motion for reconsideration, or any other motion filed in the course of this litigation, was "entirely without color and ... taken for reasons of harassment or delay or for other improper purposes." *Dow Chem. Pacific Ltd.,* 782 F.2d at 344.  Instead, the Court's conclusory determination that Eisemann's motion was filed in bad faith rested almost entirely on its lack of merit. It is sometimes possible to infer bad faith from the meritlessness of a motion. *See Schlaifer Nance,* 194 F.3d at 338. But absent greater specificity from the District Court, the failure to meet the standards of Local Rule 6.3—a proper basis for denial of her motion for reconsideration—is not, without more, a proper basis for the imposition of sanctions on Eisemann's counsel.

> *Eisemann,* 204 F.3d at 396–97.

*Eisenman* stands for the proposition that specificity in the Court's factual findings is required to impose sanctions where the bad faith determination rests solely on the merits of the motion.  Consistent with this requirement, the district court in *Schlaifer* presented <u>seven</u> factors on which it based its finding of the appellants' bad faith.  <u>*Schlaifer*</u>, 194 F.3d at 338.  But even those factors were not enough to create an inference of bad faith. *Id.*

In this case, the District Court has identified only one factor.  The District Court summarily concluded that Liebowitz had "full knowledge that Craig had not disclosed any confidential information."  [Opinion and Order, p. 21]  The District Court's finding is based on a

general reference to Craig's "moving papers" which the Court found contained "the omission of details of the alleged conversations."  [Opinion and Order, p. 21]  The Court has not specified what details were omitted from the moving papers, nor has the Court cited to any record evidence which clearly shows "Liebowitz's full knowledge that Craig had not disclosed any confidential information."  Indeed, as shown in Point II, *infra*, the record is replete with evidence demonstrating that Liebowitz harbored a good faith belief that Craig had disclosed his confidential licensing practices to Sedlik.

### D.  DEFENDANTS HAVE FAILED TO PRESENT ANY EVIDENCE THAT LIEBOWITZ'S ZEALOUS ADVOCACY EXCEEDED THE BOUNDARIES OF ANY LAW OR ETHICAL RULES

"In our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules."  *Schlaifer* 194 F.3d at 341.

Finally, there is simply no evidence that Liebowitz violated any Court rules, breached any ethical standards, or proffered any misrepresentations to the Court in connection with the Motion.   As the Court recognized at the hearing, it is very high bar to preclude an expert witness.  [Dkt. #73-1, Hearing Tr. , 45:21-23 ("[the] test that this circuit and this district has typically applied for disqualification, which we all agree is a high bar).[1]  Liebowitz fell short of that bar; but that doesn't mean he acted in bad faith or should bear the cost of opposing counsel's hyper-inflated fees.

---

[1] "'Unreasonably and vexatiously' sets a high bar for relief, and has been interpreted to mean that the offending conduct must have been *both* unreasonable *and* for an improper purpose." *In re Khan*, 488 B.R. 515, 529 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, No. 13-CV-3079 DLI, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015) (citing *Ball v. A.O. Smith Corp.,* 451 F.3d 66, 70 (2d Cir.2006). "This, in turn, implicates both objective and subjective considerations."  *Id.*

**POINT II:**    **THE COURT HAS OVERLOOKED CONTROLLING AUTHORITY WHICH HOLDS THAT AN ERROR OF JUDGMENT ON THE PART OF AN ATTORNEY IS NOT SUFFICIENT BASIS TO INFER BAD FAITH**

**A.**    **UNDER SECTION 1927, ERRORS OF JUDGMENT, MISTAKES, OVERZEALOUSNESS, OR MISGUIDED ARGUMENTS ARE NOT GROUNDS FOR SANCTIONS AGAINST ATTORNEYS**

The Second Circuit's holding in *Schlaifer,* 194 F.3d at 340 is also controlling because it establishes that sanctions against an attorney may not be sustained under § 1927 (or the Court's inherent power) where the attorney's action was nothing more than "the result of poor legal judgment." *Id.* (reversing sanctions imposed under § 1927 because "poor legal judgment" is not sanctionable where "there is no evidence to suggest that [Appellants] had utterly no basis for their subjective belief in the merits of their case").

Indeed, *Schlaifer*'s holding is consistent with longstanding Second Circuit authority dating back more than forty years.  *See In re Sutter*, 543 F.2d 1030, 1035 (2d Cir. 1976) ("we agree that attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment") (internal quotations omitted); *accord Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) (reversing sanctions upon finding that an attorney's meritless actions showed "poor legal judgment" but did not warrant sanctions under § 1927).[2]

Here, as shown in Point I, *supra*, neither Defendants nor the Court have cited to any record evidence showing that Liebowitz filed the disqualification motion for an improper purpose such as delay or harassment.  Instead, the Court rejected Liebowitz's legal argument on the merits of whether financial-information or damages methodology could be deemed

---

[2] *See also Mahan v. Roc Nation, LLC*, No. 14 CIV. 5075 (LGS), 2016 WL 4718018, at *4 (S.D.N.Y. Sept. 9, 2016) (finding that attorney's conduct on appeal, "albeit misguided, was not in bad faith" because attorney "articulated a legal basis for his appeal that, while meritless, does not evidence bad faith."); *Murphy v. Cuomo*, 913 F. Supp. 671, 683 (N.D.N.Y. 1996) ("[t]he Court tends to believe that plaintiff's counsel was merely deluded by naivete, overzealousness, disorganization, imprudence, or a combination of such factors, rather than true bad faith.").

confidential. But the Court's rejection of Liebowitz's legal argument, standing alone, is not a sufficient basis to impose sanctions under section 1927 or the Court's inherent power. *See*, e.g., *Schlaifer, In re Sutter, Salovaara.* If it were, then every attorney would risk financial sanctions for advancing an unsuccessful legal argument.

**B.    THE COURT HAS OVERLOOKED RECORD EVIDENCE SHOWING THAT LIEBOWITZ HARBORED A GENUINE BELIEF IN THE VALIDITY OF THE MOTION**

"The party seeking disqualification must make two showings." *In re Namenda Direct Purchaser Antitrust Litigation*, 15-cv-7488 (CM), 2017 WL 3085342, * 2 (S.D.N.Y. July 20, 2017). "First, it must establish that it is objectively reasonable to believe that a confidential relationship existed." *Id.* (citing *Gordon v. Kaleida Health*, No. 08-CV-378, 2013 WL 2250506, at *5 (W.D.N.Y. May 21, 2013). "Second, the moving party must demonstrate that its 'confidential information was actually disclosed to the expert or consultant.'" *In re Namenda*, 2017 WL 3085342 at *2 (quoting *Gordon*, 2013 WL 2250506, at *5 (internal quotations omitted).

Here, the disqualification motion was unquestionably colorable. A claim is colorable where it "has some legal and factual support, <u>considered in light of the reasonable beliefs of the individual making the claim</u>." *Energy Brands Inc. v. Spiritual Brands, Inc.,* 571 F.Supp.2d 458, 472–73 (S.D.N.Y.2008)) (underline added). The inquiry is "whether a reasonable attorney . . . could have concluded that facts supporting the claim *might be established,* not whether such facts actually *had been established." Schlaifer,* 194 F.3d at 337. (internal quotation omitted).

As demonstrated below, the Court has overlooked evidence showing that Liebowitz harbored a subjective good faith belief in both elements of the disqualification motion. *See Schlaifer*, 194 F.3d at 341 ("Given these bases for the appellants' subjective good faith in SNC's action, and in the absence of any other evidence indicating an absence of a genuine belief in the

validity of the action, we conclude that the record cannot support an inference of bad faith on the part of the appellants.")

**(1)      Based on Information Provided by Craig, Liebowitz Sincerely Believed that Sedlik and Craig Had Forged a Confidential Relationship**

As a preliminary matter, the Court has overlooked that Liebowitz did <u>not</u> directly participate in the majority of conversations between Craig and Sedlik and therefore did not possess first-hand knowledge of such conversations.  Craig declared that "I had two extensive telephone conversations with Mr. Sedlik, *without my counsel's knowledge."* [Craig Declr., Dkt. #58, ¶ 5 (emphasis added)].  Craig also declared that "during the two times I spoke to Mr. Sedlik without my counsel, we discussed about all aspects of the case."  [*Id.* at ¶ 6]  Indeed, defense counsel conceded at the hearing that Liebowitz had no direct knowledge of the conversations had between Craig and Sedlik.  [Dkt. # 73-1, Hearing Tr., p. 4:5-7 ("[Liebowitz" clearly has no knowledge of those conversations between his client and Mr. Sedlik")].

Liebowitz's good faith belief in the merits of the Motion's first element therefore depended on information provided by Craig, who unquestionably harbored a sincere belief that his conversations with Sedlik were confidential.  At the hearing, Liebowitz asked Craig as follows:

> Q: (Liebowitz): Did you have reason to suspect that this information you shared with Mr. Sedlik would be kept confidential?
>
> A: (Craig): Yes, because as I was recommended to him by Tom Kennedy, as supposedly a friend of the photographic community and a fellow photographer, I thought that it would be an opportunity and a chance, you know, to bring him on board for this case.
>
> [Dkt. # 73-1, Hearing Tr., p. 12:10-19] . . .
>
> Q: (Liebowitz): All this was under the expectation that this was confidential; that he was on your team?
>
> A: (Craig) Yes.

[Dkt. # 73-1, Hearing Tr., p. 16:7-8]

Further, Liebowitz's declaration in support of the Motion states that "Plaintiff was referred to Mr. Sedlik by a professional acquaintance at American Society of Media Photographers." [Dkt. # 57, ¶ 4]. This fact is significant because professional photographers are a close-knit group of professionals. Liebowitz also stated that "Craig told me that he spoke at length to Mr. Sedlik about a range of issues pertaining to the case. I was not sure how many times they spoke but understood that the conversations were lengthy and extensive. [Dkt. # 57, ¶ 5] When Liebowitz eventually spoke to Sedlik "it became apparent that Craig already discussed extensively not only the facts surrounding the case but legal strategy, potential issues, strengths and weaknesses of this case. Mr. Sedlik had been extensively informed of confidential information." [Dkt. # 57, ¶ 6].

When Defendants disclosed Sedlik's expert report in October 2017, less than six months after consulting with Craig, Liebowitz took steps to conduct due diligence. "I subsequently tried to reconstruct the substance of our telephone conferences. I also asked Craig about his recollections of the same. I specifically wanted to know what confidential information Craig revealed to Mr. Sedlik in the telephone conferences that I was not a party to." [Dkt. # 57, ¶ 16].

Most importantly, Craig told Liebowitz that Craig believed he had forged a confidential relationship with Sedlik. Liebowitz declared that "Craig specifically recalls that Mr. Sedlik implied these conversations were in confidence. He understandably asked that Craig not forward the email or the list of filed cases to anyone. Craig told me that he understood that their relationship was confidential in nature and that Craig expected whatever information was divulged by him to stay confidential." [Dkt. # 57, ¶ 19] (emphasis added). Craig, on his part,

declared that "Mr. Sedlik held himself out as a member of the team." [Dkt. # 58, Craig Declr. ¶ 9]  Sedlik even offered to provide Craig with legal services.  [*Id.* at ¶ 10]

Defendants, on their part, have done nothing to rebut Liebowitz's statements and there would no reason for the Court, had the Court considered this record evidence in the Opinion and Order, to doubt Liebowitz's sincere belief in the veracity of his own client's statements.  In short, the record evidence demonstrates that Liebowitz held a good faith belief with respect to the first element of the disqualification motion.

**(2)    Based on Information Provided by Craig, as Well as Grounded on Liebowitz's Extensive Experience in Litigating Copyright Actions, Liebowitz Held a Genuine Belief that Craig's Licensing Practices Were Confidential**

As a general matter, Liebowitz maintains that a photographer's licensing practices constitute proprietary and confidential information.  Liebowitz's genuine belief is supported by Liebowitz's extensive (indeed, unparalleled) experience in advancing infringement claims on behalf of photographers.  As noted, documents related to a photographers' licensing history, or portions of deposition transcripts which reference a photographer's licensing practices, are routinely marked as confidential in proceedings brought by Liebowitz.

From the moment that Liebowitz requested the Court's intervention to disqualify Sedlik, Liebowitz has maintained that Craig "actually disclosed confidential information to Sedlik, including details about Plaintiff's licensing history . . ." [Plaintiff's Pre-Motion Conference Letter, Dkt. #50].  This representation to the Court was made by Liebowitz upon the good faith belief, bolstered by Liebowitz's extensive experience in litigating copyright actions, that information concerning Plaintiff's licensing practices was confidential.

Further, there is no factual dispute that Craig disclosed information concerning his licensing practices to Sedlik.  [Opinion and Order, p. 20; Dkt. # 73-1, Hearing Tr. 6:13-15

(Craig: "I explained [to Sedlik] I am not a stock photographer. I don't license photographs, per se."); Hearing Tr. 12:3-4 (during phone call with Sedlik, Craig testified that he disclosed "licensing history"); Craig Decl., Dkt. # 58, ¶ 7 ("Sedlik asked probing questions about my employment, commission, licensing of the images . . .")

Here, the Court found that Craig's licensing practices cannot be categorized as confidential. [Opinion and Order, p. 20] But the question as to whether a professional photographer's licensing fee history can be deemed confidential is a *legal* question. There is no factual dispute that Craig and Sedlik discussed Craig's licensing history. [*Id.* (finding that "Craig told Sedlik . . . his licensing history.")] Liebowitz therefore had colorable grounds to argue that Craig's licensing practices constitute confidential information.

To the extent the Court disagrees with this argument on the facts presented, or even finds the argument without merit, Liebowitz could only be faulted – at most – with exercising "poor legal judgment" as to whether Craig's financial licensing practices could be deemed confidential. *See, e.g., Schlaifer Nance,* 194 F.3d at 340, *Salovaara v. Eckert*, 222 F.3d at 35; *Mahan*, 2016 WL 4718018, at *4.

Given that no factual dispute exists as to whether Craig shared his proprietary licensing practices with Sedlik [Opinion and Order, p. 20], Liebowitz can hardly be faulted for advancing a motion to disqualify Sedlik given that: (a) Craig harbored a good faith belief that his communications with Sedlik would be kept in confidence; (b) Sedlik hastily flip-flopped his allegiance while the parties were in the midst of discovery; and (c) Craig told Sedlik his licensing history (a proprietary business practice which was not a matter of public record) and discussed a methodology of calculating damages which was ultimately used against Craig in UMG's expert

14

report.  Based on the facts presented, any layperson in Craig's position would have insisted on a zealous advocate to vindicate his interest.

**C.    THE DISTRICT COURT'S FACTUAL FINDING THAT NO CONFIDENTIAL INFORMATION WAS EXCHANGED IS <u>NOT</u> CONSISTENT WITH THE TERMS OF THE PROTECTIVE ORDER**

The Court summarily concluded that Craig's "licensing history" could not be categorized as "confidential." [Opinion and Order, p. 20]   But in copyright infringement actions involving photographs, information concerning the photographer's licensing practices is typically marked as confidential in the course of document production or at deposition.

Moreover, the Court has made findings of fact with respect to the definition of "confidential information" without citing or analyzing the Stipulated Protective Order entered in this action which contains an unambiguous definition of "Confidential Information".   Craig's licensing fee history (or absence thereof) plausibly meets the Protective Order's broad definition of "proprietary business information, competitively sensitive information, nonpublic financial information" [Dkt. #23, ¶ 4]   As such, Liebowitz's argument that Craig's licensing history and proprietary business practices are confidential is plainly meritorious.

The District Court has not explained with a "high degree of specificity" why a photographer's licensing practices could not be categorized as confidential.  Even if the Court's finding concerning non-confidentiality was justified by the testimony adduced at the evidentiary hearing, there is no dispute that Craig communicated to Sedlik information concerning Craig's licensing practices as a professional photographer.  Had the Court considered that a photographer's licensing practices could be marked as confidential, then it would not have concluded that Liebowitz had "full knowledge that Craig had not disclosed any confidential information."  To the contrary, Liebowitz, which has filed over a thousand infringement actions on behalf of photographers in the last three years, genuinely believed and continues to believe

15

that information concerning a photographers' licensing practices is both proprietary and confidential.

The fact that Craig does not engage in licensing of his photographs was not publicly available information prior to this proceeding. This fact further bolsters Liebowitz's argument that a copyright holder's licensing fee history (or lack thereof) readily falls within the scope of the definition of "proprietary business information," "competitively sensitive information," or "nonpublic financial information" as defined by the Protective Order. But for Craig's communications with Sedlik, Sedlik would have no way of knowing Craig's proprietary business practices for exploiting his work.

## CONCLUSION

Based on the foregoing, Plaintiff and Liebowitz respectfully request that the Court GRANT their motion for reconsideration or vacate the Court's sanctions in their entirety.

RESPECTFULLY SUBMITTED,

**/richardliebowitz/**
Richard Liebowitz, Esq.
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for Plaintiff Glen Craig*