UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GLEN CRAIG,

         Plaintiff,

         -against-

UMG RECORDINGS, INC., KINGSID
VENTURES, LTD., and ESTATE OF RILEY
B. KING,

         Defendants.
------------------------------------------------------------X

No. 16 Civ. 5439 (JPO)

## DECLARATION OF BARRY SLOTNICK

I, BARRY I. SLOTNICK, declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a partner and chair of the Intellectual Property and Entertainment Litigation Practice Group at Loeb & Loeb LLP ("Loeb"), attorneys for UMG Recordings, Inc. ("UMGI"), Kingsid Ventures, Ltd. ("Kingsid") and Estate of Riley B. King ("Estate," and together with UMGI and Kingsid, "Defendants") in this action. I am fully familiar with the matters asserted herein and respectfully submit this declaration in compliance with the Court's March 29, 2019 Order (Dkt. No. 96).

2. I submit this declaration in order to support the reasonableness of the attorneys' fees and non-taxable costs incurred by Defendants in opposing Plaintiff's motion to disqualify Defendants' expert (the "Motion") and attending the evidentiary hearing, and to provide the Court with documentation for those attorneys' fees and costs.

3. Defendants seek $92,415.71 in attorneys' fees and $67,295.05 in non-taxable costs, incurred in connection with opposing Plaintiff's Motion and attending the evidentiary

hearing.  As discussed below, these fees and costs were reasonably and necessarily incurred in opposing the Motion.  They were incurred solely as result of Plaintiff's attorney's misrepresentations to the Court.  Defendants were forced to incur the attorneys' fees associated with researching and drafting an opposition to the Motion and preparing for an evidentiary hearing that Plaintiff's counsel requested without any basis.  Further, Defendants were forced to incur the cost of Mr. Sedlik's work done in connection with the Motion.  Mr. Sedlik spent much time researching his own records to refute, in detail, with support, each of the conclusory allegations and misrepresentations made in submissions from Plaintiff's attorney.  Moreover, Mr. Sedlik had to fly to New York City to prepare for and attend the evidentiary hearing.

I. **The Hourly Rates of Loeb Attorneys Are Commensurate With Experienced Intellectual Property Attorneys In The Relevant Jurisdiction**

4. Loeb is a full-service law firm with domestic offices in Los Angeles, New York, Chicago, San Francisco, Nashville, and Washington, D.C.  Loeb is widely known for its intellectual property litigation practice.

5. Loeb employs approximately 350 attorneys, 63 of whom specialize in Intellectual Property and related industries.  In 2018, The Legal 500 ranked Loeb among the top law firms in Intellectual Property – Copyright (Ex. 1), and noted that Loeb is "recommended for copyright advisory work in the music, motion picture and television industries, and also frequently handles prominent contentious matters." (Ex. 4)  In 2018, Chambers U.S.A. ranked Loeb among the top Media and Entertainment law firms, and recognized Loeb as a "[h]ighly respected entertainment law firm, fielding a deep bench of specialist attorneys and offering considerable nationwide capabilities" and highlighted Loeb's New York City office as "[p]articularly strong in intellectual property and contractual disputes about the ownership and exploitation of music, film and television content." (Ex. 2)  Loeb was also named to *The National Law Journal's* inaugural

"Intellectual Property Hot List", which recognized firms that excel in providing patent, copyright and trademark legal services. (Ex. 3)

6. In addition to me, the litigation attorney assigned to work on this case was senior associate C. Linna Chen.

7. The other Loeb professional who assisted with this matter was paralegal Antoinette Pepper.

8. Based on my experience and personal knowledge, the hourly rates charged by the Loeb partner, associate, and paralegal in this case, which are set forth below, are commensurate with those charged by other New York City law firms of comparable size, reputation, and expertise to defend similar cases.

9. The defense of this copyright litigation required expertise in copyright law. I therefore respectfully submit that Loeb's hourly rates are reasonable given Loeb's expertise in copyright law.

### A. Barry I. Slotnick

10. I am a partner and chair of the Intellectual Property and Entertainment Litigation Practice Group in Loeb's New York City office. I am a graduate of the Syracuse University College of Law, where I graduated with Honors, and have been licensed to practice law in the State of New York since 1972. I have been nationally recognized as a copyright and trademark litigator who has represented clients in the music and entertainment industries in courts throughout the United States. I frequently lecture on the topics of entertainment and copyright law. From 2004 to 2006, I served as President of the Copyright Society of the U.S.A. In 2018, *Chambers U.S.A.* recognized me as a Notable Practitioner in the practice of Media & Entertainment: Litigation. (Ex. 2) In 2015, *The Legal 500* recognized me as a Leading Lawyer in the practice of Intellectual Property law and I was also selected for inclusion in the inaugural

Legal 500 Hall of Fame list that highlights partners that have been recommended as a 'leading lawyer' for the last 6 years consecutively. (Ex. 4)  I have also been recognized in *Super Lawyers* for my work in Intellectual Property litigation and entertainment law.  A copy of my bio is attached as Exhibit 5.

11. I served as lead counsel in this action.  My time on opposing the Motion was primarily spent formulating case strategy, conferring with Mr. Sedlik, preparing Mr. Sedlik for the evidentiary hearing, preparing to cross-examine Plaintiff at the evidentiary hearing and to direct Mr. Sedlik's examination, reviewing briefs and other written court submissions drafted by Ms. Chen in connection with the Motion, and generally preparing for the evidentiary hearing.

12. From October 1, 2017 to January 31, 2018 and April 1, 2018 to May 31, 2018, I billed 43.6 hours on this matter, for total fees of $36,141.50.  My average effective hourly rate during the relevant period was $828.00.[1]

13. Attached hereto as Exhibit 6 is a 2014 Billing Survey published by The National Law Journal ("NLJ Survey") with relevant portions highlighted.  The NLJ Survey indicates that the hourly rates for highly experienced partners at law firms of comparable size in New York City range from $860.00 to $1,250.00, of which the average hourly rate of $828.00 is below.  (Ex. 6)

    B.    C. Linna Chen

14. Ms. Chen is a senior litigation associate with experience litigating copyright infringement in this and other districts.  She is a 2010 graduate of Columbia Law School, where she was a Harlan Fiske Stone scholar and an editor of the *Columbia Journal of Law and the Arts*.

---

[1] Average effective hourly rates for each professional were calculated by dividing the amount billed by that professional, subtracting from that amount any discounts extended to Defendants, and dividing the result by the total hours worked.

She has been licensed to practice law in the State of New York since 2011. Ms. Chen has experience handling a broad array of complex litigation matters, specifically concentrating on copyright and other intellectual property matters, and media and entertainment. Ms. Chen was named a New York Metro Rising Star in Intellectual Property Litigation by SuperLawyers from 2014 through 2018. A copy of Ms. Chen's bio is attached as Exhibit 7.

15. Ms. Chen's time on this matter was primarily spent researching and preparing the motion papers and other written submissions related to opposing the Motion, including a review of additional documents provided by Mr. Sedlik in opposing the Motion; assisting in the formulation of case strategy; interfacing directly with client representatives and Mr. Sedlik; assisting in the preparing of Mr. Sedlik for the evidentiary hearing; and assisting in preparing for the cross-examination of Plaintiff at the evidentiary hearing.

16. From October 1, 2017 to January 31, 2018 and April 1, 2018 to May 31, 2018, Ms. Chen billed 82.4 hours on this matter, for total fees of $50,952.38. Ms. Chen's average effective hourly rate during the relevant period was $618.00.

17. The NLJ Survey indicates that the average hourly rates for senior associates at law firms of comparable size in New York City range from $620 to $815, of which Ms. Chen's average effective hourly rate of $618.00 is below. (Ex. 6)

    C.    **Other Loeb Professional**

18. **Antoinette Pepper**, who served as the day-to-day paralegal assigned to this matter, has over 30 years of experience as a litigation paralegal. Ms. Pepper's time on this matter was primarily spent cite-checking and Shephardizing various written submissions by Defendants and assembling, organizing, and maintaining case files and discovery materials in preparation for the evidentiary hearing. Ms. Pepper's average effective hourly rate during the

relevant period was $361.00. From October 1, 2017 to January 31, 2018 and April 1, 2018 to May 31, 2018, Ms. Pepper billed 19.9 hours on this case, for total fees of $7,185.06.

19. Based on my forty-five years of experience as a litigator and as a partner and practice chair in Loeb's New York City offices, it is my belief that the average effective hourly rate for Ms. Pepper is commensurate with the hourly paralegal rates charged by other New York City law firms of similar size, and is reasonable given her years of experience.

## II. The Number of Hours Worked by Loeb Professionals Was Reasonable Given the Length and Complexity of the Motion

20. As part of Loeb's regular billing practices, each Loeb professional who performed services for Defendants in connection with this matter prepared a detailed time record of the time expended and services rendered on a daily basis. These records were then entered into a computer database maintained and supported by Loeb's client accounting and billing department in the regular and ordinary course of business.

21. Each month, a preliminary billing report was generated and reviewed by me as the partner responsible for overseeing Loeb's engagement by Defendants, to ensure that only reasonable and necessary time entries were included in the monthly invoices. Discounts were applied as appropriate.

22. The following chart accurately summarizes all time billed by Loeb professionals and charged to Defendants in connection with this action from October 1, 2017 to January 31, 2018 and April 1, 2018 to May 31, 2018.

| Timekeeper | Position | Total Hours | Average Effective Hourly Rate | Total Fees from October 1, 2017 – January 31, 2017 and April 1, 2018 – May 31, 2018 |
|---|---|---|---|---|
| Barry Slotnick | Partner | 43.6 | $828.00 | $36,141.50 |
| C. Linna Chen | Senior Associate | 82.4 | $618.00 | $50,952.38 |
| Antoinette Pepper | Paralegal | 19.9 | $361.00 | $7,185.06 |
| | | | **Sub-total** | $94,278.94 |
| | | | **Courtesy discount** | ($1,863.23) |
| | | | **Total fees billed** | **$92,415.71** |

23. Attached as Exhibit 8 ("Time Detail") hereto is a report containing billing entries made by the Loeb attorneys and paralegal identified above. Certain time entries on this billing report have been redacted to preserve attorney-client privilege or attorney work-product confidentiality.

24. I have reviewed the attached Time Detail, and based on my forty-five years of experience as a litigator and my knowledge of the facts of this case, the entries reflect time reasonably and necessarily expended in the defense of this action.

**III.   Defendants' Non-Taxable Costs Are Reasonable And Were Necessary To Its Defense of the Action**

25. As part of their defense to this action, Defendants incurred certain non-taxable costs, which are summarized in the following chart:

| Non-Taxable Costs | Total Non-Taxable Costs from October 1, 2017 – January 31, 2017 and April 1, 2018 – May 31, 2018 |
|---|---|
| Photocopy | $371.10 |
| Express Mail | $17.10 |
| Expert Fees & Costs | $66,906.85 |
| Total: | $67,295.05 |

26.  The invoices and other supporting documentation for these costs are attached hereto as Exhibit 9.  (Material relating to other cases has been redacted from this documentation.)  I have reviewed all of these invoices and documentation and, based on my forty-five years of experience as a litigator and my knowledge of the facts of this case, all of these costs were reasonably necessary to Defendants' opposition to the Motion.

## IV.  The Total Amount of Fees and Costs Is Reasonable

27.  As detailed above, Defendants seeks to recover approximately $92,415.71 in attorneys' fees and $67,295.05 in non-taxable costs incurred from April 13, 2017 to March 26, 2019, for a total of $159,710.76.  This total cost of defense is more than reasonable given the nature of the litigation and Plaintiff's counsel's conduct during it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of April, 2019.

                                                    */s/ Barry I. Slotnick*
                                                   BARRY I. SLOTNICK

17589402.2
210088-10006