UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLEN CRAIG,
                        Plaintiff,

-v-

UMG RECORDINGS, INC.,
                        Defendant.

16-CV-5439 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Glen Craig moves for reconsideration of this Court's Opinion and Order dated March 29, 2019, which granted Defendant's motion for sanctions against Plaintiff's counsel, Richard Liebowitz and his law firm, for the bad-faith filing of a motion to disqualify one of Defendant's expert witnesses.[1] In the alternative, Plaintiff moves for the Court to award sanctions in an amount less than the total $159,710.76 in attorney's fees and costs that Defendant has sought.

For the reasons that follow, Plaintiff's motion for reconsideration is denied. The Court grants an award that reflects certain reductions to the fees and costs sought by Defendant.

**I.    Legal Standard**

"A motion for reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quoting *In re Initial Pub. Offering*

---

[1] Familiarity with the Court's earlier opinion is assumed. *See Craig v. UMG Recordings, Inc.*, No. 16 Civ. 5439, 2019 WL 1432929 (S.D.N.Y. Mar. 29, 2019).

In addition, because the Court dismissed Defendants Kingsid Ventures, Ltd. and Estate of Riley B. King in its earlier opinion and order, only one Defendant—UMG Recordings, Inc.— remains in this action. *Id.* at *10.

1

*Sec. Litig.*, 399 F. Supp. 2d 298, 300 (S.D.N.Y. 2005)). "The standard for granting . . . a motion [for reconsideration] is strict." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.*

## II. Discussion

### A. Motion for Reconsideration

Plaintiff asks the Court to reconsider its prior ruling on two principal grounds: (1) that Liebowitz had legitimate reasons to file the motion to disqualify because he was acting to vindicate the interests of his client (Dkt. No. 99 at 3–8); and (2) that Liebowitz held a genuine belief in the merits of the motion to disqualify and so did not act in bad faith (Dkt. No. 99 at 9–16).

Both of these arguments were presented to and rejected by the Court in its earlier ruling. Plaintiff offers no new facts or controlling precedent that compels this Court to reconsider its prior holding, but instead attempts to strengthen the arguments the Court has already rejected. Because it is well settled that "motions for reconsideration are not meant to afford a mere second bite at the proverbial apple," Plaintiff's motion fails. *Menlo v. Friends of Tzeirei Chabad in Isr., Inc.*, No. 11 Civ. 1978, 2013 WL 1387057, at *1 (S.D.N.Y. Apr. 5, 2013).

In any event, Plaintiff's arguments do not succeed on the merits.

#### 1. Inference of Bad Faith

Plaintiff first argues that this Court failed to acknowledge that Liebowitz filed the motion to disqualify for legitimate purposes and so could not have acted out of bad faith. (Dkt. No. 99 at 3–8.) Specifically, Plaintiff raises the following points: (1) bad faith may be inferred only where there is a clear showing of improper purpose (Dkt. No. 99 at 3–4); (2) vindication of a client's

2

interests is a proper purpose (Dkt. No. 99 at 5–6); (3) the Court has not identified any improper purpose with a "high degree of specificity" (Dkt. No. 99 at 7–8); and (4) the record lacks evidence that Liebowitz violated any legal or ethical rules (Dkt. No. 99 at 8). The Court addresses each step of Liebowitz's argument in turn.

First, the Second Circuit does not require the lower courts to specifically identify an improper purpose in order to infer the bad faith required for the imposition of sanctions under 28 U.S.C. § 1927 ("section 1927"). Rather, the proper standard, as articulated by the Second Circuit, is that "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)). To infer bad faith, in other words, a court is required only to conclude that an attorney's actions are completely colorless, and not to identify a particular improper purpose behind those actions. *See New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72–73 (2d Cir. 1996) (affirming trial court's inference of bad faith from the baselessness of attorney's actions, without requiring a finding of any specific improper purpose). The Court thus reaffirms its interpretation of the controlling law and rejects Plaintiff's argument.

Second, vindication of a client's interests, despite being a legitimate motive for filing a motion, *see Schlaifer*, 194 F.3d at 339–40, does not shield Liebowitz from sanctions under section 1927 for "multipl[ying] the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927. After all, Liebowitz may well have had other improper motives *in addition to* the legitimate motive of vindication. Of course, attorneys can be zealous advocates in vindicating a client's interests, but Liebowitz has identified no authority suggesting that attorneys may use

3

vindication as an excuse to unreasonably and vexatiously multiply the proceedings. Therefore, Liebowitz's alleged purpose of vindication, standing alone, is insufficient to shield him from sanctions under section 1927 where the Court has concluded that his actions were completely without legal merit.

Third, Plaintiff argues that this Court has not identified any improper purpose "with a high degree of specificity." (Dkt. No. 99 at 7–8.) As discussed earlier, the Court is not required to identify any specific improper purpose before inferring bad faith. To the extent that this Court is required to "make sufficiently specific factual findings to support its conclusion" regarding Liebowitz's bad faith, *Eisemann v. Greene*, 204 F.3d 393, 396–97 (2d Cir. 2000) (per curiam), the Court has already specifically explained in its earlier ruling the basis for its conclusion that Plaintiff's motion to disqualify was so completely colorless as to permit an inference of bad faith, *Schlaifer*, 194 F.3d at 336.

Fourth, Plaintiff contends that the record lacks evidence showing that Liebowitz has violated any legal or ethical rules. (Dkt. No. 99 at 8.) But evidence showing the violation of legal or ethical rules is not a prerequisite for the Court to infer bad faith on the part of Liebowitz for filing an entirely colorless motion. Plaintiff, unsurprisingly, fails to point to any authority supporting his claim.

### 2. Genuine Belief

Moving on to Plaintiff's second ground for reconsideration—that the Court overlooked evidence demonstrating Liebowitz's genuine belief in the merits of the motion to disqualify—the Court concludes that Plaintiff is wrong.

This Court, in its prior ruling, concluded that Plaintiff's disqualification motion was entirely meritless because it was clear that Plaintiff had not disclosed any confidential information to Sedlik, the expert witness whom Liebowitz had sought to disqualify on the

4

ground that he supposedly had a confidential relationship with Plaintiff. *Craig v. UMG Recordings, Inc.*, No. 16 Civ. 5439, 2019 WL 1432929, at *10 (S.D.N.Y. Mar. 29, 2019). This Court then inferred that Liebowitz had acted in bad faith in filing this entirely meritless motion. *Id.* Plaintiff now argues that Liebowitz actually harbored genuine belief in the merits of the disqualification motion because he believed that certain licensing practices Plaintiff had disclosed to Sedlik were confidential. (Dkt. No. 99 at 13–15.) Plaintiff further argues that, because of Liebowitz's genuine belief, his actions were merely the result of "poor legal judgment" and so should not be sanctioned. (Dkt. No. 99 at 9–10, 14.)

The evidence in the record refutes Plaintiff's argument. Plaintiff states that Liebowitz's genuine belief that Plaintiff's licensing history was confidential justified his decision to file the disqualification motion. (Dkt. No. 99 at 13–14.) But Liebowitz could not possibly have believed such information to be confidential, because by the time Liebowitz filed the motion, Plaintiff had already disclosed detailed information about his licensing practices and history to Defendant in a non-confidential deposition on March 17, 2017, which Liebowitz himself also attended. (Dkt. No. 62-6 at 4:3–8 (waiving confidentiality of the deposition), 3:11–12 (reflecting that Richard Liebowitz was present at the deposition).) In particular, Plaintiff gave detailed accounts of his employment history and past licensing practices. (Dkt. No. 62-6 at 61:10–23 (Plaintiff's employment as a staff photographer at Hullabaloo), 83:25–86:6 (Plaintiff's licensing practices and prices while at Hullabaloo), 67:5–8 (Plaintiff's employment as a freelance photographer), 70:20–72:6 (Plaintiff's licensing practices and prices as a freelance photographer).) Furthermore, Plaintiff admitted that he could remember only two instances in which he had licensed his photographs to be used as album covers during his freelance days, and he offered details about each of the two licensing agreements. (Dkt. No. 62-6 at 75:16–76:14,

5

77:13–78:6 (licensing terms with CBS), 80:12–81:5 (licensing terms with A&M Records).) More importantly, Plaintiff stated that he had never licensed the photographs at issue in this case between 1969 and 2017, despite one failed attempt at licensing them to the BBC. (Dkt. No. 62-6 at 151:16–152:12 (identifying the photographs at issue), 204:18–206:11 (Plaintiff's licensing history regarding the photographs at issue).)

Liebowitz was present at this deposition during which Plaintiff made these detailed disclosures. (Dkt. No. 62-6 at 3:11–12.) So he would have known that Plaintiff had already revealed extensive information about his licensing history to Defendant, and that such information was not confidential, at least with respect to Defendant. Undaunted, Liebowitz filed a letter about seven months later, claiming that Plaintiff had "disclosed confidential information to Sedlik, including details about Plaintiff's licensing history." (Dkt. No. 50 at 2.) Knowing that Plaintiff's licensing history was no longer confidential to Defendant, Liebowitz could not possibly have had any genuine belief that this statement had evidentiary support. Plaintiff's disqualification motion was meritless from the get-go.

Even assuming Liebowitz had totally forgotten about what his client had testified to at the deposition and never bothered to refresh his memory, Liebowitz should have realized that his alleged good-faith belief regarding the confidential nature of Plaintiff's licensing history had zero factual or legal support when Defendant's brief in opposition to the disqualification motion pointed him to Plaintiff's earlier disclosures. (*See* Dkt. No. 61 at 11.) Facing these glaring deficiencies in the disqualification motion, Liebowitz responded by arguing that "[i]n a case with a voluminous record . . . any information that mines the record or publicly available facts is confidential," and that Sedlik had possessed confidential information up to the point of Plaintiff's disclosures. (Dkt. No. 64 at 7–8.) Liebowitz not only failed to point to any legal authority that

6

could support his claims, but also neglected to explain how the alleged licensing history information would "mine the record or public available facts" and thus become confidential. (*See id.*) In sum, his confidentiality claims are entirely meritless.

The Court would certainly exercise restraint in imposing sanctions under section 1927 if the record demonstrated that Liebowitz had simply exercised "poor legal judgment." *Schlaifer*, 194 F.3d at 340. But unlike the cases that Plaintiff has cited, in which the attorneys were able to find support either from the record, *id.* at 340 ("[T]he record actually indicates that the appellants did indeed possess some concrete grounding for their belief that their fraud claim had a colorable basis . . . ."), or from the "broad language" in the case law, *Salovaara v. Eckert*, 222 F.3d 19, 29 (2d Cir. 2000), Liebowitz has not pointed to any fact from the record or any authority that could have supported his alleged genuine belief.[2] Therefore, the Court has no reason to revisit its conclusion that Liebowitz's conduct was not the mere result of poor legal judgment.

Because the Court concludes that Liebowitz could not have had any genuine belief at the time he filed his disqualification motion that Plaintiff's licensing history constituted confidential information, and because the disqualification motion was entirely colorless for the reasons detailed in the Court's prior ruling, the Court reaffirms its inference that Liebowitz acted in bad faith in filing the motion and so sustains its prior ruling.[3]

---

[2] The third case that Plaintiff has cited, *In re Sutter*, 543 F.2d 1030 (2d Cir. 1976), is distinguishable because it concerns the application of a local rule of the U.S. District Court for the Eastern District of New York, rather than section 1927, *see id.* at 1035.

[3] Plaintiff also appears to challenge the Court's conclusion that Plaintiff had not disclosed any confidential information to Sedlik on the grounds that the terms of the protective order the Court has entered to govern discovery in this case might cover Plaintiff's licensing practices. (Dkt. No. 99 at 15–16.) As discussed earlier, this argument fails on its merits because at the time Liebowitz filed the disqualification motion Plaintiff had already disclosed his licensing practice information to Defendant at a deposition that was not designated as confidential.

### B. Amount of the Sanction

Plaintiff argues, in the alternative, that the Court should award Defendant less than the full amount it seeks in sanctions. (Dkt. No. 106.) The Court earlier held that Defendant is entitled to recover the attorney's fees and costs it incurred in opposing Plaintiff's motion to disqualify and in preparing for and attending the associated evidentiary hearing. *Craig*, 2019 WL 1432929, at *11. In accordance with this Court's prior ruling, Defendant has filed a declaration with detailed contemporaneous time and disbursement records to substantiate the amount of recoverable fees and costs it claims to have incurred. (Dkt. No. 105; *see* Dkt. No. 96 at 22.) Specifically, Defendant is seeking $92,415.71 in attorney's fees and $67,295.05 in non-taxable costs. (Dkt. No. 105 ¶ 27.) In response, Plaintiff urges this Court to limit attorney's fees to $9,225, and non-taxable costs to $3,500. (Dkt. No. 106 at 1.) Bearing in mind that section 1927 allows this Court to award only fees and costs that are "reasonably incurred because of" an opposing party's sanctionable conduct, 28 U.S.C. § 1927, the Court now assesses Defendant's requested fees and costs.

#### 1. Attorney's Fees

The Court enjoys "wide discretion" in determining the amount of a fee award. *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986); *see also Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 474 (S.D.N.Y. 2001) ("The Court has discretion in determining the appropriate amount of attorney's fees [under section 1927]."). To determine the reasonable amount of attorney's fees in this case, the Court uses the lodestar approach to establish a "presumptively reasonable fee" by calculating the number of hours reasonably expended by counsel in connection with Plaintiff's motion to disqualify and multiplying that number of hours by reasonable hourly rates. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted).

This Court's determination of a reasonable hourly rate is informed by the prevailing rate "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). And the relevant community is generally the district in which the Court sits—in this case, the Southern District of New York. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Here, Defendant requests rates of $828 per hour for partner Barry Slotnick, $618 per hour for senior associate C. Linna Chen, and $361 for paralegal Antoinette Pepper. (Dkt. No. 105 ¶¶ 12, 16, 18.) Plaintiff argues that the requested rates are hyper-inflated and should be reduced. (Dkt. No. 106 at 3–4.)

Bearing in mind the "skill, experience, and reputation" of Defendant's counsel, the Court now assesses the reasonableness of the requested hourly rates. *Blum*, 465 U.S. at 895 n.11. First, the lead counsel in this case, Barry Slotnick, is a widely recognized intellectual property litigator with over forty years of experience. (Dkt. No. 105 ¶¶ 10–11.) As a partner and chair of the Intellectual Property and Entertainment Litigation Practice Group at Loeb & Loeb LLP, an hourly rate of $828 is reasonable. *See Tiffany & Co. v. Costco Wholesale Corp.*, No. 13 Civ. 1041, 2019 WL 120765, at *10 (S.D.N.Y. Jan. 7, 2019) (approving hourly rates between $625 and $845 for partners in a complex copyright infringement action); *see also TufAmerica Inc. v. Diamond*, No. 12 Civ. 3529, 2016 WL 1029553, at *7 & n.7 (S.D.N.Y. Mar. 9, 2016) (approving hourly rate of $747 for a partner in a copyright infringement action).

Second, the requested rate for C. Linna Chen warrants some adjustment. Although Defendant claims that "average hourly rates for senior associates at law firms of comparable size in New York City range from $620 to $815," Defendant does not explain its methodology for reaching this number. (Dkt. No. 105 ¶ 17.) Indeed, the data provided by Defendant does not

specify the prevailing hourly rate for associates with Chen's experience in this District. (*See generally* Dkt. No. 105-6.) In light of the rates awarded by other courts in this District, the Court determines that an hourly rate of $550 is reasonable for a senior associate such as Chen. *See, e.g.*, *Tiffany & Co.*, 2019 WL 120765, at *10 (approving hourly rates between $315 and $585 for an associate, depending on experience); *TufAmerica Inc.*, 2016 WL 1029553, at *6 (approving an hourly rate of $560 for a senior associate with at least ten years of experience).

Third, the billing rate for paralegal Antoinette Pepper is outside the range of rates approved in this District. Pepper is seeking an hourly rate of $361, but Defendant has not submitted sufficient evidence to establish that the requested rate is commensurate with rates generally approved in the District. "Recent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour." *TufAmerica Inc.*, 2016 WL 1029553, at *6 (citing *Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 Civ. 2493, 2014 WL 4792082, at *3 (S.D.N.Y. Sept. 24, 2014)). Accordingly, the Court determines that $200 is a reasonable hourly rate for Pepper.

Having determined the reasonable hourly rates for Defendant's counsel, the Court now turns to the issue of the reasonable number of hours. In making this determination, the Court "examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). The Court should award attorney's fees only for "hours reasonably expended on the litigation," not for "hours that are excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)). Bearing that principle in mind, a court may apply an across-the-board reduction to

10

effectuate the reasonable imposition of fees. *See Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656–657 (S.D.N.Y. 2019) ("Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended.").

Here, Defendant has submitted detailed contemporaneous timesheets to substantiate the hours requested. (Dkt. No. 105-8.) According to Defendant's counsel, they spent 10.3 hours responding to an initial letter from Liebowitz requesting Sedlik's disqualification, 46.6 hours responding to the disqualification motion, and 69.4 hours preparing for and attending the evidentiary hearing. (Dkt. No. 107 at 5–6.) Plaintiff argues that the number of hours billed by Defendant's counsel is excessive, but he does not reference any specific disputed time entries. (Dkt. No. 106 at 2.) Having carefully reviewed the timesheets, the Court concludes that the time expended requires reduction. As discussed earlier and in this Court's earlier rulings, Plaintiff's motion to disqualify was entirely meritless. It did not involve complicated legal questions or factual disputes. Therefore, the Court is not convinced that attorneys with Slotnick's and Chen's experience would have needed to spend a total of 126.3 hours to counter such a meritless motion. In determining the appropriate percentage reduction, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Errant Gene Therapeutic*, 286 F. Supp. 3d at 588 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Based on the complexities of this case and the work quality of Defendant's counsel, the Court determines that an across-the-board 30% reduction is reasonable. Therefore, Defendant is entitled to an award of attorney's fees totaling $64,691.00.

## 2. Costs

In addition to attorney's fees, Defendant also seeks reimbursement of costs totaling $67,295.05, consisting of $371.10 in photocopying costs, $17.10 in express mail costs, and $66,906.85 in expert fees and costs. (Dkt. No. 105 ¶ 25.)

Plaintiff urges this Court to reduce the requested expert fees and costs, arguing that expert witness Jeffrey Sedlik's rate is too high and that Sedlik spent too many hours on the disqualification motion. (Dkt. No. 106 at 4.) In response, Defendant argues that the hours Sedlik billed—91 hours in total—were entirely necessary to the defense. (Dkt. No. 107 at 7–8.) Defendant has submitted two invoices to support its claim for expert fees and costs. The first one, numbered UMG1701-09, contains a breakdown of Sedlik's billed hours and incurred expenses, and a contemporaneous timesheet. (Dkt. No. 105-9 at 5–8.) It indicates that Sedlik billed Defendant for 91 hours of work at an hourly rate of $650, resulting in $56,192.50 in fees, and that Sedlik incurred $3,369.35 in expenses. (Dkt. No. 105-9 at 5.) The second invoice, numbered UMG1701-08A, indicates that Sedlik billed Defendant for another 11.3 hours of work, adding another $7,345 in fees. (Dkt. No. 105-9 at 9.)

To determine whether a requested expert's fee is reasonable,

> courts have considered the following factors: (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographic area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by [Federal Rule of Civil Procedure] 26; (7) the fee actually being charged to the party who retained him; and (8) fees traditionally charged by the expert on related matters.

*Advanced Video Techs., LLC v. HTC Corp.*, No. 11 Civ. 6604, 2016 WL 1253899, at *7 (S.D.N.Y. Feb. 23, 2016). It is the burden of Defendant to demonstrate the reasonableness of the

amount claimed. *Id.* "When the reasonableness of an expert's fees is not fully explained, the Court may exercise its discretion to determine a reasonable fee." *Id.* (quoting *Penberg v. HealthBridge Mgmt.*, No. 08 Civ. 1534, 2011 WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011)).

After carefully reviewing Defendant's evidence, the Court concludes that Sedlik's fees require adjustment. First, Defendant has not submitted any evidence to convince the Court that Sedlik's hourly rate of $650 is reasonable or commensurate with other experts of similar backgrounds and credentials. Second, the contemporaneous timesheet attached to the first invoice contains little explanation of how Sedlik's time was spent, relying exclusively on vague entries such as "[c]ommunication" or "[p]rovide written responses," which makes it difficult for the Court to assess the reasonableness of the time expended. (*See generally* Dkt. No. 105-9 at 6–8.) Third, the second invoice appears questionable because the first invoice already accounted for the 91 hours that Sedlik billed. (Dkt. No. 107 at 7 ("In total, Mr. Sedlik . . . billed Defendant[] for only 91 hours worked.").) Moreover, the second invoice does not have any timesheet to justify the 11.3 hours billed by Sedlik. (*See* Dkt. No. 105-9 at 9.) In light of the apparent deficiencies in Sedlik's record, and the straightforward nature of the motion to disqualify, the Court will implement a 50% reduction to the expert fees sought. Therefore, Defendant is entitled to recover $33,841.63 in costs, consisting of $371.10 in photocopying costs, $17.10 in express mail costs, and $33,453.43 in expert fees and costs.

**III.     Conclusion**

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED.  Defendant is hereby awarded $98,532.62 in attorney's fees and costs pursuant to 28 U.S.C. § 1927.  Richard Liebowitz and the Liebowitz Law Firm are jointly and severally liable for this award.

The Clerk of Court is directed to close the motion at Docket Number 98.

SO ORDERED.

Dated: July 9, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge